# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | Case No. 07 CV 2898 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) ) ) | |
| Counter-Claimants, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Counter-Defendants. | ) ) | |
| | ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) | Case No. 09 CV 2026

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.     CLASS PLAINTIFFS FAIL ADEQUATELY TO PLEAD A RICO VIOLATION ......... 2

     A.    Class Plaintiffs Fail to Allege a RICO Enterprise. ................................. 2

     B.    Class Plaintiffs Fail to Allege a Pattern of Racketeering Activity. ....................... 6

     C.    Class Plaintiffs Fail to Allege a Sufficiently Definite RICO Injury. ...................... 8

II.    CLASS PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED ................. 11

     A.    Applicable Law ...................................................................................... 11

     B.    Class Plaintiffs' Fraud Claim Should be Dismissed for  Failure to Plead Actual, Direct Reliance. ................................................................ 12

     C.    The Articles of Agreement Bar Class Plaintiffs' Fraud and Quasi-Contract Claims. .............................................................................. 13

          1.    Class Plaintiffs' Fraud Claim is Duplicative of their Breach of Contract Claim. ........................................................... 13

          2.    Class Plaintiffs' Promissory Estoppel Claim Must be Dismissed. ........... 17

          3.    Class Plaintiffs' Unjust Enrichment Claim Must Be Dismissed. ............. 18

     D.    Class Plaintiffs' Punitive Damages Claims Must Be Dismissed. ....................... 19

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC,*
    637 F. Supp. 2d 185 (S.D.N.Y. 2009) ........................................................................ 17, 18

*Alio v. Perpignano,*
    889 N.Y.S.2d 100 (N.Y. App. Div. 2009) ................................................................. 16

*All-Tech Telecom, Inc. v. Amway Corp.,*
    174 F.3d 862 (7th Cir. 1999) .................................................................................... 9

*Apple Corps. Ltd. v. Capital Records, Inc.,*
    No. 604385/2005, 2006 WL 2726809 (N.Y. Sup. Ct. Aug. 21, 2006) ................... 16

*Apple Records, Inc. v. Capitol Records, Inc.,*
    529 N.Y.S.2d 279 (N.Y. App. Div. 1988) ............................................................... 15, 16

*Automated Teller Mach. Advantage LLC v. Moore,*
    No. 08 Civ. 3340, 2009 WL 2431513 (S.D.N.Y. Aug. 6, 2009) ............................. 4-5

*Barnett v. Stern,*
    909 F.2d 973 (7th Cir. 1989) .................................................................................... 10, 11

*Battista v. Lebanon Trotting Ass'n,*
    538 F.2d 111 (6th Cir. 1976) .................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................. 6

*Boyle v. United States,*
    -- U.S. --, 129 S. Ct. 2237 (2009) ............................................................................ 2, 3, 4, 5

*In re Bridgestone/Firestone Inc.,*
    288 F.3d 1012 (7th Cir. 2002) .................................................................................. 12

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.,*
    98 F.3d 13 (2d Cir. 1996) ......................................................................................... 16

*Brooks v. Ross,*
    578 F.3d 574 (7th Cir. 2009) .................................................................................... 6

*Brown v. Brown,*
    785 N.Y.S.2d 417 (N.Y. App. Div. 2004) ............................................................... 17

*C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.,*
    419 F. Supp. 2d 419 (S.D.N.Y. 2005) ...................................................................... 14

*Carvel Corp. v. Noonan,*
    818 N.E.2d 1100 (N.Y. 2004) ................................................................................... 19

*Cashco Oil Co. v. Moses*,
    605 F. Supp. 70 (N.D. Ill. 1985) ................................................................. 8

*Chatz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    372 B.R. 368 (N.D. Ill. 2007) ................................................................. 12

*Commercial Union Assurance Co. v. Milken*,
    17 F.3d 608 (2d Cir. 1994) ................................................................. 10

*Contractual Obligations Productions, LLC v. AMC Networks, Inc.*,
    No. 04 Civ. 2867, 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) ...................... 17

*Crigger v. Fahnestock & Co.*,
    No. 01 Civ. 07819, 2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003) ................. 20

*David v. Am. Suzuki Motor Co.*,
    629 F. Supp. 2d 1309 (S.D. Fla. 2009) ................................................... 12

*Emery v. Am. Gen. Fin. Inc.*,
    134 F.3d 1321 (7th Cir. 1998) .............................................................. 5

*Envirocon, Inc. v. Alcoa, Inc.*,
    No. 7:06-cv-0549, 2006 WL 2460640 (N.D.N.Y. Aug. 23, 2006) .................... 20

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ................................................................. 10

*Freedman v. Pearlman*,
    706 N.Y.S.2d 405 (N.Y. App. Div. 2000) ................................................ 17

*Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*,
    569 F.3d 667 (7th Cir. 2009) ............................................................... 9

*Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts., LLC*,
    No. 08-4692-cv, 2009 WL 3161357 (2d Cir. Oct. 2, 2009) ...................... 10, 11

*JFK Health & Welfare Fund, Inc. v. Analie Tours, Inc.*,
    No. 06-cv-2868, 2008 WL 819066 (E.D.N.Y. Mar. 25, 2008) ...................... 20

*Jaurequi v. John Deere Co.*,
    986 F.2d 170 (7th Cir. 1993) .............................................................. 12

*Ladenburg Thalmann & Co. Inc. v. Imaging Diagnostic Sys., Inc.*,
    176 F. Supp. 2d 199 (S.D.N.Y. 2001) ................................................... 15

*Liquid Air Corp. v. Rogers*,
    834 F.2d 1297 (7th Cir. 1987) ............................................................. 9

*Lott v. Levitt*,
    556 F.3d 564 (7th Cir. 2009) .............................................................. 12

*McGee v. State Farm Automobile Insurance Co.*,
    No. 08-CV-392, 2009 WL 2132439 (E.D.N.Y. July 10, 2009) ...................... 5

*Metro. Transp. Auth. v. Triumph Adver. Prods., Inc.,*
116 A.D.2d 526 (N.Y. App. Div. 1986)...................................................................14

*Motorola Credit Corp. v. Uzan,*
322 F.3d 130 (2d Cir. 2003) ....................................................................10, 11

*Perlman v. Zell,*
185 F.3d 850 (7th Cir. 1999) .......................................................................7, 8

*Purizer Corp. v. Battelle Mem'l Inst.,*
2002 WL 22014 at *5....................................................................................7, 18

*RAO v. BP Prods. N. Am., Inc.,*
-- F.3d --, No. 07-2065, 2009 WL 4640634 (7th Cir. Dec. 9, 2009) ..........................4

*R.H. Damon & Co. Inc. v. Softkey Software Prods., Inc.,*
811 F. Supp. 986 (S.D.N.Y. 1993)...................................................................14

*Regency Communications., Inc. v. Cleartel Communications, Inc.,*
160 F. Supp. 2d 36 (D.D.C. 2001) ....................................................................7

*Reimer v. Illinois Department of Transportation,*
148 F.3d 800 (7th Cir. 1998) .......................................................................18

*Remee Products Corp. v. Sho-Me Power Electric Coop. & TM Sales, Inc.,*
No. 01 Civ. 5554, 2003 WL 124517 (S.D.N.Y. Jan. 15, 2003) ..................................16

*Rich v. N.Y. Cent. & Hudson River R.R. Co.,*
87 N.Y. 382, 394 (N.Y. 1882) .......................................................................15

*Rosenblum v. Travelbyus.com, Ltd.,*
No. 01 C 6441, 2002 WL 31487823 (N.D. Ill. Nov. 6, 2002)..................................8

*Ruffing v. Union Carbide Corp.,*
764 N.Y.S.2d 462 (N.Y. App. Div. 2003) .......................................................13

*Ryan v. Wersi Electronic GmbH & Co.,*
59 F.3d 52 (7th Cir. 1995) ..........................................................................9

*SIPC v. BDO Seidman LLP,*
49 F. Supp. 2d 644 (S.D.N.Y. 1999).................................................................12

*Sofi Classic S.A. de C.V. v. Hurowitz,*
444 F. Supp. 2d 231 (S.D.N.Y. 2006) ............................................................19

*TVT Records v. Island Def Jam Music Group,*
412 F.3d 82 (2d Cir. 2005) ..........................................................................19

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.,*
380 F. Supp. 2d 250 (S.D.N.Y. 2005)...............................................................19

*Trafigura Beheer B.V. (Amsterdam) v. S. Caribbean Trading Ltd.,*
No. 602890/03, 2004 WL 3270189 (N.Y. Sup. Ct. Aug. 23, 2004)...........................17

*United States v. Merritt Meridian Constr. Corp.,*
    95 F.3d 153 (2d Cir. 1996) ........................................................................... 20

*United States v. Turkette,*
    452 U.S. at 579 (1981) ................................................................................. 4

*United States v. Hutchinson,*
    573 F.3d 1011 (10th Cir. 2009) .................................................................... 4

*Vitale v. Steinberg,*
    764 N.Y.S.2d 236 (N.Y. App. Div. 2003) ....................................................... 18

Defendant American International Group, Inc. ("AIG") and its subsidiary insurance companies named as defendants herein (the "AIG Subsidiaries" or "AIG Companies" and, together with AIG, "Defendants"), submit this reply in support of their motion to dismiss all but counts Four, Five and Six of the First Amended Class Action Complaint (the "FAC").

## INTRODUCTION

In their Memorandum of Law in Support of Defendants' Motion to Dismiss the First Amended Class Action Complaint ("Mot."), Defendants detailed the pleading deficiencies of each of Class Plaintiffs' non-contractual claims.  First, although Class Plaintiffs seek to convert an alleged breach of contract into a federal racketeering offense, their RICO claims fail adequately to plead the existence of a RICO enterprise, fail adequately to plead that AIG engaged in racketeering activity, and fail to allege a sufficiently definite injury.  (Mot. at 6-15.) Second, Class Plaintiffs' quasi-contract and state-law tort claims fail for numerous reasons, including because they are duplicative of and precluded by the Articles of Agreement, *i.e.*, the parties' contract (Mot. at 15-21), and because Class Plaintiffs fail to allege actual, direct reliance upon any alleged misrepresentation (Mot. at 23-26).  Finally, the punitive damages demand fails because Class Plaintiffs fail to assert a proper basis for an award of such damages.  (Mot. at 26-30.)

Class Plaintiffs' Opposition to Defendants' Motion to Dismiss the First Amended Class Action Complaint ("Class Pls.' Opp.") fails to rehabilitate their position or defeat Defendants' motion for dismissal.  Rather, in an eleventh-hour attempt to remedy the pleading deficiencies AIG identified, Class Plaintiffs mischaracterize AIG's arguments, make unreasonable inferences unsupported by the factual allegations in their FAC, and assert untenable arguments lacking legal support.  Class Plaintiffs cannot rescue their claims in this manner; accordingly, the RICO, fraud,

unjust enrichment and promissory estoppel claims and demand for punitive damages should be dismissed.

## ARGUMENT

### I.   CLASS PLAINTIFFS FAIL ADEQUATELY TO PLEAD A RICO VIOLATION

In its opening brief, AIG explained that Class Plaintiffs' RICO claims should be dismissed because of numerous pleading deficiencies, including that Class Plaintiffs failed to: (1) plead a RICO enterprise, (2) allege a pattern of racketeering, and (3) allege a sufficiently definite injury.  As detailed below, Class Plaintiffs' responses to each of these arguments are unavailing.

#### A.   Class Plaintiffs Fail to Allege a RICO Enterprise.

As detailed in AIG's opening memorandum, Class Plaintiffs' RICO claims fail because Class Plaintiffs do not adequately plead the existence of a RICO enterprise.  They attempt to do so in the FAC by alleging an association-in-fact enterprise consisting of the AIG Subsidiaries and the two Starr Entities.  However, those allegations fall short because Class Plaintiffs fail to plead any ongoing relationship or coordination among the supposed enterprise members – whether in pursuit of the alleged underreporting scheme or anything else – that would evidence their being a "continuing unit," which is what the Supreme Court has defined an association-in-fact enterprise to be.  *Boyle v. United States*, -- U.S.--, 129 S. Ct. 2237, 2243 (2009).  The most that can be inferred from the allegations of the FAC is that AIG independently controlled each of the supposed enterprise members and used them to perpetrate AIG's scheme, but that is not enough to make out an enterprise or a RICO claim.

Relying on the very allegations AIG cited as insufficient in its opening memorandum – and nothing more – Class Plaintiffs assert that they have, in fact, alleged ongoing relationships among the enterprise members, arguing:

2

> The FAC alleges that 'officers, employees and agents *of AIG*' . . . 'exercised influence and control over the business operations of CVSCO and SICO' – two members of the association-in-fact enterprise – and used that influence and control to cause CVSCO and SICO to transfer valuable assets 'to the managers, employees and other agents of the AIG Companies' – the remaining members of the association-in-fact enterprise.   It further alleges that Mr. Greenberg, the chairman and chief executive *of AIG* during the relevant period, was responsible for conducting the business operations of the AIG Companies . . . [and] of CVSCO and SICO.

(Class Pls.' Opp. at 5 (citing FAC ¶¶ 16, 39) (emphasis added).)   However, even as Class

Plaintiffs describe them, these allegations do no more than assert that AIG – which is not a

member of the alleged enterprise – controlled each of the purported enterprise members.   They

do not allege any relationship *between the enterprise members themselves*. *See Boyle*, 129 S. Ct.

at 2244 ("The concept of 'associat[ion]' requires both *interpersonal relationships* and a common

interest" among enterprise members) (alteration in original) (emphasis added).   At most, the

allegations describe a situation in which AIG used each of the purported enterprise members to

carry out the alleged underreporting scheme.   There is simply nothing in the FAC from which the

Court could infer that the purported enterprise members constituted a "continuing unit," *id.* at

2243, as opposed to independent entities that AIG separately used like a puppet-master to

perpetrate its alleged misconduct.

Perhaps recognizing their failure to allege the required relationship among the purported

enterprise members, Class Plaintiffs contend that *Boyle* frees them from any need to do so.   In

particular, Class Plaintiffs argue that under *Boyle* "the relationships necessary to establish the

enterprise may 'be inferred from the evidence showing that persons associated with the

enterprise engaged in a pattern of racketeering activity.'"   (Class Pls.' Opp. at 7 (quoting *Boyle*,

129 S. Ct. at 2245).)   Accordingly, Class Plaintiffs say, their allegations of racketeering activity

on the part of the purported enterprise members also suffice to plead the existence of the

3

enterprise. (Class Pls.' Opp. at 7 (AIG's "enterprise argument cannot succeed *if the Class Plaintiffs have sufficiently pled a pattern of racketeering activity.*") (emphasis added).)

Class Plaintiffs' argument on this point rests upon the Supreme Court's observation in *Boyle* that "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" 129 S. Ct. at 2245 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). However, as the quoted language reflects, both *Boyle* and *Turkette* make clear that this principle does not apply across the board, but only *in particular cases.* Neither *Boyle* nor *Turkette*, in other words, eliminates the enterprise element of RICO by collapsing it into the pattern of racketeering element. *See RAO v. BP Prods. N. Am., Inc.*, -- F.3d --, No. 07-2065, 2009 WL 4640634, at *8 (7th Cir. Dec. 9, 2009) (affirming dismissal of RICO claims where plaintiff failed to allege structure and noting that "an association-in-fact enterprise *still requires a showing* of a 'group of persons associated together for a common purpose in engaging in a course of conduct'") (quoting *Boyle*, 129 S. Ct. at 2243) (emphasis added). Those decisions merely recognize that there will be particular cases where the evidence proving that a group engaged in racketeering activity will also prove that the group acted as a continuing unit and, thus, as an enterprise. *Boyle*, *Turkette*, and every other case cited by Class Plaintiffs in support of their argument on this point are all within that category, because the pattern of racketeering alleged in each of them was such that the participants must have cooperated with each other as a continuing unit in order to commit it.[1] Proof of the racketeering

---

[1]   *See Boyle*, 129 S. Ct. at 2241 (a ring of bank thieves in which all members participated in the planning of and in each theft); *Turkette*, 452 U.S. at 579 (a group of drug dealers where "the indictment charged the commission of various substantive criminal acts by those engaged in and associated with the criminal enterprise") (internal citations omitted); *United States v. Hutchinson*, 573 F.3d 1011, 1016-18 (10th Cir. 2009) (defendants, four individuals alleged to have participated in a drug conspiracy, included the drug supplier in charge, two drug dealers, and a runner who took orders from customers); *Automated Teller Mach. Advantage LLC v.*

activity thus proved the existence of the enterprise as, for example, proof (in *Boyle*) that a group of individuals repeatedly joined together to rob banks also proves that such individuals acted as continuing unit in doing so.

This case is different.  This case is not one in which proof of the alleged racketeering activity would necessarily prove the existence of the alleged enterprise.  Even taken as true, the allegations in the FAC detailing the underreporting scheme and the predicate acts of fraud that were part of it do not, without more, allege that the members of the alleged enterprise interacted with each other or constituted a continuing unit.  This is because there is nothing about the alleged underreporting scheme that necessarily required any one of the alleged enterprise members to cooperate with any other enterprise member or even know of the role played by any other enterprise member.

To begin with, the members of the associated-in-fact enterprise alleged here are not a "criminal gang," *Emery v. Am. Gen. Fin. Inc.*, 134 F.3d 1321, 1325 (7th Cir. 1998), formed "solely for the purpose of carrying out a pattern of racketeering acts," *Boyle*, 129 S. Ct. at 2242. Even Class Plaintiffs would concede that the AIG Subsidiaries and the Starr Entities are legitimate companies that conduct legitimate business.  Thus, in contrast to the authorities cited by Class Plaintiffs, the mere fact that the AIG Subsidiaries and the Starr Entities have existed over time with knowledge of each other does not suggest the existence of an enterprise.

---

*Moore*, No. 08 Civ. 3340, 2009 WL 2431513, at *7 (S.D.N.Y. Aug. 6, 2009) (three defendants acted as "front-men" to ensure that plaintiff conducted business with the other defendants; three defendants made material misrepresentations to induce the plaintiff to purchase the ATMs; and two defendants transmitted false monthly reports and periodic payments to plaintiff in furtherance of the conspiracy). *McGee v. State Farm Automobile Insurance Co.*, No. 08-CV-392, 2009 WL 2132439 (E.D.N.Y. July 10, 2009), is inapposite. There, the court dismissed the plaintiffs' RICO claim for failure properly to allege predicate acts and therefore did not reach the issue of whether the plaintiffs had adequately pled a RICO enterprise. *Id.* at *4.  The court noted only in footnoted dicta that *Boyle* established a low threshold for this element.

Additionally, as discussed above, the underreporting scheme described in the FAC was a top-down operation in which the managers of AIG allegedly (i) caused each of the AIG Subsidiaries to engage in underreporting and make false filings with the NCCI, and (ii) caused the Starr Entities to transfer assets to the managers of the AIG Subsidiaries in order to induce them to participate in underreporting.  Assuming all of that happened just as Class Plaintiffs allege, there remains no basis to conclude that the alleged enterprise members functioned as a continuing unit.  There is nothing about this alleged racketeering conduct that would have required interaction or coordination among the AIG Subsidiaries themselves or between the AIG Subsidiaries and the Starr Entities.  AIG could have – and, in fact, is alleged to have – perpetrated the scheme simply by exercising control over each of the AIG Subsidiaries and the Starr Entities separately and independently.  Moreover, AIG's exercise of control over its subsidiaries and the related Starr Entities is "just as consistent with lawful conduct as it is with wrongdoing," *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)), and accordingly cannot support an inference of wrongdoing.

Because Class Plaintiffs do not allege that the alleged enterprise members had any ongoing interaction with one another, and because the alleged pattern of racketeering activity would not necessarily have required the alleged enterprise members to have such a relationship, the FAC fails to allege the existence of an enterprise, and Class Plaintiffs' RICO claims fail.

**B.      Class Plaintiffs Fail to Allege a Pattern of Racketeering Activity.**

AIG explained in its opening memorandum that Class Plaintiffs' RICO claims also fail because Class Plaintiffs fail adequately to allege a pattern of racketeering activity.  More particularly, AIG argued that because the alleged misstatements underpinning the alleged wire and mail fraud predicates amount to nothing more than a breach of a contractual duty to make

6

accurate reports, they do not support a RICO claim.  Class Plaintiffs argue in response that

breaches of contract are actionable as mail fraud for RICO purposes where the "defendants

utilized the mail to deceive the plaintiffs." (Class Pls.' Opp. at 10 (internal citation omitted).)

Class Plaintiffs' argument, however, mischaracterizes AIG's contention and is foreclosed by

controlling precedent.

 AIG does not contend that "predicate acts of mail fraud may as a matter of law be

committed with impunity under RICO if they occur in the context of a contractual relationship."

(Class Pls.' Opp. at 8.)  Rather, AIG argues that "where the source of the defendants' duty to

make representations to plaintiff is imposed by a contract, any allegedly false statements *made

pursuant to that duty* amount to nothing more than a breach of contract and will not support a

claim for fraud." (Mot. at 11 (citing *Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C 6360, 2002

WL 22014, at *4 (N.D. Ill. Jan. 7, 2002)) (emphasis added).)

 Class Plaintiffs accept this as an accurate statement of the law.  (Class Pls.' Opp. at 8-9.)

However, they then argue, without any authority from within the Seventh Circuit, that "it is

equally well-accepted that where a plaintiff alleges that a defendant engaged in conduct that

constitutes mail fraud under the federal statute, the fact that the conduct in question also is

alleged to have constituted a breach of an agreement is not a defense to a RICO claim." (Class

Pls.' Opp. at 9.)[2]

 The Seventh Circuit has held that a breach of contract transforms into mail or wire fraud

only when a party makes "a promise with the intent not to keep it." *Perlman v. Zell*, 185 F.3d

---

[2]   Class Plaintiffs' reliance on *Regency Communications., Inc. v. Cleartel Communications, Inc.*,
160 F. Supp. 2d 36 (D.D.C. 2001), is without merit.  Not only is the issue for which Class
Plaintiffs rely on *Regency Communications* not the holding of that case, it is an issue that none of
the litigants had raised or briefed and so was not properly before the court. *See id.* at 43 ("[T]he
Court first undertakes a sua sponte evaluation of whether the dismissal of the plaintiffs' fraud
claim affects the viability of its RICO claims.").

850, 852 (7th Cir. 1999). In *Perlman*, the Seventh Circuit further opined that where "many promises are kept for extended periods before a dispute breaks out, it is hard to see how it could be said that the defendants never intended to keep their bargains." *Id.*; *see Cashco Oil Co. v. Moses*, 605 F. Supp. 70, 71 (N.D. Ill. 1985) ("To sustain the conversion of a breach-of-contract . . . claim into a mail or wire fraud claim . . . , [the plaintiff] must prove promissory fraud-knowingly false statements of future intentions.") (internal citations omitted); *see also Rosenblum v. Travelbyus.com, Ltd.*, No. 01 C 6441, 2002 WL 31487823, at \*3 (N.D. Ill. Nov. 6, 2002) ("A fraud claim cannot be supported by allegations that promises were broken and therefore were never intended to be kept."). The Class Plaintiffs' argument fails because it assumes that any breach of an agreement can transform into conduct that constitutes mail fraud.

Class Plaintiffs make no allegation that the AIG Subsidiaries entered into the Articles of Agreement intending to underreport. Indeed, Class Plaintiffs explicitly state that their fraud claims are *not* based on alleged misrepresentations of the AIG Subsidiaries' intent to perform their promises. (Class Pls.' Opp. at 27.) Class Plaintiffs therefore fail properly to allege wire or mail fraud predicates, and their RICO claims therefore should be dismissed for failure properly to allege a pattern of racketeering activity.

**C.     Class Plaintiffs Fail to Allege a Sufficiently Definite RICO Injury.**

Class Plaintiffs oppose AIG's motion to dismiss the RICO claims on ripeness grounds by arguing that state law claims do not need to be pursued before a RICO claim can be pursued, and that no contractual remedies or ancillary proceedings are available.

As an initial matter, AIG does not argue, nor does it follow from its argument, that "a RICO plaintiff alleging *state law claims* (whether for breach of contract, *fraud, or anything else*) based on the same underlying conduct that constituted the RICO predicate acts could not bring the RICO claim until after the state claim had been adjudicated or otherwise resolved . . . ."

8

(Class Pls.' Opp. at 13-14 (emphasis added).)  Class Plaintiffs' mischaracterization of AIG's

argument ignores the fundamental difference between claims sounding in contract and claims

sounding in tort:  the duties, obligations and remedies of a contract claim are negotiated by the

parties and apply only to those parties; while the duties, obligations and remedies giving rise to a

tort claim are universally applicable.  *See, e.g., Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111,

117 (6th Cir. 1976).  Where parties bargain for certain obligations and remedies, it is appropriate

that the terms of their bargain define the bounds of their liability to each other for breaches of

that bargain, and there is no need to augment the available contract remedies with tort law.  *See,*

*e.g., All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865-66 (7th Cir. 1999).  Therefore,

Class Plaintiffs' reliance on cases involving simultaneous pursuit of RICO claims and state tort

claims arising out of the same conduct are inapposite to AIG's actual argument.[3]

Class Plaintiffs next argue that "*there is not a single case* decided under RICO that

provides *any support whatever* for the sweeping ripeness argument that Defendants make . . . ."

(Class Pls.' Opp. at 14 (first emphasis in original) (second emphasis added).)  To support this

contention, Class Plaintiffs attempt to distinguish a line of Second Circuit cases and controlling

Seventh Circuit precedent on technical and logically questionable grounds.

First, Class Plaintiffs attempt to distinguish the cases cited by AIG as "nothing more than

a line of cases holding that a *creditor* cannot bring a RICO action premised upon fraudulent

---

[3]  Class Plaintiffs' reliance on *Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*, 569 F.3d
667 (7th Cir. 2009), and other cases is unavailing. (Class Pls.' Opp. at 14.)  None of these cases
involved a dispute about the legitimacy of simultaneously pursuing state law and RICO claims.
Especially confusing is their reliance on *Ryan v. Wersi Electronic GmbH & Co.*, 59 F.3d 52 (7th
Cir. 1995), since the Seventh Circuit addressed only a claim under the Illinois Consumer Fraud
Act.  The RICO and other state law claims had been disposed of in prior proceedings. *Id.* at 53.
Likewise, *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987), addressed only the burden
of proof for RICO claims, RICO damages and set-off, and sundry evidentiary and instruction
objections.

conduct . . . while contractual remedies that may lead to a recovery of all or part of the debt remain unexercised by the creditor . . . ." (Class Pls.' Opp. at 14-15 (emphasis added).) Class Plaintiffs do not dispute the principle at the core of these cases, *i.e.*, that available contractual remedies can prevent a RICO claim from ripening. Instead, they merely seek to cabin this rule to apply only to creditors. Class Plaintiffs, however, provide no persuasive basis as to why these cases should be so narrowly construed.

As the *First Nationwide Bank v. Gelt Funding Corp.* court explained, RICO damages are definite only when a party to the contract "has exhausted *the bargained-for remedies* available to it . . . ." 27 F.3d 763, 768 (2d Cir. 1994) (emphasis added). Class Plaintiffs attempt to distinguish *First Nationwide Bank* on the ground that they "do not have the kind of contractual rights and remedies (such as collateral and foreclosure rights) that *lenders* typically obtain and that, if exercised might conceivably result in the reduction of their alleged RICO injury." (Class Pls.' Opp. at 15-16 (emphasis added).) Indeed, the decision in *First Nationwide* did not turn on the lender-specific rights and remedies available to the plaintiffs. *See id.* at 769 (citing *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608 (2d Cir. 1994) (holding that investors had not stated a cognizable RICO injury)). Ripeness depends on the existence and not the type of bargained-for remedies available to a party. Class Plaintiffs cannot create ripeness because they now regret the extent of the remedies for which they bargained.

Similarly, Class Plaintiffs' attempt to distinguish *Harbinger Capital*, *Barnett* and *Uzan* on the ground that there is "no pending ancillary proceeding . . . that might result in a recovery that would reduce or eliminate the RICO injury that Class Plaintiffs allege," (Class Pls.' Opp. at 17), is unavailing. In those cases, the plaintiffs' RICO claims were considered unripe because there were other avenues through which the plaintiffs *could* first pursue redress for their alleged

10

injury. The fact that they had not yet done so was irrelevant. *See Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts., LLC*, No. 08-4692-cv, 2009 WL 3161357, at *2 (2d Cir. Oct. 2, 2009) (RICO claim not ripe *when possibility* of recovery through actions *by defendant's bankruptcy trustee* remained); *Barnett v. Stern*, 909 F.2d 973, 977 n.4 (7th Cir. 1989) (Though plaintiffs were not a party to a current action against the bankruptcy estate, "it remains to be seen whether they will be able to satisfy their claim from the bankruptcy estate."). Similarly, the importance of the pending arbitration in *Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003), was that it was "a possible [mitigating] influence (*negotiated by contract*) on the amount of loss." *Id.* at 137 (emphasis added).

Contrary to Class Plaintiffs' mischaracterization, this line of cases from the Second and Seventh Circuits stands for the proposition that where, as here, parties have a contract and the actions that give rise to the RICO allegations amount to breaches of that contract, a party must pursue the remedies and avenues for which it negotiated before its RICO claims have ripened. For these reasons, the RICO claims should be dismissed.

## II.    CLASS PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED

As AIG's opening brief establishes, Class Plaintiffs' state law claims should be limited to those premised on purported violations of the duties imposed by the parties' contract, which provides the only proper legal theory of recovery for disputes between them. The arguments espoused by Class Plaintiffs in their opposition brief do not warrant a contrary conclusion, and their state law claims and request for punitive damages therefore should be dismissed.

### A.    Applicable Law

Class Plaintiffs, having apparently concluded that that laws of their respective home states (Washington and Ohio) do not support the tort claims they assert against AIG, urge the Court to find that those claims are governed by New York law. For purposes of this motion,

AIG is willing to assume the applicability of New York law, as it does not change the outcome

and Class Plaintiffs' state law claims still fail.  Class Plaintiffs are incorrect, however, in

suggesting that AIG has waived its right to argue choice of law by not asserting a definitive

position on the issue in the motion to dismiss.  *See Chatz v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pa.*, 372 B.R. 368, 374 (N.D. Ill. 2007) (no waiver of application of state's law

where reference to state's law was made early in the proceedings); *cf. Jaurequi v. John Deere*

*Co.*, 986 F.2d 170, 173 (7th Cir. 1993) (requiring party to notify court in timely manner to

preserve choice of law issue for appeal).[4]  The Court will be required to consider choice of law

when it decides whether to certify the Class, and AIG will present all appropriate arguments at

that time.  *See, e.g., In re Bridgestone/Firestone Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (lower

court required to perform complex choice-of-law analysis); *David v. Am. Suzuki Motor Co.*, 629

F. Supp. 2d 1309, 1315 n.2 (S.D. Fla. 2009) (reserving full choice-of-law analysis for the class

certification stage).

**B.**     **Class Plaintiffs' Fraud Claim Should be Dismissed for**
           **Failure to Plead Actual, Direct Reliance.**

Class Plaintiffs concede that they have not pled actual, direct reliance on Defendants'

allegedly fraudulent statements submitted to the NCCI.  (Class Pls.' Opp. at 23-24.)  This alone

warrants dismissal of Class Plaintiffs' fraud claim, as New York law is clear that all common

law fraud claims must be supported by factual allegations demonstrating a plaintiff's actual,

direct reliance on the defendant's misrepresentations.  *See, e.g., SIPC v. BDO Seidman LLP*, 49

F. Supp. 2d 644, 656 (S.D.N.Y. 1999) (dismissing fraud claim where plaintiffs did not allege that

---

[4] Class Plaintiffs' reliance on *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009), is misplaced, as
there the plaintiff agreed with the defendant's choice of law in its motion to dismiss, cited no law
from other states, and made no independent choice-of-law analysis of his own until seven
months after the district court decided the motion to dismiss. *Id.*

they received, read or reviewed any allegedly false financial statements by defendants and where the complaint alleged only that financial statements were sent to the SEC and NASD, neither of which directly communicated defendant's misrepresentations to plaintiff). *Ruffing v. Union Carbide Corp.*, 764 N.Y.S.2d 462 (N.Y. App. Div. 2003), cited by Class Plaintiffs, is not on point, as it held only that parental reliance on false statements by an advertiser may be imputed to a child.

Class Plaintiffs argue that this pleading deficiency is not fatal because the alleged false misrepresentations were sent to the NCCI, which acted as their agent. However, even assuming that this purported agency relationship is sufficient to excuse Class Plaintiffs' failure to plead actual, direct reliance, their convoluted reliance argument only serves to demonstrate that this action is really a reinsurance dispute. That is, the only way in which Class Plaintiffs can arguably assert reliance is through an agency relationship established by the contract at the heart of this dispute – the Articles of Agreement. (Class Pls.' Opp. at 23 ("[U]nder the Articles of Agreement, NCCI was 'designated as an agent for the participating companies,' and was appointed as their 'attorney-in-fact' relative to their obligations to each other, including the enforcement of those obligations.").) Any claim Class Plaintiffs have here necessarily has a remedy in contract, and their fraud claim should be dismissed as duplicative.

C.   **The Articles of Agreement Bar Class Plaintiffs' Fraud and Quasi-Contract Claims.**

   1.   Class Plaintiffs' Fraud Claim is Duplicative of their Breach of Contract Claim.

AIG argued in its opening memorandum that Class Plaintiffs' fraud claim should be dismissed as duplicative of and precluded by its contract claim for breach of the Articles. Class Plaintiffs offer several unavailing responses.

With respect to AIG only (as distinct from the AIG Subsidiaries), Class Plaintiffs argue that there is no duplication among their claims because AIG, which is not a signatory to the Articles, is accused only of fraud, not breach of contract.  Class Plaintiffs cite to *C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 431 (S.D.N.Y. 2005), for the proposition that a fraud claim is not duplicative of a breach of contract claim where the corporate defendant in the fraud claim is not in contractual privity with the plaintiff.  (Class Pls.' Opp. at 23.)  However, other New York courts have held otherwise.  *See, e.g., R.H. Damon & Co. Inc. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 992-93 (S.D.N.Y. 1993) (under New York law, fraud claims against representatives of a company were duplicative of the breach of contract claim against the company arising under the same facts); *Metro. Transp. Auth. v. Triumph Adver. Prods., Inc.*, 116 A.D. 2d 526, 527-28 (N.Y. App. Div. 1986) (fraud claim against the president of the company was duplicative of the breach of contract claim against the company where same allegations gave rise to both claims).

In addition, the logical extension of Class Plaintiffs' recognition that AIG had no contractual duty under the Articles to report premium to the NCCI is that the alleged misreporting of premium was done not by AIG but by the AIG Subsidiaries.  Aside from conclusory statements that AIG caused such misstatements by its subsidiaries, Class Plaintiffs provide no detail as to how or why AIG should be liable for purportedly fraudulent statements made by its subsidiaries, and its fraud claim fails on that basis.

As to the AIG Subsidiaries, Class Plaintiffs' fraud claim is, in fact, duplicative of their breach of contract claim and must be dismissed.  Class Plaintiffs incorrectly argue that – under New York law – a fraud claim is precluded by a breach of contract claim only when the

misrepresentations involve the parties' "intent to perform" the contract.  (Class Pls.' Opp. at 27.)

New York law is not so narrow.  As the Southern District of New York has explained:

> Under New York law, a fraud claim is precluded where it relates to a breach of contract.  If both claims are alleged, a court must determine whether a party has alleged the fraud claim as sufficiently extraneous and collateral to the contract claim. In making such a determination, a court should consider the source of damages alleged.  A court should also consider whether the pleader identified a violation of a duty apart from the duty to perform under the contract.

*Ladenburg Thalmann & Co. Inc. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 206

(S.D.N.Y. 2001) (dismissing fraud claim as duplicative when it arose from the same facts as, and

claimed the same compensatory damages as, a breach of contract claim) (internal citations

omitted).  Class Plaintiffs' fraud claim is not sufficiently extraneous to their breach of contract

claim.

Class Plaintiffs selectively quote from *Apple Records, Inc. v. Capitol Records, Inc.*, 529

N.Y.S.2d 279 (N.Y. App. Div. 1988) ("*Apple I*"), to argue that the focus of the redundancy test

under New York law is not whether the tortious conduct is separate and distinct from the

defendants' breach of contractual duties.  (Class Pls.' Opp. at 28-29.)  However, Class Plaintiffs

strategically ignore the mandate by the *Apple I* court that the fraud claim must be linked to

something extraneous to the contract:

> [T]he focus is on whether a noncontractual duty was violated; a duty imposed on individuals as a matter of social policy, as opposed to those imposed consensually as a matter of contractual agreement.  Thus, unless the contract creates a relation, out of which relation springs a duty, independent of the mere contract obligation, though there may be breach of the contract, there is no tort, since there is no duty to be violated.

529 N.Y.S.2d at 282 (quoting *Rich v. N.Y. Cent. & Hudson River R.R. Co.*, 87 N.Y. 382, 394

(N.Y. 1882)).  In *Apple I*, the plaintiffs alleged, in addition to a breach of contract claim, that the

defendants breached their duties as fiduciaries and bailees.  The court upheld the plaintiffs' fraud

15

claims only because "the pleadings were sufficient to raise an issue as to the existence of [duties

extraneous to the parties' contractual obligations.]" 529 N.Y.S.2d at 283.[5]  Class Plaintiffs fail to

allege that the AIG Subsidiaries owed any Participating Company a duty extraneous to the AIG

Subsidiaries' contractual obligation to submit accurate premium information to the NCCI.  *See*

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)

(holding that defendants owed no duty to the plaintiff beyond their express contractual

agreement and dismissing plaintiffs' fraud claim as duplicative of its contract claim).

As a last resort, Class Plaintiffs assert that the AIG Subsidiaries have an extra-contractual

duty correctly to report premium arising under unspecified "state statutes and regulations."

(Class Pls.' Opp. at 29-30 (internal citations omitted).)  However, Class Plaintiffs do not identify

– either in the FAC or in the opposition brief – what specific statute or regulation gives rise to

this alleged duty.  Nor do they cite any authority suggesting it is a duty actionable under New

York law.  This vague assertion of duty is further eroded by the plain language of Class

Plaintiffs' allegations.  In Count Six, alleging breach of contract, Class Plaintiffs assert, "Under

the Articles of Agreement, the AIG Companies have a duty to submit accurate premium data to

the NCCI . . . ."  (FAC ¶ 162; *see also id.* ¶¶ 4, 60.)  Class Plaintiffs' fraud claim is based wholly

on AIG's alleged failure to fulfill this contractual duty.  (*Id.* ¶ 139 (AIG Companies "knowingly

submitted false and inaccurate premium data to the NCCI....").)  Accordingly, the fraud claim

remains duplicative of that for breach of contract.[6]

---

[5] Similarly, in *Apple Corps. Ltd. v. Capital Records, Inc.*, No. 604385/2005, 2006 WL 2726809, at *4 (N.Y. Sup. Ct. Aug. 21, 2006) ("Apple II"), the court upheld the plaintiffs' fraud claim "because the Complaint adequately alleges the violation of various non-contractual duties."

[6]   The additional cases cited by Class Plaintiffs are also inapposite. In *Alio v. Perpignano*, 889 N.Y.S. 2d 100, 101-02 (N.Y. App. Div. 2009), plaintiffs' fraud claim was related to a breach of fiduciary duty claim that also survived dismissal; thus, plaintiffs had alleged a duty separate from contract. *Remee Products Corp. v. Sho-Me Power Electric Coop. & TM Sales, Inc.*, No. 01 Civ.

2.     Class Plaintiffs' Promissory Estoppel Claim Must be Dismissed.

Class Plaintiffs do not dispute that: (a) the existence of an express contract – the Articles – governing their obligations to and relationship with the AIG Subsidiaries precludes their promissory estoppel claim; or (b) they fail to allege that they changed their position in reasonable reliance on the AIG Subsidiaries' contractual promise to submit accurate premium data to the NCCI.  For these reasons alone, the claim should be dismissed.

Class Plaintiffs contend that a promissory estoppel claim cannot be disposed of on a motion to dismiss.  This contention is incorrect.  *See, e.g., Brown v. Brown*, 785 N.Y.S.2d 417, 419 (N.Y. App. Div. 2004) (dismissing promissory estoppel claim as precluded by contract); *Trafigura Beheer B.V. (Amsterdam) v. S. Caribbean Trading Ltd.*, No. 602890/03, 2004 WL 3270189, at *6 (N.Y. Sup. Ct. Aug. 23, 2004) (same).  *Contractual Obligations Productions, LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867, 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006), on which Class Plaintiffs rely for their erroneous position, is not applicable here.  Although the court there permitted the promissory estoppel claim as an alternate count, *id.* at *7, Class Plaintiffs have not pled in the alternative here, as they do not allege that the Articles are invalid or unenforceable.  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (dismissing promissory estoppel claim because, "[w]hile plaintiffs are generally free to plead alternative and contradictory theories of recovery . . . , [plaintiff's] failure to allege that the contracts at issue are invalid or unenforceable precludes it . . . from seeking quasi-contractual recovery for events arising out of the same subject matter." (internal citations omitted)).  Accordingly, the promissory estoppel claim should be dismissed with prejudice.

---

5554, 2003 WL 124517 (S.D.N.Y. Jan. 15, 2003), was disposed of under the standard for setting aside jury verdicts and dealt with special duties to disclose defects in the context of sale of goods. *Freedman v. Pearlman*, 706 N.Y.S.2d 405, 408 (N.Y. App. Div. 2000), arose in the special circumstances of an oral contract inducing continued employment, implicating policy concerns not at play here.

3.   Class Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.

Class Plaintiffs erroneously argue that their unjust enrichment claim against AIG is not precluded by the Articles, because AIG is not a party to that agreement.  However, "a quasi-contractual claim against a third party must be dismissed when an undisputedly valid and enforceable written contract governs the same subject matter." *Air Atlanta*, 637 F. Supp. 2d at 196 (dismissing unjust enrichment claim); *see also Vitale v. Steinberg*, 764 N.Y.S.2d 236, 239 (N.Y. App. Div. 2003) (dismissing unjust enrichment claim where "the existence of the plan agreement, an express contract governing the subject matter of plaintiff's claims, also bars the unjust enrichment cause of action as against the individual defendants, notwithstanding the fact that they were not signatories to that agreement").  Class Plaintiffs do not dispute that the Articles are a valid and binding agreement that covers the subject matter of their unjust enrichment claim against AIG, which is based on the same alleged conduct that underlies their breach of contract claim against the AIG Subsidiaries.

Class Plaintiffs further argue that the unjust enrichment claim should be sustained as an alternate theory of recovery to their breach of contract claim, relying on *Reimer v. Illinois Department of Transportation*, 148 F.3d 800 (7th Cir. 1998).  Not only did that case not involve an unjust enrichment claim, but this Court has recognized that if a plaintiff intends to plead an unjust enrichment claim in the alternative to a breach of contract claim, it must be sufficiently clear that it is doing so. *Purizer*, 2002 WL 22014 at *5.  Class Plaintiffs have not sufficiently pled their unjust enrichment claim in the alternative: they do not dispute that the Articles are valid and enforceable, and they in fact incorporate all prior allegations into this count – including the breach of contract claim.  (FAC ¶ 173.)  For these reasons, the unjust enrichment claim should be dismissed with prejudice.

18

**D.**    **Class Plaintiffs' Punitive Damages Claims Must Be Dismissed.**

As AIG's opening brief demonstrates, Class Plaintiffs' claims for punitive damages must be dismissed because the FAC alleges no harm to the public. In New York,[7] "[t]o recover punitive damages for a tort claim that 'arises from' a related contract claim, a plaintiff must demonstrate that the alleged misconduct was aimed at the public generally . . . ." *Soft Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 247 (S.D.N.Y. 2006) (internal citations omitted); *see also Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 266 (S.D.N.Y. 2005) (holding claim for fraudulent inducement to amend contract was encompassed by contract and public harm must be pled). Here, the allegations underlying the fraud claim – that Defendants "knowingly submitted false and inaccurate premium data to NCCI" – are precisely the same as the allegations underlying the breach of contract claim. (*Compare* FAC ¶ 139, *with id.* ¶ 163.) The fraud claim clearly "arises from" a related contract claim. In order to state a claim for punitive damages, Class Plaintiffs thus are required to allege harm aimed at the general public.[8]

The FAC contains no such allegation. Rather, Class Plaintiffs suggest for the first time in their opposition brief that the state and federal investigations into AIG's alleged conduct are sufficient to demonstrate public harm. Class Plaintiffs cite no authority to support this assertion. (Class Pls.' Opp. at 25-26.) Moreover, contrary to Class Plaintiffs' assertions, incidental harm to taxpayers is not enough to state a claim for harm to the general public. *See TVT Records v.*

---

[7]   As discussed above, AIG maintains that Class Plaintiffs' choice-of-law analysis is incorrect. Because Class Plaintiffs do not respond to Defendants' argument that punitive damages are barred under the laws of Class Plaintiffs' home states, however, AIG uses New York law to establish that Class Plaintiffs' request for punitive damages is barred even by their chosen state law. AIG reserves all rights to revisit the choice-of-law issue at the class certification stage.

[8] Class Plaintiffs rely on a single case, *Carvel Corp. v. Noonan*, 818 N.E.2d 1100 (N.Y. 2004), for the proposition that they need not allege public harm. (Class Pls.' Opp. at 25.) In that case, however, the court certified two questions of law to the New York state courts and thus deemed the punitive damages issue moot and declined to address it. *Carvel Corp.*, 818 N.E.2d at 1102.

*Island Def Jam Music Group*, 412 F.3d 82, 96 (2d Cir. 2005) ("We were not persuaded that conduct which could be characterized as defrauding the taxpayers and manipulating the judicial process had a sufficiently public component to support punitive damages.") (citing *United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996)).

The FAC alleges harm only in the form of pecuniary loss to the Class Plaintiffs. (*E.g.*, FAC ¶ 67.) This does not constitute "public harm" under New York law.[9] Accordingly, Class Plaintiffs have not adequately pled a claim for punitive damages.

---

[9] *See JFK Health & Welfare Fund, Inc. v. Analie Tours, Inc.*, No. 06-cv-2868, 2008 WL 819066, at *3 (E.D.N.Y. Mar. 25, 2008) (conduct allegedly harming only members of unincorporated association and their guests did not constitute public harm); *Envirocon, Inc. v. Alcoa, Inc.*, No. 7:06-cv-0549, 2006 WL 2460640, at *3-4 (N.D.N.Y. Aug. 23, 2006) (conduct affecting only plaintiff and others eligible to bid for contracts at issue did not constitute public harm); *Crigger v. Fahnestock & Co.*, No. 01 Civ. 07819, 2003 WL 22170607, at *14 (S.D.N.Y. Sept. 18, 2003) (no claim for punitive damages where no evidence is offered to demonstrate that the target of the fraud went beyond instant group of plaintiffs).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss Class

Plaintiffs' RICO, common law fraud, promissory estoppel, unjust enrichment and punitive

damages claims with prejudice and without leave to amend.

Respectfully submitted,

DEFENDANTS AMERICAN INTERNATIONAL
GROUP, INC., et al.,

By:    /s/ Stephen Novack
              One of Their Attorneys

Stephen Novack
P. Andrew Fleming
John F. Shonkwiler
Andrew D. Campbell
NOVACK AND MACEY LLP
100 North Riverside Plaze
Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
Brendan N. Snodgrass
QUINN EMANUEL URQUHART OLIVER
         & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 1001
(212) 849-7000

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew D. Campbell, an attorney, hereby certify that I caused true and correct copies of the foregoing **Defendants' Reply In Support Of Their Motion To Dismiss The First Amended Class Action Complaint** to be served by the U.S. District Court CM/ECF e-filing system on this, the 30th day of December, 2009.

_____/s/ Andrew D. Campbell_____