IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., | ) | |
| AIG CASUALTY COMPANY F/K/A, | ) | |
| BIRMINGHAM FIRE INSURANCE COMPANY | ) | |
| OF PENNSYLVANIA, AIU INSURANCE | ) | |
| COMPANY, AMERICAN HOME ASSURANCE | ) | |
| COMPANY, AMERICAN INTERNATIONAL | ) | |
| PACIFIC INSURANCE COMPANY | ) | |
| F/K/A AMERICAN FIDELITY COMPANY, | ) | |
| AMERICAN INTERNATIONAL SOUTH | ) | |
| INSURANCE COMPANY F/K/A AMERICAN | ) | |
| GLOBAL INSURANCE COMPANY, | ) | |
| AMERICAN INTERNATIONAL SPECIALTY | ) | |
| LINES INSURANCE COMPANY F/K/A | ) | |
| ALASKA INSURANCE COMPANY, | ) | |
| COMMERCE AND INDUSTRY INSURANCE | ) | |
| COMPANY, INC., GRANITE STATE | ) | |
| INSURANCE COMPANY, INC., | ) | |
| ILLINOIS NATIONAL INSURANCE | ) | |
| COMPANY, INSURANCE COMPANY OF THE | ) | |
| STATE OF PENNSYLVANIA, NATIONAL | ) | |
| UNION FIRE INSURANCE COMPANY OF | ) | |
| PITTSBURGH, NEW HAMPSHIRE | ) | |
| INDEMNITY COMPANY, and NEW | ) | |
| HAMPSHIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | No.  07 CV 2898 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ACE INA HOLDINGS, INC., ACE INA | ) | |
| HOLDINGS, INC., ADVANTAGE WORKERS | ) | |
| COMPENSATION INSURANCE COMPANY, | ) | |
| ALASKA NATIONAL INSURANCE | ) | |
| COMPANY, AMTRUST GROUP, BERKLEY | ) | |
| RISK ADMINISTRATORS CO. LLC, CHUBB | ) | |
| GROUP OF INSURANCE COMPANIES, | ) | |
| CINCINNATI INSURANCE COMPANY, | ) | |
| CIGNA GROUP INC., COMPANION | ) | |
| PROPERTY & CASUALTY INSURANCE | ) | |
| COMPANY, THE COVENANT GROUP, | ) | |
| CRUM & FORESTER, GUARD INSURANCE | ) | |
| COMPANY, GENERAL CASUALTY | ) | |
| INSURANCE COMPANIES, HARLEYSVILLE | ) | |

INSURANCE GROUP, THE HARTFORD                )
FINANCIAL SERVICES GROUP, INC.,              )
LIBERTY MUTUAL GROUP, INC., MEMIC            )
INDEMNITY COMPANY, SAFECO                    )
CORPORATION, TRAVELERS INSURANCE             )
GROUP, SENTRY INSURANCE GROUP,               )
TRUCK INSURANCE EXCHANGE, and                )
UTICA NATIONAL INSURANCE CO.,                )
                                             )
            Defendants.                      )
    _____               )
                                             )
                                             )
LIBERTY MUTUAL INSURANCE                     )
COMPANY, LIBERTY MUTUAL FIRE                 )
INSURANCE COMPANY, LIBERTY                   )
INSURANCE CORP., THE FIRST LIBERTY           )
INSURANCE CORP., EMPLOYERS                   )
INSURANCE COMPANY OF WAUSAU,                 )
WAUSAU BUSINESS INSURANCE                    )
COMPANY, WAUSAU GENERAL                      )
INSURANCE COMPANY, AND WAUSAU                )
UNDERWRITERS INSURANCE COMPANY,              )
                                             )
            Counter-Claimants,               )
      v.                                 )
                                             )
AMERICAN INTERNATIONAL GROUP, INC.,          )
AIG CASUALTY COMPANY F/K/A,                  )
BIRMINGHAM FIRE INSURANCE COMPANY            )
OF PENNSYLVANIA, AIU INSURANCE               )
COMPANY, AMERICAN HOME ASSURANCE             )
COMPANY, AMERICAN INTERNATIONAL              )
PACIFIC INSURANCE COMPANY                    )
F/K/A AMERICAN FIDELITY COMPANY,             )
AMERICAN INTERNATIONAL SOUTH                 )
INSURANCE COMPANY F/K/A AMERICAN             )
GLOBAL INSURANCE COMPANY,                    )
AMERICAN INTERNATIONAL SPECIALTY             )
LINES INSURANCE COMPANY F/K/A                )
ALASKA INSURANCE COMPANY,                    )
COMMERCE AND INDUSTRY INSURANCE              )
COMPANY, INC., GRANITE STATE                 )
INSURANCE COMPANY, INC., ILLINOIS            )
NATIONAL INSURANCE COMPANY,                  )

INSURANCE COMPANY OF THE STATE OF )
PENNSYLVANIA, NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, )
NEW HAMPSHIRE INDEMNITY COMPANY, )
and NEW HAMPSHIRE INSURANCE )
COMPANY, )
)
                Counter-Defendants. )
_____)
)
SAFECO INSURANCE COMPANY OF )
AMERICA and OHIO CASUALTY )
INSURANCE COMPANY, individually, and on )
behalf of a class consisting of members of the )
National Workers Compensation Reinsurance Pool, )
)
                Plaintiffs, )      No. 09 CV 2026
      v. )
)      Judge Robert W. Gettleman
AMERICAN INTERNATIONAL GROUP, INC., )
AIG CASUALTY COMPANY F/K/A, )
BIRMINGHAM FIRE INSURANCE COMPANY )
OF PENNSYLVANIA, AIU INSURANCE )
COMPANY, AMERICAN HOME ASSURANCE )
COMPANY, AMERICAN INTERNATIONAL )
PACIFIC INSURANCE COMPANY )
F/K/A AMERICAN FIDELITY COMPANY, )
AMERICAN INTERNATIONAL SOUTH )
INSURANCE COMPANY F/K/A AMERICAN )
GLOBAL INSURANCE COMPANY, )
AMERICAN INTERNATIONAL SPECIALTY )
LINES INSURANCE COMPANY F/K/A )
ALASKA INSURANCE COMPANY, )
COMMERCE AND INDUSTRY INSURANCE )
COMPANY, INC., GRANITE STATE )
INSURANCE COMPANY, INC., ILLINOIS )
NATIONAL INSURANCE COMPANY, )
INSURANCE COMPANY OF THE STATE OF )
PENNSYLVANIA, NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, )
NEW HAMPSHIRE INDEMNITY COMPANY, )
and NEW HAMPSHIRE INSURANCE )
COMPANY, )
)

3

Defendants.                              )

## MEMORANDUM OPINION AND ORDER

American Insurance Group, Inc. ("AIG") and its affiliates and subsidiaries, AIG Casualty

Company f/k/a Birmingham Fire Insurance Company of Pennsylvania, AIU Insurance Company,

American Home Assurance Company, American International Pacific Insurance Company f/k/a

American Fidelity Company, American International South Insurance Company f/k/a American

Global Insurance Company, American International Specialty Lines Insurance Company f/k/a

Alaska Insurance Company, Commerce and Industry Insurance Company, Inc., Granite State

Insurance Company, Illinois National Insurance Company, Insurance Company of the State of

Pennsylvania, National Union Fire Insurance Company of Pittsburgh, New Hampshire

Indemnity Company, and New Hampshire Insurance Company (collectively the "AIG

Companies" and with AIG, "Plaintiffs/AIG Defendants/Class Defendants") have filed a ten-

count first amended complaint against defendants/counter-plaintiffs:  the National Worker's

Compensation Reinsurance Pool ("NWCRP" or the "Pool"); the Pool's administrator and

attorney-in-fact, the National Council on Compensation Insurance, Inc. ("NCCI");[1] and nineteen

insurance companies that have served on the Board of Governors of the Pool (the "Pool Board

Members"), including Liberty Mutual Group ("Liberty Mutual"), Travelers Insurance Group

("Travelers"), The Hartford Financial Services Group (together with its subsidiaries, "The

Hartford"), and ACE INA Holdings, Inc. ("ACE", together with Liberty Mutual, Travelers, and

---

[1]The court notes that NCCI is not listed as a defendant in the caption or prefatory
language of the amended complaint.  It appears, however, that plaintiffs intended to include
NCCI as a defendant because Counts Nine and Ten are clearly directed against them.  The court
will address appropriate amendments to the pleadings in due course.

The Hartford, collectively the "RICO Defendants"), and Sentry, an insurance company that participates in the Pool and allegedly underreported premium data (together with the RICO Defendants, collectively the "Underreporting Participating Companies").

The amended complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO"), against the RICO Defendants (Counts One and Two), civil conspiracy against the RICO Defendants (Count Three), breach of fiduciary duty against the Pool Board Members (Count Four), two counts of fraud against the Underreporting Participating Companies (Counts Five and Six), breach of contract against the Underreporting Participating Companies (Count Seven), unjust enrichment against the Underreporting Participating Companies (Count Eight), equitable accounting against the Underreporting Participating Companies, the Pool, and NCCI (Count Nine), and an action on an open, mutual, and current account against the Underreporting Participating Companies, the Pool, and NCCI (Count Ten).

The Underreporting Participating Companies have moved to dismiss Counts One through Four and Count Eight for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The Pool Board Members who have not allegedly underreported their premium data, including Advantage Workers Compensation Insurance Company, Alaska National Insurance Company, Amtrust Financial Service, Inc., Berkley Risk Administrators Company LLC, Chubb & Son, a Division of Federal Insurance Company, Cincinnati Insurance Company, Companion Property & Casualty insurance Company, GUARD Insurance Group, Inc., General Casualty Company of Wisconsin, Harleysville Mutual Insurance Company, MEMIC Indemnity Company, Safeco Insurance Company of America, Trust Insurance Exchange, and Utica Mutual Insurance Company

(collectively the "Non-Underreporting Pool Board Members") have moved to dismiss Count

Four pursuant to Rule 12(b)(6).  Finally, NWCRP and NCCI have each independently moved to

dismiss Counts Nine and Ten on various grounds.

Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty

Insurance Company, and The First Liberty Insurance Corporation (collectively the "Liberty

Plaintiffs") together with Employers Insurance Company of Wausau, Wausau Business

Insurance Company, Wausau General Insurance Company, and Wausau Underwriters Insurance

Company (collectively the "Wausau Plaintiffs," and together with the Liberty Plaintiffs the

"Liberty Parties"), have brought a ten count counterclaim alleging:  violations of RICO, 18

U.S.C. §§ 1962(c) and (d), against AIG (Claims One and Two ); common law fraud against all

AIG Defendants (Claim Three); violation of the Massachusetts Regulation of Business Practice

and Consumer Protection Act against all AIG Defendants (Claim Four); an action for an

accounting against all AIG Defendants (Claim Five); an action on an open, mutual, and current

account against the AIG Companies (Claim Six); breach of contract against the AIG Companies

(Claim Seven); promissory estoppel against the AIG Companies (Claim Eight); and unjust

enrichment against AIG (Claim Nine).   The AIG Defendants have moved to dismiss Claims One

through Four and Eight through Nine.

Finally, Safeco Insurance Company of America ("Safeco") and Ohio Casualty Insurance

Company ("Ohio Casualty") (collectively "Class Plaintiffs"), individually, and on behalf of a

putative class consisting of members of the NWCRP (excluding Class Defendants), have brought

an eight count amended class action complaint against Class Defendants.  The Class Action

Complaint alleges violations of RICO against AIG (Counts One and Two); common law fraud

against Class Defendants (Count Three); an action for an accounting against Class Defendants (Count Four); an action on an open, mutual, and current account against the AIG Companies (Count Five); breach of contract against the AIG Companies (Count Six); promissory estoppel against the AIG Companies (Count Seven); and unjust enrichment against AIG (Count Eight). Class Defendants have moved to dismiss Counts One through Three and Seven through Eight of the Class Action Complaint.

For the reasons stated below, the motions are granted in part and denied in part.

## BACKGROUND

### Procedural History

This case has a long and tortured procedural history. The court has previously issued three memorandum opinions and orders that provide useful background information.[2]

The original complaint in this matter was filed by NCCI acting solely as attorney-in-fact for the participating companies of the NWCRP ("Participating Companies") against plaintiffs. All of the counts of that complaint were based on alleged intentional fraudulent conduct by plaintiffs in underreporting workers compensation premiums to the Pool. In their answer to the original complaint, plaintiffs raised numerous affirmative defenses and filed counterclaims for an equitable accounting and an action on an open, mutual, and current account. Plaintiffs also filed

---

[2] See, Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc., 2009 WL 2588902, 2009 U.S. Dist. LEXIS 73871 (N.D. Ill. Aug. 20, 2009); Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc., 2009 WL 466802, 2009 U.S. Dist. LEXIS 14524 (N.D. Ill. Feb. 23, 2009); Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc., 2007 U.S. Dist. LEXIS 98659 (N.D. Ill. Dec. 26, 2007); Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc., 2007 WL 4365372, 2007 U.S. Dist. LEXIS 91518 (N.D. Ill. Dec. 11, 2007); Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc., 2007 U.S. Dist. LEXIS 59707 (N.D. Ill. Aug. 6, 2007).

a third-party complaint against 24 named companies and unnamed companies.  NCCI

subsequently moved to strike the affirmative defenses and to dismiss the counterclaims.  The

third-party defendants filed a motion to dismiss the third-party complaint.

In a February 23, 2009, ruling on these motions (the "February 23 Order"), the court

granted in part and denied in part NCCI's motion to strike plaintiffs' affirmative defenses,[3] and

denied the motion to dismiss the counterclaims.  The February 23 Order also granted the third-

party defendants' motion to dismiss plaintiffs' claims for violations of RICO, RICO conspiracy,

civil conspiracy, and contribution.  The order denied the motion to dismiss plaintiffs' claims for

breach of fiduciary duty, two counts of fraud, and unjust enrichment.

Before the February 23 Order was issued, plaintiffs filed a motion to dismiss NCCI's

underlying complaint for lack of subject matter jurisdiction.  On August 20, 2009, this court held

that NCCI lacked standing to sue plaintiffs and dismissed NCCI's original complaint.  On

October 16, 2009, plaintiffs filed a first amended complaint, now as lead plaintiffs, restating their

counterclaims and third-party claims.  Defendants NCCI, NWCRP, and the individually named

Participating Companies have moved to dismiss the amended complaint.  A sub-set of the

defendant Participating Companies – the Liberty Parties – have filed numerous counterclaims,

some of which plaintiffs have moved to dismiss.

In addition, on April 1, 2009, Safeco and Ohio Casualty filed a putative class action

complaint on behalf of the Participating Companies not named as Class Defendants.  On

April 14, 2009, that case was brought in as related to the No. 07-C-2898 case and reassigned to

---

[3]  The court granted NCCI's motion to strike the affirmative defenses of "Contributory
Wrongful Conduct," "Statute of Limitations," "Laches," "Parens Patriae," "Failure to Mitigate
Damages," "In Pari Delicto," "Unclean Hands," "Estoppel," "Payment," and "Setoff."

this court.  Class Defendants have since moved to dismiss various counts of the class action complaint.

***Facts Common to All Actions***

The current pleadings contain no new allegations that alter the basic facts of how the market for workers compensation functions, as recited in the court's previous opinions.  All states require employers to provide workers compensation insurance for their employees.  Most employers find insurers willing to provide them with coverage, and participate in what is known as the "voluntary market" for workers compensation insurance.  Insurers that provide coverage to the voluntary market are also required to provide coverage to the "residual market" – the market for employers that cannot obtain coverage on the voluntary market – through a state's assigned risk plan.  Under that plan, the amount of insurance an insurer is required to provide to the residual market is directly proportional to the amount of premiums it collects for the policies it writes for the voluntary market.

Established in 1970, the Pool provides insurance companies with a means of complying with their residual market requirements.  The Pool is organized and governed by Articles of Agreement ("the Articles"), a contract to which all Participating Companies have agreed and are signatories.  The Articles provide that NCCI, a statistical, research, and ratemaking not-for-profit corporation, is the administrator of the Pool and is responsible for a variety of functions related to fulfilling the purpose of the Pool.  As administrator, NCCI "executes the quota share reinsurance contracts on behalf of the participating companies . . . performs all accounting, actuarial, and administrative functions for those agreements including data collection and

billing."  It also administers bank accounts for the Pool and the Participating Companies, and functions as the attorney-in-fact for each Participating Company.[4]

NCCI's primary role is to calculate the "reinsurance participation rate" for each Participating Company using premium data from the annual certified financial reports filed by each company.  These rates reflect each company's proportional share of the residual market on a  a state-by-state and policy-year-by-policy-year basis.  A company's annual reinsurance participation rate is the ratio of the amount of voluntary market workers compensation premiums billed by that company (numerator) to the total amount of workers compensation premiums billed in the voluntary market by all Participating Companies (denominator).  Consequently, any company that underreports its premiums to NCCI decreases its reinsurance participation rate and the overall total used to calculate all the rates.

In 2005, the New York Attorney General and the New York Department of Insurance (the "New York Authorities") launched an investigation into the AIG Defendants' workers compensation premium reporting practices.  In January 2006, AIG entered into a settlement with the New York Authorities in which AIG established a fund of over $300 million (the "Fund") to compensate third parties, including the Pool, allegedly injured as a consequence of the AIG Defendants' alleged underreporting.

---

[4]The court incorrectly stated in the February 23 Order that NCCI functions as the attorney-in-fact for the Pool, rather than the Participating Companies.

## DISCUSSION

**Legal Standard**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits.  Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor.  McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006).  Nevertheless, the complaint must plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Allegations of fraud are subject to a heightened pleading standard.  Fed. R. Civ. P. 9(b).  Fraud must be pled with particularity, which means the complaint must allege the "who, what, when, where and how" of the fraud.  DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).  At the motion to dismiss stage, Rule 9(b) requires only that the plaintiff identify the alleged misrepresentations, not actually prove that the statement was false.  See Bankers Trust Co. v. Old Republic Ins., Co., 959 F.2d 677, 683 (7th Cir. 1992).  This standard also applies to allegations of predicate acts of fraud in the RICO context.  See Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 597-99 (7th Cir. 2001); Haroco, Inc. v. Am. Nat'l Bank and Trust Co., 747 F.2d 384, 405 (7th Cir. 1984) (finding that the plaintiff adequately specified the transactions, the false representations, and the identities of those involved).  The pleadings must be specific enough to put defendants on notice of the conduct alleged.

**Motions to Dismiss the Amended Complaint**

*Facts Specific to the Amended Complaint*

Plaintiffs have brought the underlying action against: (1) the Pool; (2) NCCI, the Pool's administrator; (3) nineteen insurance companies that have served as Pool Board Members; and (4) Sentry, an insurance company that participates in the Pool and that is alleged to have underreported its workers compensation premiums to the Pool.  Plaintiffs' claims against defendants stem from five broad, underlying allegations.  First, plaintiffs allege that the Underreporting Participating Companies improperly underreported to NCCI the amount of their voluntary market workers compensation premiums, which resulted in a decrease in their residual market obligations.  Second, plaintiffs allege that the Pool Board Members declined to participate in the Fund, blocked any states from making claims against the Fund on the Pool's behalf, and prevented the Pool from making claims against the Fund.  Third, plaintiffs contend that the Pool Board Members suppressed any investigation into premium underreporting by any Participating Companies other than plaintiffs.  This decision came despite the Pool Board's knowledge of evidence warranting investigation into underreporting by Sentry and the four RICO Defendants.  Fourth, plaintiffs allege that the RICO Defendants conspired to direct NCCI to issue false quarterly Pool statements to plaintiffs and other Participating Companies, which they relied upon and paid.  Finally, plaintiffs allege that the Pool Board directed NCCI to ignore plaintiffs' amended premium filings with the intent of further disabling the effectiveness of the Fund and rendering plaintiffs unable to address their alleged underreporting.

The theory of plaintiffs' RICO claims is that the four RICO defendants concealed and failed to investigate the underreporting of premiums by other Participating Companies and that

each RICO defendant was "aware of its own underreporting and also was aware of the underreporting by the other" RICO Defendants.  Specifically, plaintiffs allege that the RICO Defendants:  (1) directed NCCI to ignore its standard administrative practices; (2) were aware of evidence warranting investigation of underreporting by the RICO Defendants, but failed to investigate; (3) directed NCCI to issue inaccurate quarterly statements to the Participating Companies; and (4) refused to participate in the Fund.

**NCCI's Motion to Dismiss Counts Nine and Ten**

In Counts Nine and Ten, plaintiffs assert claims for an accounting and an action on an open, mutual, and current account.  NCCI has moved to dismiss these claims on the grounds that: (1) plaintiffs fail to state a claim for an accounting; (2) plaintiffs cannot state a claim for an accounting where it has an adequate legal remedy through its breach of contract claim; and (3) NCCI is not a proper party to this action.  Specifically, NCCI argues that because plaintiffs have failed to allege that NCCI possesses the workers compensation premium data from the Underreporting Companies that is needed to recalculate the correct reinsurance participation rate for each Participating Company, plaintiffs fail to state a claim for an accounting.  NCCI also argues that plaintiffs cannot state a claim for an accounting because it has not and cannot allege that if it prevails on its breach of contract claim it will not have an adequate remedy at law. Finally, NCCI argues that Counts Nine and Ten are not ripe for adjudication unless and until new premium information is established.

Plaintiffs argue in response that NCCI's motion fails for several reasons: (1) the court has already upheld plaintiffs' claims for an accounting and an open, mutual, and current account, and

NCCI has not presented the court with any clear or convincing reason for the court to reexamine its prior ruling; (2) the amended complaint states a claim for both an equitable accounting and an open, mutual, and current account; (3) NCCI's involvement in a full accounting is necessary because, along with the Pool, it has the unique ability to execute the recalculation of participation ratios and residual market expenses and properly allocate losses among the Participating Companies; (4) an adequate remedy at law does not exist because of the complex calculations involved in correcting the residual market allocations; and (5) plaintiffs' claims against NCCI are ripe because the complaint alleges that plaintiffs suffered a concrete injury as a result of the alleged scheme, and an accounting by NCCI is necessary to ascertain the magnitude, not the existence, of the damages.  The court will consider plaintiffs' arguments in turn.

### Law of the Case

As a preliminary matter, plaintiffs argue that the "law of the case" doctrine bars the motions to dismiss brought by the Non-Underreporting Pool Board Members, NCCI, and the Pool.

In the February 23 Order, because plaintiffs had sufficiently alleged a need for an equitable accounting, the court denied NCCI's motion to dismiss the counterclaim for an accounting and an action on a open, mutual, current account.  Specifically, the court found that both plaintiffs and NCCI were entitled to request an accounting if there were errors in the reported premium data and consequent errors in the computations of the Participating Companies' proportional shares of the residual market.  In a subsequent Memorandum Opinion

and Order issued on August 20, 2009 ("August 20 Order"), the court held that NCCI lacked standing to bring an action against plaintiffs and dismissed NCCI's complaint.

The rule of the law of the case provides that when an issue has been litigated and decided, a court's unreversed decision on a question of law or fact settles that question for all subsequent stages of the suit.  Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995).  Under this doctrine, a court has the discretion to reconsider a previous ruling in the same litigation if there is a compelling reason that makes clear that the earlier ruling was erroneous.  Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 571-72 (7th Cir. 2006).

While NCCI and the Pool are correct that the court's August 20 Order changed the manner in which the instant litigation is structured and captioned, these changes do not compel the court to revisit the February 23 Order because they did not result in plaintiffs bringing substantially different allegations with respect to the claims underlying Counts Nine and Ten. The crux of plaintiffs' claims continues to be that because the Underreporting Participating Companies gave NCCI and/or the Pool inaccurate reports, and NCCI used this data to calculate incorrect residual market obligations, plaintiffs have a compelling need for access to this information so they can understand the scope and consequences of the premium underrporting and its impact.  Although NCCI is no longer the plaintiff in this case, the court concludes that in the event plaintiffs are able to prove their allegations of underreporting, NCCI's participation in an equitable accounting and an action on an open, mutual, current account is proper because of its key role in determining the market participation rate.[5]

_____

[5]NCCI has conceded in prior filings with the court that it possesses the raw data submitted by the Participating Companies.  See Memorandum in Support of Motion to Dismiss
(continued...)

For these reasons, the court finds it is unnecessary to reach the numerous other arguments NCCI has presented in support of its motion to dismiss Counts Nine and Ten. That motion is denied.

**NWCRP's Motion to Dismiss Counts Nine and Ten**

The Pool correctly argues that because it was not previously a party to the case and did not participate in the original motions to dismiss the original iterations of plaintiffs' claims for an accounting and an action on an open, mutual, and current account, it should not be foreclosed from doing so now. The court agrees that plaintiffs' law of the case argument does not apply to the Pool's current motion because it has not previously had an opportunity to brief its position on these claims.

The Pool asserts four arguments in support of its motion to dismiss: (1) the Pool is not an entity capable of being sued because it is merely a collection of contracts; (2) the Pool has not been properly served with process because it has no agent; (3) plaintiffs' remedy lies with the Participating Companies because the Pool does not control accounting records; and (4) plaintiffs' own unclean hands bar an action for an equitable accounting. None of these arguments have merit.

First, on January 1, 2010, the NWCRP became the National Workers Compensation Reinsurance Association ("NWCRA"), a not-for-profit corporation responsible for the

_____

[5](...continued)
AIG's Counterclaims, Doc. 268.

-16-

reinsurance pooling mechanism.[6]  Although the court was not informed by the parties of this change, it has taken judicial notice of this fact.  See Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994) (court may take judicial notice of matters of public record without converting the motion into a motion for summary judgment).  Second, the docket for this case shows that the Pool was properly served with summons and a copy of the amended complaint on December 15, 2009.  See Docket Entries 554, 555.  Therefore, the Pool's first and second arguments are moot.

The Pool's third argument fails because plaintiffs have sufficiently alleged that the Pool, and/or NCCI on behalf of the Pool, is in possession of the premium information originally reported on behalf of the Underreporting Participating Companies.  Any factual disputes on this issue must be dealt with at a later stage in the proceedings.  Finally, the Pool's fourth argument fails because unclean hands is an affirmative defense, and "affirmative defenses do not justify dismissal under Rule 12(b)(6)."  Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003).

For these reasons, the Pool's motion to dismiss Counts Nine and Ten is denied.

---

[6]See Ron Cooper, Indiana Compensation Rating Bureau, National Pool: Explanation of the National Workers Compensation Reinsurance Pool (NWCRP) (2009), http://sharepoint.icrb.net/public/CompClues/details.aspx?Item=180 (reporting the reorganization of the NWCRP as the NWCRA effective January 1, 2010); Nat'l Council on Compensation, Inc., Residual Market Management Summary 2007 6 (2007), https://www.ncci.com/documents/RM_Mgmt_Sum_2007.pdf (announcing the reorganization of the NWCRP as the NWCRA); Nat'l Council on Compensation, Inc., National Workers Compensation Reinsurance Association NFP Bylaws, https://www.ncci.com/nccimain/ResidualMarkets/EmployerProducerCarrierResources/Carrier/P ages/NFPBylaws.aspx (reporting an effective date of January 1, 2010, for the NWCRA NFP bylaws).

**Non-Underreporting Pool Board Members**

The Non-Underreporting Pool Board Members have moved to dismiss Count Four of the amended complaint for breach of fiduciary duty, arguing that plaintiffs have failed to state a claim for relief pursuant to Rule 12(b)(6) because the allegations are conclusory and implausible.

Plaintiffs argue in response that the amended complaint alleges sufficient, plausible facts to demonstrate that the Pool Board Members knew of the alleged underreporting and refused to investigate it.  Plaintiffs further argue that under the law of the case doctrine the court should deny the motion because the court rejected these same arguments when defendants moved to dismiss plaintiffs' breach of fiduciary duty claim in its original third-party complaint.  The Non-Underreporting Pool Board Members contend that the law of the case doctrine does not apply here because: (1) plaintiffs have materially changed the allegations of this claim upon repleading, Sharp Elecs. Corp. v. Metro. Life Ins. Co., 578 F.3d 505, 510 (7th Cir. 2009); and (2) the Supreme Court's May 2009 decision in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), which clarifies the scope of pleading standards introduced in Bell Atlantic v. Twombly, 550 U.S. 544 (2007), provides a compelling reason for the court to reconsider its previous ruling.

Upon review of the allegations in both plaintiffs' third-party complaint and the amended complaint, the court agrees that the law of the case doctrine applies here and declines to revisit its earlier ruling.  In both versions of the claim, plaintiffs generally allege that the Non-Underreporting Pool Board Members breached their fiduciary duties to plaintiffs by failing to investigate and assert claims for fraudulent conduct of the Underreporting Participating Companies and assisting in the concealment of that conduct.  The specific factual allegations of the amended complaint are more robust and specific than those pled in the third-party complaint.

Plaintiffs provide several specific allegations demonstrating that the Pool Board Members, which by definition include the Non-Underreporting Pool Board Members, knew of the alleged underreporting, ignored the conduct, and chose not to investigate.

The Non-Underreporting Pool Board Members argue that these new allegations render Count Four implausible on its face, and that it defies common sense for the Non-Underreporting Pool Board Members to act against their own financial interests and agree to conceal underreporting by other Participating Companies.  Contrary to defendants' assertions, the changes to Count Four do not materially alter the claim in such a way as to cause the court to revisit its earlier decision.  Rather, the changes lend further weight to the already sufficiently pled claim and underscore the court's prior rejection of defendants' repeated arguments supporting their motions to dismiss.  While the allegations of the amended complaint do not explore all of the possible motivations of the Non-Underreporting Pool Board Members, plaintiffs do offer facts to suggest that the Pool Board Members' conduct was driven by a desire to "get" AIG.  This explanation may or may not be true, but it is not implausible on its face.  Further, although defendants are correct that Iqbal provides additional clarification of the scope of pleading standards as articulated in Twombly, consideration of Iqbal does not compel the court to alter the standard by which it analyzed the previous motion to dismiss the third-party complaint.  Accordingly, the court denies the Non-Underreporting Pool Board Members' motion to dismiss Count Four.

**RICO Defendants**

In Counts One, Two, and Three of the amended complaint, plaintiffs have re-pled their RICO, RICO conspiracy, and civil conspiracy claims against a sub-set of the original third-party defendants, including ACE, The Hartford, Liberty Mutual, and Travelers (collectively the "RICO Defendants").

To state a RICO claim under § 1962(c) or (d), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Jennings v. Auto Meter Products, Inc., 495 F.3d 466, 472 (7th Cir. 2007). "Pattern of racketeering activity" is defined in 18 U.S.C. § 1961(5) as the commission of at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten year period. In the instant case, plaintiffs allege predicate acts of mail and wire fraud and deprivation of "honest services" fraud.

Acts of mail and wire fraud must be pled with particularity under Fed. R. Civ. P. 9(b). The pleading party must explain how the predicate act of mail or wire fraud constitutes "racketeering activity." Williams v. Aztar Indiana Gaming Corp., 351 F.3d 294, 298 (7th Cir. 2003). The elements of mail fraud under 18 U.S.C. § 1341 are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." Id. at 299 (quoting United States v. Walker, 9 F.3d 1245, 1249 (7th Cir. 1993)); see also Uni*Quality, Inc. v. Infrotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) ("Plaintiff must plead the 'who, what, when, and where' of the alleged fraud."). A defendant's participation in a scheme to defraud with intent to defraud is also

an element of an "honest services" mail or wire fraud claim under 18 U.S.C. § 1346.  See <u>U.S. v.</u>
<u>Fernandes</u>, 272 F.3d 938, 944-45 (7th Cir. 2001).[7]

Plaintiffs' claims against defendants stem from five broad, underlying allegations.  First,
plaintiffs allege that the Pool Board Members declined to participate in the Fund, blocked any
states from claiming against the Fund on the Pool's behalf, and prevented the Pool from making
any claims against the Fund.  Second, plaintiffs contend that the Pool Board Members
suppressed any investigation into premium underreporting by Participating Companies other
than the AIG Companies.  This decision came despite the Pool Board's knowledge of evidence
warranting investigation into underreporting by four companies on the Pool Board and Sentry.
Third, plaintiffs allege that the RICO Defendants conspired to direct NCCI to issue false
quarterly Pool statements to the AIG Companies and other Participating Companies that they
relied upon and paid.  Lastly, plaintiffs allege that the Pool Board directed NCCI to ignore the
AIG Companies' amended premium filings with the intent of further disabling the effectiveness
of the Fund and rendering plaintiffs' unable to address their alleged underreporting.

In their motion to dismiss, the RICO Defendants argue that plaintiffs' RICO allegations
are not pled with sufficient specificity and do not present a plausible theory of liability.


**Count One** - **RICO**

First, the RICO Defendants argue that the amended complaint has not provided any
factual allegations to support the contention that each of their respective companies were aware

---

[7]Based on the recent Supreme Court decisions in <u>Skilling v. U.S.</u>, --- S.Ct. ----, 2010 WL
2518587 (June 24, 2010) and <u>Black v. U.S.</u>, --- S.Ct. ----, 2010 WL 2518593 (June 24, 2010) the
court will strike the honest services fraud allegations in the pleadings.

of underreporting by the companies other than those which the court found insufficient in dismissing plaintiffs' original third-party complaint.  They contend that absent such allegations, plaintiffs have once again failed to properly plead facts sufficient to satisfy the knowledge elements of mail and wire fraud, 18 U.S.C. § 1341, or honest services fraud, 18 U.S.C. § 1346.

The allegations of the amended complaint, taken as a whole, are sufficient to allege collective knowledge of underreporting among the RICO Defendants.  The amended complaint includes references to internal company memoranda, independent reports, and public statements cited in the original third-party complaint,[8] and new facts including the specific Pool Board positions the RICO Defendants held and their access to information in their respective positions. One critical difference between the third-party complaint and the amended complaint is that plaintiffs have reduced the number of RICO Defendants from 21 to four.  Moreover, the amended complaint alleges that Liberty Mutual and The Hartford dominated key positions within the Pool Board's leadership, and Travelers was given special access to Executive Sessions where the Pool's investigation of plaintiffs was discussed even when Travelers was not serving on the Pool Board.  Travelers, along with The Hartford and Liberty Mutual, was also included in the Pool Board's special ad-hoc committee formed to investigate plaintiffs' underreporting.

---

[8] These include: a 2001 report commissioned by a consortium of 13 states to test the accuracy of NCCI's data and systems; a public disclosure by The Hartford and Travelers revealing that they were subpoenaed by the New York Authorities for issues relating to their premium reporting; a January 31, 1992, internal memorandum authored by a Wausau (now a subsidiary of Liberty Mutual) executive describing a method by which Wausau underreported premiums; a second Wausau internal memorandum describing "creative" ways in which competitors were underreporting to NCCI; a public disclosure by the The Hartford stating that it had entered into a $115 million settlement with the New York Attorney General's office to resolve matters related to The Hartford's underreporting of workers compensation premiums; and testimony of a former Travelers executive, to which the Pool's lawyers purportedly had access,   admitting to underreporting schemes at Travelers.

Based on these allegations it is reasonable to infer that these three companies had knowledge of underreporting occurring within the Pool Board's ranks and among Participating Companies.  Less apparent is how CIGNA/ACE shared in this knowledge.  While the amended complaint details how ACE was doing its own underreporting, there are no specific allegations that it was similarly situated in privileged positions to share this knowledge with the other three RICO Defendants.  Specificity, however, is not a requisite for pleading knowledge, and the court instead focuses on making reasonable inferences based on the allegations of the entire complaint. See Norfolk County Ret. System v. Ustian, 2009 WL 2386156, at *11 (N.D. Ill. July 28, 2009).

The critical difference for the court between the instant complaint and the previous third-party complaint is that plaintiffs have provided sufficient detail to allege that each of the RICO Defendants was underreporting, that each was a Pool Board Member and/or had special access to board matters during the relevant time period, and that each had reason to be aware of various reports, statements, and other information revealing premium underreporting among Participating Companies.  These allegations are sufficient to put the RICO Defendants on notice of plaintiffs' claims against them.  For these reasons, the court denies the RICO Defendants' motion to dismiss on the basis of knowledge.


***Fed. R. Civ. P. 9(b)***

In Count One of the amended complaint, plaintiffs detail two separate and distinct ways in which the RICO Defendants have deprived plaintiffs and other Participating Companies of their money and property: (1) the RICO Defendants have used the Pool to issue false and materially misleading invoices through the mail and wires which were subsequently paid, and (2)

the RICO Defendants have made false and materially misleading statements and engaged in conduct that has deprived plaintiffs and other Participating Companies of their right to honest services.  The court will, as noted previously, strike references to honest services fraud in the pleadings per Skilling v. U.S., --- S.Ct. ----, 2010 WL 2518587 (June 24, 2010) and Black v. U.S., --- S.Ct. ----, 2010 WL 2518593 (June 24, 2010).

As stated in the court's February 23 Order, under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud."  Rule 9(b) does not require "particularity" with respect to a defendant's mental state, but the complaint must allege facts from which it could be inferred that the defendants engaged in the scheme with fraudulent intent. Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994) (citing McDonald v. Schencker, 18 F.3d 491, 495 (7th Cir. 1994)).  In a RICO case with multiple defendants, Rule 9(b) requires a plaintiff to plead sufficient facts to notify each defendant of its alleged participation in the scheme.  Goren v. New Vision Int'l, Inc., 156 F.3d 721, 726 (7th Cir. 1998).  To satisfy this requirement, a plaintiff must allege "the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  Slaney v. Int'l Amateur Ath. Fed'n, 244 F.3d 580, 599 (7th Cir. 2001).  The heightened pleading standard of Rule 9(b) "serves three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party."  Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994).  The complaint should not lump multiple defendants together, but should "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendants."  Vicom, 20 F.3d at

-24-

778 (quoting <u>Balabanous v. North Am. Inv. Group, Ltd.</u>, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988)).

The RICO Defendants contend that plaintiffs fail to plead fraud with the particularity required under Rule 9(b).  Specifically, they argue that plaintiffs' allegations that the RICO Defendants engaged in fraudulent activity as a collective unit necessarily fail because the RICO Defendants did not all serve on the Pool Board concurrently or for the duration of the years that the alleged fraudulent conduct occurred.  Plaintiffs counter that the pleadings as a whole give the RICO Defendants ample notice of the claims against them, and that individualized pleading is not necessary where the fraud was perpetrated as the collective action of the board members.

A thorough review of the amended complaint reveals that plaintiffs have provided sufficient details regarding the allegations of collective action as to the multiple fraudulent invoices the Pool Board directed NCCI to send to the AIG Companies.  Unlike cases in which this court has found improper lumping of defendants and lack of detail, the amended complaint is sufficiently precise and coherent, and adequately gives the RICO Defendants notice of the claims against them.  See, e.g., <u>Suburban Buick, Inc. v. Gargo</u>, 2009 WL 1543709, at *4-5 (N.D. Ill. May 29, 2009) ("The complaint exhibits a kitchen-sink style of pleading, which has resulted in a very confusing, imprecise, and muddied set of allegations and counts against defendants."). Plaintiffs have listed the numbers, dates, and amounts of the invoices the AIG Companies received from NCCI from December 2005 through September 2009.  The complaint also provides the dates on which the RICO Defendants served on the Pool Board, and specific allegations of each RICO Defendants' underreporting scheme. While the complaint does not

provide specific allegations about all of the conduct of each individual RICO Defendant, this is not fatal to the RICO claims.

Even given the heightened requirements of Rule 9(b), "there is a presumption that false and misleading 'group published information' [such as annual reports, press releases, and prospectuses] is a collective action of the company's officer and directors." Shapo v. O'Shaughnessy, 246 F. Supp. 2d 935, 957 (N.D. Ill. 2002) (citing Petri v. Gatlin, 997 F. Supp. 956, 974 (N.D. Ill. 1997). The Seventh Circuit allows courts to "loosen the requirements [of Rule 9(b)]" upon plaintiff's showing that information needed is within defendant's control and cannot be obtained without discovery. Shapo, 246 F. Supp. 2d at 955-56. Plaintiffs have alleged all of the details they could reasonably be expected to know at this stage in the litigation given that many of the specific details are within the exclusive control of the RICO Defendants. Significantly, the amended complaint gives sufficient notice to the RICO Defendants of the nature of plaintiffs' claims so that these four companies can answer the allegations. Based on these allegations, it is reasonable and plausible to presume that the RICO Defendants used their influence on the Pool Board to cause the invoices to be sent in furtherance of their scheme to defraud AIG and the other Participating Companies and to cover-up their own underreporting, all in an effort to minimize their costs and gain competitive advantage over AIG.

Accordingly, the RICO Defendants' motion to dismiss Count One of the amended complaint is denied.

**Count Two - RICO Conspiracy**

Count Two of the amended complaint alleges that each RICO defendant intentionally conspired and agreed to violate 18 U.S.C. § 1962(c).  The RICO Defendants argue that Count Two should be dismissed because there are no allegations of who made the alleged agreement to conspire to commit RICO violations or when and how that agreement was made.

To state a claim for a violation of 18 U.S.C. § 1962(c), a plaintiff must allege that a defendant "knowingly agreed to perform services of a kind, which facilitated the activities of those who operated the enterprise in an illegal manner."  Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961, 967 (7th Cir. 2000).  Proof of an agreement does not require direct evidence because "'an agreement can be inferred from the circumstances.'"  United States v. Useni, 516 F.3d 634, 646 (7th Cir. 2008) (quoting United States v. Campione, 942 F.2d 429, 438 (7th Cir. 1991).  A defendant's mere association with the conspirators, knowledge of the conspiracy, or presence during discussion related to the conspiracy are insufficient.  Useni, 516 F.3d at 646 (quoting United States v. Percival, 756 F.2d 600, 610 (7th Cir. 1985).

At the pleading stage, AIG is not required to provide specific details of  how the agreement was formed and by whom.  All it must do is provide a reasonable basis by which the court can infer that the RICO Defendants intentionally came to such an agreement.  The amended complaint taken as a whole provides ample details of the alleged conduct and the nature of the agreement underlying this conduct including the RICO Defendants' efforts to: conceal their own and their co-conspirators' underreporting; maintain a presence on the Pool Board; dominate top board leadership positions; and control the ad hoc committee formed to investigate AIG's underreporting.  These allegations are sufficient to raise a reasonable inference

of an agreement among the RICO Defendants.  Consequently, the RICO Defendants' motion to dismiss Count Two is denied.

## Count Three - Civil Conspiracy[9]

Count Three of the amended complaint alleges a civil conspiracy among the RICO Defendants.  Under New York law, a claim for civil conspiracy is available only where there is evidence of an underlying actionable tort.  Brownstone Inv. Group, LLC v. Levey, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007) (citations omitted).  To state a claim for civil conspiracy a plaintiff must allege specific times, facts, and circumstances of, "(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy."  Id.      The RICO Defendants have not prevailed in their attempts to dismiss plaintiffs' claims for mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, and the court will strike plaintiffs' claims for honest services fraud under 18 U.S.C. § 1346.  In addition, the RICO Defendants have not challenged plaintiffs' underlying common law fraud claims.  Instead, they argue that plaintiffs have failed to plead any specific factual allegations to support the existence of a conspiracy agreement.  The court disagrees for the reasons articulated in the discussion of Count II above.  The bottom line is that plaintiffs have alleged an agreement among the RICO Defendants and provided scores of details of overt acts these companies took to further their schemes.  Because this is more than sufficient to state a claim for civil conspiracy under New York law, the RICO Defendants' motion to dismiss Count Three is denied.

---

[9]  The parties are in agreement that New York law applies to plaintiffs' state law claims.

**Count Four - Breach of Fiduciary Duty**

The RICO Defendants have moved to dismiss Count Four for breach of fiduciary duty for failure to state a claim.  In its February 23 Order, the court already determined that plaintiffs' claim for breach of fiduciary duty was adequately pled and denied a similar motion to dismiss. Because this issue has already been litigated and decided, the court sees no reason to reconsider its previous decision, and the RICO Defendants' motion to dismiss Count Four is denied.

**Count Eight - Unjust Enrichment**

The RICO Defendants argue that plaintiffs' claim for unjust enrichment should be dismissed because a quasi-contractual claim cannot survive where a contract governs the scope of the parties' dispute.  Plaintiffs concede that they have asserted this identical argument in their motion to dismiss Class Plaintiffs' claim for unjust enrichment, and request that the court draw the same conclusion from both motions.

Plaintiffs' logic is unpersuasive because the two claims in question are readily distinguishable.[10]  Unjust enrichment is a quasi-contractual theory that is available only where there is no express contract.  Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572 (2005). Plaintiffs' claim for unjust enrichment is improper in this instance because the AIG Companies and the RICO Defendants are all party to the Articles, and it is undisputed that the Articles are an express, valid, and enforceable contract.  See Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 382 (1987) (dismissing plaintiffs' claim under quasi-contract where there was an

---

[10]Plaintiffs/Class Defendants' motion to dismiss Class Plaintiffs' claim for unjust enrichment is discussed below.

express agreement covering the same subject matter). Therefore, quasi-contractual theories, like unjust enrichment, are unavailable to plaintiffs, and Count Eight is dismissed.

**Motion to Dismiss the Counterclaim**

*Facts Specific to the Counterclaim*

In addition to the general facts alleged above, the counterclaim alleges that the workers compensation premiums reported for purposes of the NWCRP are also used to calculate the obligations of insurance companies that participate in certain non-Pool residual market pools and other funds including state guaranty funds, second-injury funds, and funds established by states to provide insurance or reinsurance to cover claims of injured workers (the "Guaranty Funds" and "Special Purpose Funds"). During the time period in question, the Liberty Parties participated in residual market pools that operate outside of the NWCRP including Massachusetts, Wisconsin, and several other states (the "Non-NWCRP Residual Market Pools"). The Liberty Parties were also subject to assessments from Guaranty Funds and/or Special Purpose Funds in other states. Thus, the counterclaim seeks to redress the harm arising from AIG Defendants' conduct as it affected the Liberty Parties' participation in the NWCRP, the Non-NWCRP Residual Market Pools, as well as their payments into states' Guaranty Funds and Special Purpose Funds.

The counterclaim alleges that for decades the AIG Companies, acting under the direction and control of AIG, intentionally breached their obligations to submit accurate premium reports to NCCI, with the result being decreased reinsurance liabilities for the AIG Companies and increased liabilities for the remaining Participating Companies. The counterclaim further alleges

that the executives at the AIG Companies were motivated to engage in this premium underreporting scheme to receive compensation that was paid to them by C.V. Starr & Co., Inc. ("CVSCO") and Starr International Company, Inc. ("SICO" and, together with CVSCO, the "Starr Entities").  The Starr Entities' business activities were allegedly conducted by officers at AIG.

**Claims One and Two - RICO and RICO Conspiracy**

Plaintiffs argue that the Liberty Parties' RICO claims should be dismissed for failure to state a claim because the Liberty Parties fail to: (1) plead facts to support the alleged existence of an association-in-fact RICO enterprise; (2) allege a pattern of racketeering activity; and (3) allege a sufficiently definite injury.  Because these are the same arguments plaintiffs raise in support of their motion to dismiss Class Plaintiffs' RICO claims that are discussed and disposed of below in consideration (and denial) of that motion, plaintiffs' motion to dismiss Claims One and Two of the counterclaim is denied.

**State Law Claims**

**Claim Three - Fraud[11]**

Plaintiffs argue that Claim Three for common law fraud should be dismissed because the Liberty Parties fail to allege reliance.[12]  In response, the Liberty Parties argue that:  (1) their

---

[11]The parties agree that Massachusetts law applies to the Liberty Plaintiffs' state law fraud claim and Wisconsin law applies to the Wausau Plaintiffs' state law fraud claim.

[12]Plaintiffs argue in their reply brief in support of the motion to dismiss that the Liberty Parties have failed to plead Claim Three with requisite particularity as to AIG under Rule 9(b).

(continued...)

reliance on plaintiffs' misrepresentations to NCCI and the administrators of the Guaranty Funds,
Special Purpose Funds, and Non-NWCRP Residual Market Pools (collectively the "Fund
Administrators") was reasonable and foreseeable; and (2) the Liberty Parties have alleged direct
reliance because the Pool and the non-Pool funds were acting as agents for the Liberty Parties in
the reporting and invoicing process.

  To plead a claim for fraud under Massachusetts law, a plaintiff must allege "that
defendant made a false representation of a material fact with knowledge of its falsity for the
purpose of inducing plaintiff to act thereon, and that the plaintiff relied upon the representation
as true and acted upon it to his damage." Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,
577 F. Supp. 1281, 1287 (D. Mass. 1983).  Under Wisconsin law, to plead fraud, a plaintiff must
allege: "1) a misrepresentation; 2) intent to defraud; 3) reliance upon the false representations;
and 4) damages." Forst v. SmithKline Beecham Corp., 602 F. Supp. 2d 960, 971 (E.D. Wis.
2009).

  Plaintiffs cite Brockton for the proposition that although a misrepresentation to a third-
party may be actionable under Massachusetts law in certain circumstances, the terms of the
purported fraudulent statement must be repeated or its substance communicated to the
complaining party.  577 F. Supp. at 1287.  In Brockton, the court dismissed plaintiff's claim for
fraudulent misrepresentation because the complaint made the hypothetical allegation that
defendant accounting firm "knew or should have known" that certain CD purchasers "would or
were likely to rely on" defendant's report.

---

[12](...continued)
Because plaintiffs did not raise this argument in their original memorandum in support of their
motion, the opposing parties did not have an opportunity to respond, and the court declines to
consider this argument.

In the instant case, the Liberty Parties have done much more than make a vague allegation that plaintiffs knew that the Liberty Parties would rely on the allegedly false premium data.  The counterclaim alleges that plaintiffs knowingly and repeatedly made false and misleading representations to NCCI and the other Fund Administrators and that they knew the Liberty Parties would rely on the accuracy of invoices issued based on these false representations.  Because this is sufficient to plead the element of reliance in a claim for fraud, plaintiffs' motion to dismiss Claim Three is denied.


**Claim Four - Massachusetts Regulation of Business Practice and Consumer Protection Act**

The Liberty Plaintiffs have brought a claim under Massachusetts General Laws Chapter 93A, § 11 (2009), alleging that plaintiffs' pattern of fraudulent conduct constitutes an unfair and deceptive act.[13]  Plaintiffs argue that because their alleged misconduct did not occur "primarily and substantially" in Massachusetts, Claim Four should be dismissed.  The Liberty Parties counter that a Chapter 93A claim cannot be resolved on a motion to dismiss, and alternatively that the counterclaim pleads more than sufficient facts to support a finding that the alleged conduct happened "primarily and substantially" within Massachusetts.

Chapter 93A creates a cause of action for "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act . . . ."  Such an action can be brought only if "the actions and transactions constituting the alleged unfair or deceptive act or practice

_____

[13]This claim is brought solely on behalf of the Liberty Plaintiffs and not the Wausau Plaintiffs.

occurred primarily and substantially within the commonwealth." Id. The burden of proof falls

on the party challenging the claim that the relevant transactions and actions did not occur

primarily and substantially within Massachusetts. Id.

In Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (Mass.

2003), the Massachusetts Supreme Judicial Court held that:

> [T]he analysis required under § 11 should not be based on a test identified by any
> particular factor or factors because of a tendency to shift the focus of inquiry
> away from the purpose and scope of c. 93A. Section 11 suggests an approach in
> which a judge should, after making findings of fact, and after considering those
> findings in the context of the entire § 11 claim, determine whether the center of
> gravity of the circumstances that give rise to the claim is primarily and
> substantially within the Commonwealth.

This interpretation of §11 appears to foreclose the possibility of dismissing such a claim

under Rule 12(b)(6). See also Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.

Supp. 2d 102, 118 (D. Mass. 2003) ("Since a Court does not make [factual] findings when ruling

on a motion to dismiss, it would seem that a motion to dismiss is not longer an appropriate

vehicle for raising the issue."). Even if the court were to consider the merits of plaintiffs'

argument, none of the post-Kuwaiti decisions they cite are persuasive. In those cases, the § 11

claims were dismissed where it was clear on the face of the complaints that there were no direct

connections between Massachusetts and the alleged misconduct or resulting injury. See Fillmore

v. Leasecomm Corp., 2004 WL 3091642, at *5-6 (Mass. Super. Nov. 15, 2004); Weber v.

Sanborn, 502 F. Supp. 2d 197 (D. Mass. 2007). In the instant case, the Liberty Plaintiffs have

alleged that plaintiffs' conduct directly affected and caused injury to those Participating

Companies located in Massachusetts. Whether the situs of the injury or the actual

misrepresentations sent by plaintiffs determine the "center of gravity" of this claim is a factual question, and the burden is on plaintiffs to present evidence to challenge the former conclusion.

For these reasons, plaintiffs' motion to dismiss Claim Four is denied.


**Claim Eight - Promissory Estoppel**

Plaintiffs have moved to dismiss Claim Eight, arguing that claims for promissory estoppel cannot survive where the parties' relationship and obligations flow from an express contract. The Liberty Parties concede this point and have clarified that they do not intend to assert a promissory estoppel claim with respect to pools or funds where the parties' obligations are governed by an express contract such as the Articles. The Liberty Parties do contend, however, that their counterclaim for promissory estoppel is viable with respect to funds where the obligations of the parties are derived from state statutes, not contracts. Plaintiffs counter that the counterclaim does not name the statutes underlying their counterclaim or allege that AIG made any promise upon which such a claim could be based.

To state a claim for promissory estoppel under Massachusetts law, a plaintiff must allege that there was "an unambiguous promise and that the party to whom its promise was made reasonably relied on the representation." Hadfield v. A.W. Chesterton Co., 26 Mass. L. Rep. 443 (Mass. Super. Ct. 2009) (internal citations omitted). The counterclaim includes allegations describing generally the existence of state Guaranty and Special Purposes Funds, that plaintiffs promised to report accurate premium data to the administrators of these various funds, and that the Liberty Parties reasonably and foreseeably relied on the accuracy of this data to their financial detriment. While plaintiffs are correct that the counterclaim does not name the

particular statutes upon which the claim is based, the Liberty Parties are not required to plead

their theory of the case, but only enough facts to plausibly state a claim for relief and put

plaintiffs on notice.  Because Claim Eight is sufficiently pled under this standard, plaintiffs'

motion to dismiss is denied.


**Claim Nine - Unjust Enrichment**

Claim Nine for unjust enrichment is brought solely against AIG on the basis of decades

worth of capital that AIG gained as a result of its fraudulent underreporting schemes.  Plaintiffs

have moved to dismiss Claim Nine, arguing that the Liberty Parties do not dispute that valid and

binding agreements cover the subject matter of the claim, and the conduct alleged in connection

with this claim is identical to that underlying the breach of contract claim against the AIG

Companies.  The Liberty Parties counter that Claim Nine is not precluded by the existence of a

contract because AIG is not a party to the Articles or any other non-Pool state's assigned risk

agreement, and that its only obligations extend to pools and funds established by statute, not

contract.

Unjust enrichment, like promissory estoppel, is an equitable remedy that is available only

where a plaintiff has no adequate remedy at law.  Massachusetts v. Mylan Labs., 357 F. Supp. 2d

314, 324 (D. Mass. 2005).  To state a claim for unjust enrichment, a plaintiff must allege that the

defendant was enriched to the plaintiff's detriment without justification or an adequate remedy at

law.  Id.  The Liberty Parties have done just this.  It is uncontested that AIG is not a party to the

Articles or any other assigned risk agreements.  The counterclaim alleges that AIG's only duties

are based on its statutory, not contractual obligations.  Further, Claim Seven for breach of

contract is brought only against the AIG Companies, and therefore there appears to be no available adequate remedy at law.  Accordingly, the Liberty Parties have successfully stated a claim for unjust enrichment and plaintiffs' motion to dismiss Claim Nine is denied.


**Punitive Damages**

***Choice of Law***

Unlike the other state law issues, the parties disagree about which state's law applies to the Liberty Parties' request for punitive damages in connection with their claim for common law fraud.  Illinois has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws (the "Restatement").  Townsend v. Sears, Roebuck & Co., 227 Ill. 2d 147, 155 (Ill. 2007).  Section 145 of the Restatement states that the court must give each issue separate consideration when conducting a choice-of-law analysis.  Restat. (2d) of Conflict of Laws, § 145, cmt. d. With regard to determining punitive damages, the law selected by application of § 145 controls.  Id. at § 171.  Section 145 specifies four areas of contacts to be evaluated according to their relative importance when determining which state's law to apply to a given issue:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

In the instant case, there is a tension between the place of injury and the place of the offending conduct.  New York has a strong interest in imposing liability on plaintiffs for underreporting – as evidenced by the New York Authorities investigation and the resulting settlement – while Massachusetts and Wisconsin, as plaintiffs' home states, have an equally strong interest in rectifying the harm the Liberty Parties suffered as a result of plaintiffs' conduct.  The purpose of punitive damages, however, would seem to be best served by focusing on deterrence and punishment of plaintiffs' misconduct, and in that case the place where the underreporting took place – New York state – has particular significance.  See Restat. (2d) of Conflict of Laws, § 145.  Moreover, plaintiffs' domiciles and the primary relationship between the parties during the relevant time period was centered in New York.  Given the balance, the court concludes that New York law governs the Liberty Parties' claim for punitive damages.

### *Availability of Punitive Damages*

Plaintiffs argue that under New York law, the Liberty Parties are not entitled to punitive damages because the fraud claim arises from a contract and the counterclaim must, but fails to, plead public harm.  Because this identical argument is raised and disposed of in the court's discussion (and sustaining) of the availability of punitive damages to Class Action Plaintiffs later in this opinion, plaintiffs' motion to dismiss the Liberty Parties' claim for punitive damages on this basis is denied.

### Motion to Dismiss the Amended Class Action Complaint[14]

---

[14]  The facts relevant to the amended class action complaint are consistent with the facts

(continued...)

-38-

**Count One - RICO**

Class plaintiffs' primary RICO allegations are that AIG operated a racketeering enterprise composed of the AIG Companies and the Starr Entities, and AIG engaged in a pattern of racketeering by mailing false reports to NCCI that failed to accurately reflect the AIG Companies' share of the residual market losses.  Class Defendants have moved to dismiss Count One, arguing that Class Plaintiffs: (1) fail to allege a RICO enterprise; (2) fail to adequately plead that AIG engaged in racketeering activity; and (3) fail to allege a sufficiently definite injury.  The court will consider each argument in turn.

***RICO Enterprise***

Class Plaintiffs allege that CVSCO, SICO, and the AIG Companies (excluding AIG) constituted an association-in-fact RICO enterprise.  Class Defendants argue that Class Plaintiffs fail to sufficiently plead an association-in-fact enterprise within the meaning of RICO. Specifically, Class Defendants argue that the amended class action complaint lacks any allegation that the AIG Companies or the Starr Entities had any ongoing relationship or connection between and among them aside from being owned or controlled by AIG, its officers and directors.

For purposes of Section 1962(c), an association-in-fact enterprise is "'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  Boyle v. United States, 129 S.Ct. 2237, 2244 (U.S. 2009) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  The Supreme Court recently clarified in Boyle that an association-in-fact enterprise need not have an ascertainable structure, but must have "at least three structural features: a

---

[14](...continued)
already described above and within the discussion below.

purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle, 129 S.Ct. at 2244-2245. While the existence of an enterprise "'is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other' . . . the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" Id. at 2245 (quoting Turkette, 452 U.S. at 583).

The amended class action complaint alleges that Maurice R. Greenberg ("Greenberg"), the chairman and chief executive of AIG during the relevant time period, was responsible to some degree for the control and direction of the business operations of the AIG Companies and the Starr Entities.  The complaint further alleges that Greenberg and other officers, employees, and agents of AIG used their influence and control over the business operations of the Starr Entities to cause valuable assets to be transferred to the managers, employees, and other agents of the AIG Companies.  The alleged purpose of the enterprise was to corrupt the managers, employees, and other agents of the AIG Companies who were complicit in Class Defendants' premium underreporting, thereby enabling the AIG Companies to implement the underreporting schemes over decades and maximizing Class Defendants' reported profitability.

While Class Defendants insist that Class Plaintiffs fail to allege that the companies had separate interactions with one another or shared anything in common apart from the alleged pattern of racketeering, these allegations are not necessary to plead a RICO enterprise.  These allegations are more than sufficient to satisfy the "relationship" requirement that the AIG Companies and the Starr Entities were associated together through the alleged asset transferring, cover-up of Class Defendants' underreporting, and the corresponding inflation of Class

Defendants' profitability.  Likewise, the fact that AIG is alleged to have coordinated and directed

the activities of the enterprise is not fatal to pleading an association-in-fact enterprise.

Associations-in-fact often have a member in charge directing the conduct of others in the

conspiracy.  "An individual can participate in the conduct of an enterprise by directing it or by

being a lower-rung participant under the direction of management."  Martinez v. Calimlim, 651

F. Supp. 2d 852, 857 (E.D. Wis. 2009).  Accordingly, Class Defendants' motion to dismiss

Count One of the amended complaint on the grounds of failure to allege a RICO enterprise is

denied.

### *Pattern of Racketeering Activity*

Class Defendants argue that Class Plaintiffs have failed to adequately allege a pattern of

racketeering activity because Class Plaintiffs' fraud claim arises out of AIG's alleged breach of a

contractual obligation to submit accurate reports, and a breach of contract claim cannot support a

claim for fraud.  This argument fails because Class Plaintiffs' RICO claims do not arise from

breach of a common law duty of care.  Instead, the RICO claims are founded on multiple

violations of the federal mail fraud statute, 18 U.S.C. § 1341, which are adequately pled.

Section 1962(c) makes it unlawful for "any person employed by or associated with [an]

enterprise…to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity or collection of [an] unlawful debt."  18 U.S.C.

§ 1962(c).  "Pattern" under RICO "consists of at least two predicate acts of racketeering

committed within a ten-year period."  Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d

771, 779 (7th Cir. 1994) (citing 18 U.S.C. § 1961(5)).  However, a  plaintiff must allege more

than just the occurrence of two predicate acts.  A plaintiff "must show that the predicate acts are

related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v.

Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

The elements of mail fraud under 18 U.S.C. § 1341 are: "(1) the defendant's participation

in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use

of the mails in furtherance of the fraudulent scheme." Williams v. Aztar Ind. Gaming Corp., 351

F.3d 294, 298-99 (7th Cir. 2003). As the Seventh Circuit has stated, "it is well established that

the crime of mail fraud does not encompass all the strict requirements of common law fraud."

Richards v. Combined Insurance Co. of Am., 55 F.3d 247, 251 (7th Cir. 1995). On the contrary,

the words "to defraud" in the mail fraud statute are commonly understood to mean "'wronging

one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation

of something of value by trick, deceit, chicane or overreaching.'" Carpenter v. United States,

484 U.S. 19, 27, 108 S. Ct. 316, 98 L. Ed. 2d 275 (1987) (internal citations omitted).

The amended class action complaint alleges that Class Defendants committed separate

and distinct violations of mail fraud when they sent NCCI hundreds of false financial statements

and checks from 1970 to 2005. Class plaintiffs are not merely alleging a breach of a contractual

duty to submit accurate reports. Instead, Count One rests on alleged conduct that amounts to a

massive scheme to defraud the Participating Companies. As Class Plaintiffs rightly assert, Class

Defendants have not cited any authority holding that conduct otherwise indictable as mail or

wire fraud cannot be racketeering activity under RICO if it occurred in a contractual context.

Contrary to Class Defendants' assertion, the decision in Perlman v. Zell, 185 F.3d 850, 852 (7th

Cir. 1999), does not explicitly hold that breach of contract transforms into mail or wire fraud

only when a party makes "a promise with the intent not to keep it." In Perlman, the Seventh

Circuit noted that while it may be "difficult to recast a dispute about broken promises into a claim of racketeering under RICO . . . [d]ifficult is not impossible." Id. at 853.  Moreover, Perlman was decided on appeal from a district court's order vacating a jury award on a RICO claim and did not discuss pleading standards for pleading a RICO claim.  Consequently, Class Defendants' motion to dismiss Count One for failure to allege pattern of racketeering is denied.

### RICO Injury

Class Defendants argue that because Class Plaintiffs' rights arise out of the Articles, they must pursue and exhaust their contract-based rights before the extent of their damages can be measured and their RICO claims have ripened.  Class Defendants rely primarily on a line of cases from the Second Circuit that stand for the proposition that a "cause of action does not accrue under RICO until the amount of damages becomes clear and definite."  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994); see Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1165 (2d Cir. 1993).  Class Plaintiffs counter that those cases apply only when a creditor or lender has available contractual remedies that may offset a successful RICO claim in the event of recovery, or where ancillary proceedings are pending that might have the same effect.  Class Plaintiffs further argue that they are not creditors or lenders, there are no pending ancillary proceedings, and there are no contractual remedies left unpursued.

The Seventh Circuit has not taken a clear stance on this issue, although it has cited favorably the Second Circuit's position on the requirement of pleading clear and definite damages in RICO claims.  See Barnett v. Stern, 909 F.2d 973, 977 n.4 (7th Cir. 1990).  In the instant case, if the allegations in the amended complaint are proven to be true, Class Plaintiffs

have been paying increased rates for decades as a result of AIG's underreporting.  Although the damages incurred have not been quantified, there is no doubt that the amended class action complaint alleges that damages have been sustained.  Because the instant case encompasses the contractual and other forms of relief available to Class Plaintiffs, any uncertainty about the amount of damages will be clarified upon resolution of this matter and is not dependent on the outcome of any other proceeding.  Consequently, Class Defendants' motion to dismiss Count One for failure to allege a definite RICO injury is denied.

**State Law Claims - Counts Three, Seven, and Eight**

Class Defendants have moved to dismiss: Class Plaintiffs' state law claims for common law fraud alleged against all defendants (Count Three); their claim for promissory estoppel alleged against only the AIG Companies (Count Seven); and their claim for unjust enrichment alleged against only AIG (Count Eight).  Class Defendants also move to dismiss Class Plaintiffs' request for an award for punitive damages in connection with Count Three.

Class Defendants generally argue that these state law claims should be dismissed on three grounds: (1) the Articles bars Class Plaintiffs from asserting fraud and quasi-contract claims; (2) Class Plaintiffs have failed to allege reliance; and (3) Class Plaintiffs are not entitled to punitive damages as a matter of law.

*Choice of Law*

As a preliminary matter, the court must address which state's law applies to these claims. The parties agree that New York state law is applicable to resolution of the instant motion. Class Defendants assert, however, that the court should reserve a full choice-of-law analysis for all potential class plaintiffs at the class certification stage of this case. Class Plaintiffs counter that because Class Defendants have not briefed a choice-of-law analysis in support of the instant motions, they have waived their right to do so. For the purposes of the instant motion, the court will apply New York state law and will reserve judgment on the issue of conducting a complete choice-of-law analysis upon consideration of a motion for class certification.

**Count Three - Common Law Fraud**

Count Three of the amended class action complaint alleges that Class Defendants knowingly submitted false and inaccurate premium data to NCCI with the intention that NCCI, Class Plaintiffs, and other Participating Companies would rely on these statements. The complaint further alleges that NCCI, as the administrator and agent for the Participating Companies, relied on these false reports in calculating residual market shares and issuing quarterly invoices to the Participating Companies, resulting in financial harm.

With respect to the AIG Companies, Class Defendants argue that Count Three is duplicative of Class Plaintiffs' claim for breach of contract because Class Plaintiffs have failed to identify a duty they owed independent of the contractual duties outlined in the Articles. See Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007) (discussing cases holding that absent allegations of independent legal duty, fraud claims were duplicative of breach of contract

claims).  Class Plaintiffs argue that their claim for fraud alleges conduct that is collateral or extraneous to the contract, and therefore not duplicative of their claim for breach of contract. The court agrees.        In certain circumstances, New York law permits a separate tort claim "where facts constituting a breach of contract are part of a larger plan to achieve an unlawful end (or a lawful end through unlawful means)."  Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Co., 301 F. Supp. 479, 481 (S.D.N.Y. 1969).  In the instant case, the class action complaint alleges that Class Defendants engaged in a course of conduct over decades aimed at intentionally shrinking their own residual market shares, inflating the shares of the other Participating Companies, concealing this behavior from all interested parties, and effectively altering the residual market landscape.[15]  Because these allegations go far beyond the mere breach of a contractual duty under the Articles to honestly report annual premiums, Class Defendants' motion to dismiss Count Three as to the AIG Companies is denied.  Because this reasoning also applies with respect to AIG, the motion to dismiss Count Three as to it is also denied.[16]

---

[15]  The class action complaint alleges that although AIG does not wire or report on its own workers compensation insurance, AIG directs and controls the activities of the AIG Companies.  Class Defendants are alleged to have filed false responses to financial data calls, false statistical reports, falsely sworn financial reports, and false annual statements to various states and NCCI.

[16]  In addition, despite Class Defendants' argument to the contrary, Count Three cannot be duplicative of Count Six for the simple fact that AIG is not a signatory to the Articles and not a named defendant to that claim.  Without a more thoughtful explanation of the reasons why New York case law stands for the opposite result, AIG's attempt to convince the court to the contrary is unavailing.

### *Reliance on Misrepresentations*

Class Defendants argue in the alternative that Class Plaintiffs' fraud claim must be dismissed for their failure to allege direct reliance on the false statements Class Defendants submitted to NCCI.  Class Defendants contend that because the allegedly false statements were made to NCCI rather than Class Plaintiffs, and there are no allegations that Class Plaintiffs actually reviewed the submitted premium data, the claim for fraud fails.

Pivotal to resolving this issue is the undisputed allegation that NCCI was the designated agent for the Participating Companies.  Under New York law a principal can assert a claim for fraud based on misrepresentations made to its agent.  <u>Young v. Robertshaw Controls Co., Uni-Line Div.</u>, 474 N.Y.S.2d 886, 890 (N.Y. Sup. Ct. 1983).  Because the complaint includes allegations that Class Plaintiffs relied on the false data Class Defendants reported to NCCI, their agent and attorney-in-fact, the motion to dismiss Count Three for failure to allege direct reliance is denied.

### *Punitive Damages*

Class Defendants argue that Class Plaintiffs' claims for punitive damages should be dismissed because they have failed to allege harm to the general public and allege only pecuniary loss to their own companies.[17]  Class Defendants' argument is based on their assertion that because Count Three arises out of a breach of contract claim, Class Plaintiffs must plead that AIG's conduct was part of a pattern directed at the public generally.  See <u>New York Univ. v.</u>

---

[17]  AIG also argues that the claim for punitive damages should be dismissed because plaintiffs have failed to plead a tort independent of their breach of contract claim.  The court disposed of this argument in the discussion of Count Three above.

Cont'l Ins. Co., 662 N.E.2d 763, 767 (N.Y. 1995) (outlining the elements of a punitive damages claim for a tort arising out of a breach of contract claim).

In the instant case, the court has already determined that Count Three is actionable as an independent tort that does not arise out of a breach of contract as to either AIG or the AIG Companies.  Therefore, punitive damages are available if Class Plaintiffs can plead and prove that Class Defendants engaged in "gross, wanton, or willful fraud or other morally culpable conduct."  Fleurentin v. McDowell, 2009 WL 2969686, at *10 (E.D.N.Y. Sept. 16, 2009) (internal citations omitted).  The allegations of the amended class action complaint as incorporated into Count Three and the claim for punitive damages include allegations that AIG engaged in just such conduct in carrying out the putative underreporting scheme to defraud the Participating Companies.  Therefore, the complaint is sufficient to state a claim for punitive damages under New York law, and AIG's motion to dismiss this claim is denied.


**Count Seven - Promissory Estoppel and Count Eight - Unjust Enrichment**

Count Seven of the amended class action complaint alleges that: (1) the AIG Companies made clear and unambiguous promises to Class Plaintiffs to fairly and accurately report their premium data to NCCI; (2) that Class Plaintiffs relied on these promises; and (3) that Class Plaintiffs' reliance was reasonable and foreseeable to the AIG Companies.  Count Eight alleges that AIG realized additional capital because of its underreporting schemes and unjustly retained the benefits accrued from these schemes.

Class Defendants argue that Counts Seven and Eight should be dismissed because recovery under quasi-contract theories, like promissory estoppel and unjust enrichment, is

available only in the absence of a valid, written contract.  Class Plaintiffs counter that Fed. R.

Civ. P. 8(d)(2) and (3) allow a plaintiff to freely plead alternative claims for relief regardless of

consistency, and that under New York law a promissory estoppel claim cannot be dismissed at

the pleading stage on these grounds.

    In the instant case there is no dispute that the Articles are a valid and enforceable

agreement binding on all signatories, covering the subject matter of Count Seven.  Because a

valid contract precludes quasi-contract claims as a matter of law, Class Defendants' motion to

dismiss Count Seven is granted.  Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637

F. Supp. 2d 185, 196 (S.D.N.Y. 2009); see Adams v. Labaton, Sucharow & Rudoff LLP, 2009

WL 928143 (S.D.N.Y. Mar. 30, 2009).  However, because Count Eight for unjust enrichment is

brought solely against AIG, which is not a signatory to the Articles, the motion to dismiss Count

Eight is denied.

## **CONCLUSION**

    For the reasons stated above:

- the RICO Defendants' motion to dismiss Counts One through Four of the
  amended complaint is denied; the RICO Defendants are directed to answer these
  counts on or before July 30, 2010;

- the RICO Defendants' motion to dismiss Count Eight is granted;

- the Non-Underreporting Pool Board Members' motion to dismiss Count Four is
  denied; the Non-Underreporting Pool Board Members are directed to answer
  Count Four on or before July 30, 2010;

- NCCI and NWCRPs' motions to dismiss Counts Nine and Ten are denied; NCCI
  and NWCRP are directed to answer these counts on or before July 30, 2010;

- plaintiffs' motion to dismiss Claims One through Four, Eight, and Nine, of the
  counterclaim are denied; plaintiffs are directed to answer these counts on or
  before July 30, 2010;

- plaintiffs' motion to dismiss the Liberty Parties' claim for punitive damages is denied;

- Class Defendants' motion to dismiss Counts One, Three, and Eight is denied; Class Defendants are directed to answer these counts on or before July 30, 2010;

- Class Defendants' motion to dismiss Count Seven is granted; and

- Class Defendants' motion to dismiss Class Plaintiffs' claim for punitive damages is denied.

This matter is set for a report on status August 19, 2010, at 2:00 p.m.

**ENTER:**      **June 30, 2010**

**Robert W. Gettleman**
**United States District Judge**