# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 CV 2898 |
| v. | ) ) | Judge Robert W. Gettleman |
| ACE INA HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) | Magistrate Judge Sidney I. Schenkier |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) ) ) ) | |
| Counter-Claimants, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Counter-Defendants. | ) ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a Class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) ) | Case No. 09 CV 2026<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Sidney I. Schenkier |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**CLASS PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' REQUEST FOR STAY OF RULING ON MOTION FOR CLASS CERTIFICATION AND CLASS PLAINTIFFS' ALTERNATIVE REQUEST FOR EXPEDITED DISCOVERY AND BRIEFING SCHEDULE ON RULE 24 MOTION TO INTERVENE**

**This document has been redacted to remove material designated as Confidential or Highly Confidential pursuant to Protective Order.**

1066110

Class Plaintiffs[1] oppose Proposed Intervenors' request for a stay of the Court's ruling on Class Plaintiffs' motion for class certification. For the reasons discussed below and in the Elden Dec. and Miller Dec., Class Plaintiffs urge the Court to deny the stay and proceed to rule on Class Plaintiffs' pending class certification motion. In the event the Court grants the stay, Class Plaintiffs alternatively request the Court to set an expedited schedule for discovery and briefing relevant to the intervention motion.

## SUMMARY OF BRIEF

Having spent more than $10 million litigating this case during the past year and a half, Class Plaintiffs fully understand the wisdom of settling and, as will be seen, have tried to engage AIG in settlement negotiations but have been thwarted by AIG, the Proposed Intervenors and NWCRP Board counsel, LLBL. Indeed, Class Plaintiffs repeatedly have tried to negotiate a stand-alone settlement between only AIG and the Class (leaving AIG to do what it wants with its affirmative claims). Elden Decl. at ¶¶ 12-14. But AIG, the Proposed Intervenors and LLBL have rejected that approach. *Id.* The Proposed Intervenors nevertheless accuse Class Plaintiffs of not wanting to settle. Intervention/Stay Br. at 16, 18. This is mistaken. Class Plaintiffs are willing to settle, but not on the basis outlined in the Term Sheet. Elden Decl. at ¶¶ 9-14.

The Proposed Intervenors also allege that they only recently learned of Class Plaintiffs' opposition to the settlement. Intervention/Stay Br. at 8-10. This is also mistaken. Class Plaintiffs made clear to the Proposed Intervenors, the NWCRP Board, and their counsel in the summer of 2010 – before briefs in opposition to Plaintiffs' motion for class certification were due – they opposed $450 million as unfairly low. Although on the face this amount may appear

---

[1] The accompanying Declaration of Gary M. Elden ("Elden Dec.") filed herewith defines the capitalized terms used here. This pleading will incorporate without repeating much of the Elden Dec. and the accompanying Declaration of Gary M. Miller ("Miller Dec.").

1066110

to the Court to be quite significant, ███████████████████████████

████████████████████████████████████████████████████████ Because the

Proposed Intervenors knew of Class Plaintiffs' opposition to a $450 million settlement in the summer of 2010 and made no allegation then that Class Plaintiffs were inadequate class representative, something has changed.

What has changed is that the ████████████████████████████████

████████████████████████████████████████. The AURs' eagerness to settle now on terms unfavorable to the Class can only be explained by the fact that AIG's claims against them would be released at no cost as part of the settlement. Either AIG views its claims against the Proposed Intervenors as meritless or AIG views its claims as valuable, but has taken money from the settlement fund to give the Proposed Intervenors a benefit at the expense of the Class. The Miller Decl. summarizes ████████████████████████████████

████████████████████████████████████████████████████████████ – that Proposed Intervenors are using the mechanism of the Class settlement to resolve claims asserted against them at no cost.

Further, a careful reading of the Term Sheet shows it is a one-way option for AIG to settle or not, binding only the Proposed Intervenors and their "Settlement Class." The agreement is subject to approval by AIG's board (and others allied with AIG), cancellable unilaterally by AIG if there are any unexpected opt-outs, and subject to several other conditions that only AIG can waive or control. In other words, the Proposed Intervenors have put a ceiling on the settlement amount but no floor.

In the hopes of avoiding a reasonable accounting for its wrongful conduct, AIG has sought out conflicted parties and counsel with reasons to settle cheaply,[2] excluded Class Plaintiffs from the negotiating table, and tried to strike a favorable deal with class members whose weak negotiating position and self-interest make them more pliable than Class Plaintiffs. In short, the settlement that Proposed Intervenors advocate is the result of "attorney-shopping" and a "reverse auction." *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (district court abused discretion by approving settlement which was the product of a reverse auction, where the defendant picked the most ineffectual class representative to negotiate a settlement "with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.")

Most of Proposed Intervenors' filing is an attack on Class Plaintiffs' adequacy, an issue extensively briefed in connection with Class Plaintiffs' motion for class certification. But Proposed Intervenors did not object to certification of Class Plaintiffs as representatives of the Class when they had the chance, and were required to do so by a Court-ordered deadline of October 8. During briefing on Plaintiffs' motion for class certification, counsel for the Proposed Intervenors provided Class Plaintiffs with comments to the Class' draft reply brief, lending their complete support for class certification. Elden Dec. at ¶ 4. They did this six weeks after knowing the substance of Class counsel's settlement position, which has not changed. Contrary to the Proposed Intervenors' representation that Class Plaintiffs have only recently rejected $450 million, Intervention Stay Brief at 8-10, on September 15, Class counsel told the NWCRP Board, with most Proposed Intervenors and four LLBL partners present, that it would not settle for $450

---

[2] Specifically, Proposed Intervenors (and defendants in the '07 Action), ACE, Travelers, Hartford and Companion, and counsel to the NWCRP Board, LLBL.

- 3 -

million because that was an inadequate sum. That remains Class counsel's primary objection to the settlement today. Thus, Proposed Intervenors had their chance to object to class certification many months ago. Through Section 1 of the Term Sheet, AIG *required* the Proposed Intervenors to file their present motion to stay prior to a ruling on class certification. They should not be allowed to come in now and disrupt the schedule with what is, in effect, an untimely objection.

Moreover, it makes sense for the Court to rule on class certification first, before considering intervention. For Proposed Intervenors to prevail on their lead argument that they may intervene as a matter of right under Rule 24(a), they must prove that their interests are not being adequately represented by the current parties. That exact issue – whether Class Plaintiffs are adequate class representatives – has been fully briefed and is the central issue to be decided by the Court when it rules on Class Plaintiffs' motion for class certification. By endorsing the proposed intervention and class settlement, AIG is effectively conceding that a class action is the best way to proceed here, leaving as the *only* open issue Class Plaintiffs' adequacy. And by raising no objection to class certification when they had the chance in September 2010, Proposed Intervenors conceded that Class Plaintiffs are adequate class representatives. Thus, the Court should rule on Class Plaintiffs' class certification motion, fully briefed since November 3, and scheduled to be decided January 13, before turning to the question of intervention.

If, despite the points just summarized, the Court decides to stay ruling on Class Plaintiffs' class certification motion, Class Plaintiffs request expedited discovery and an opportunity to fully brief issues relating to intervention so that the present motion does not unduly delay matters.

## RELEVANT FACTUAL BACKGROUND

The facts are fully stated in the accompanying Elden Dec. and Miller Dec. We will not repeat them all here, but highlight a few key facts.

Counsel for Class Plaintiffs learned in August 2010 that AIG had made a proposal to settle the Class claims against AIG on the same essential terms set forth in the Term Sheet. AIG would pay $450 million and would release all parties it was suing – a small subset of the Class – for no payment by those parties. On September 15, Class counsel appeared before the NWCRP Board (including most Proposed Intervenors) and shared their view that the parties with whom AIG was negotiating this settlement had numerous conflicts of interest, that the $450 million proposed payment in full settlement of Class claims was inadequate, and that it made no sense to accept such a sum ████████████████████████████████████████

████████████████████████████████████ and would be known within the coming months. Counsel for the Class informed the Board that, for those reasons, Class counsel could not support a settlement on the terms known to the Class Plaintiffs.

Beginning October 7, Class counsel repeatedly tried to negotiate directly with AIG and to negotiate only the Class claims, but AIG rebuffed those efforts and instead negotiated a deal with parties who it found more pliable, either because they had little knowledge about the scope of AIG's underreporting (Auto-owners, FirstCorp and Technology) or because they were facing underreporting and other claims asserted against them by AIG (ACE, Hartford, Travelers and Companion).

Class Plaintiffs first discussed their motion for class certification with the Court, and provided a draft of their motion to AIG and other parties, 15 months ago, in September 2009. The Court ordered Class Plaintiffs to refrain from filing their motion until class-related discovery

was concluded. Docket No. 55. Class discovery took four months and closed on February 19, 2010. On March 15, 2010, Class Plaintiffs filed a motion for leave to file their certification motion. Docket No. 125. The Court denied that motion, but stated that Class Plaintiffs could file after the Court ruled on the pending motions to dismiss. Docket No. 130. On July 13, 2010, the Court granted Class Plaintiffs leave to file their certification motion. Docket No. 168. Class Plaintiffs filed three days later, on July 16, 2010. Docket No. 171. AIG claimed it needed 90 days to respond and, over Class Plaintiffs' opposition, obtained 84 days to file its opposition brief, which was submitted on October 8, 2010. Docket Nos. 166, 217.

None of the Proposed Intervenors opposed Class certification, and some participated in the effort to get the Class certified. Yet at least some of those Proposed Intervenors – and counsel for all (LLBL) – knew by September 15 the basic reasons why Class counsel then (and now) oppose the settlement embodied in the Term Sheet. Class Plaintiffs filed their reply on November 3, 2010. Docket No. 268. Between October 28 and November 3, counsel for the AURs and the NWCRP Board commented on the Class' reply, offering ideas to oppose AIG and support class certification, though all knew on September 15 the Class' basic objections to the type of settlement proposed in the Term Sheet.

The Court set January 13, 2011 as the date by which it would rule on the motion. Docket No. 178. On the evening of January 5, 2011, eight days before the ruling date, six months after Class Plaintiffs filed their motion and four months after all opposition briefs had to be filed, Proposed Intervenors filed their present motion, which was required by the Term Sheet and quickly adopted by AIG. On the morning on January 5, AIG and Proposed Intervenors were present when Magistrate Judge Schenkier imposed an extremely demanding discovery schedule on the parties, cutting off most discovery as of March 15, and remaining Class discovery by

June 29. All other discovery by other parties ends July 29. To now require an accelerated discovery process on an intervention motion (described below) would interfere greatly with the existing schedule and prejudice the Class.

## ARGUMENT

**I.     The Ruling on Class Plaintiffs' Motion for Class Certification Should Not Be Stayed.**

    **A.     The claim of inadequacy is frivolous.**

Proposed Intervenors concede that, as litigators, Class Plaintiffs "have done a fine job" and are "fully qualified." Intervention/Stay Br. at 3. Proposed Intervenors claim Class Plaintiffs are inadequate only because they do not agree with the terms of a settlement negotiated by Proposed Intervenors. Intervention/Stay Br. at 3, 9, 13-16. Class Plaintiffs have searched for and found no case (and Proposed Intervenors cite none) which holds that a class representative can be rendered inadequate solely by disagreement with seven class members on the proper terms of a settlement. To the contrary, many cases hold that representatives are inadequate when, like Proposed Intervenors, they ask to be certified *only* to settle but not prosecute a class action. *See*, *e.g.*, *Christman v. Brauvin Realty Advisors, Inc.*, 191 F.R.D. 142, 153 (N.D. Ill. 1999) (rejecting party's attempt to replace current class representative because the moving party already had negotiated an agreement to settle the class action; the court found that those negotiations could not have been conducted from a "position of strength" because the party had not at the time brought any class claims and made clear it wished to settle and not litigate).

**B. Proposed Intervenors and AIG had the opportunity to object to certification; they should not be allowed to disrupt the case schedule and delay certification with new arguments – or to allow, in effect, AIG to file a belated sur-reply regarding adequacy without leave of court.**

In all events, if Proposed Intervenors believed this type of inadequacy were a legitimate basis to deny Class Plaintiffs' motion for class certification, they knew about it by September 15 and should have filed an opposition brief by the October 8, 2010 deadline (allowing parties 84 days to file) rather than waiting four months and then filing eight days before a decision is due.

It is not just that the Proposed Intervenors delayed. The point is that the Proposed Intervenors conceded that Class Plaintiffs were adequate class representatives on October 8, 2010 when they knew of Class Plaintiffs' opposition and failed to oppose class certification.

**C. Class Plaintiffs' class certification motion should be decided promptly because that decision will determine whether Class Plaintiffs are adequate to represent the interests of the class – the central issue presented by Proposed Intervenors' motion to intervene.**

Proposed Intervenors' lead argument (through page 18 of their 22 page brief) is that they have a right to intervene under Rule 24(a) because Class Plaintiffs are not adequately representing the interests of the Class. That exact question – the adequacy of Class Plaintiffs' representation of the Class – is fully briefed and before the Court as the principal disputed issue regarding class certification. *See, e.g.*, AIG Opp. Class Cert. (Docket No. 217) at 6-28. Indeed, because AIG apparently now concedes that some sort of class action is appropriate here, Class Plaintiffs' adequacy is the *only* question.

If the Court rules on Class Plaintiffs' fully-briefed motion, pending for six months, that ruling may moot and will at least change the nature of any motion to intervene. On the other hand, delaying class certification to decide an intervention motion would unnecessarily complicate and delay the litigation.

**D.     The impact the Court's ruling will have on settlement negotiations is a reason to expedite ruling on Class Plaintiffs' class certification motion, not a reason to delay ruling.**

Proposed Intervenors' also argue in support of their motion that failing to stay the Court's ruling on Class Plaintiffs' motion for class certification will upset the current settlement "balance," thus precluding settlement under the non-binding Term Sheet. Intervention/Stay Br. at 20. First, there is no "balance" inherent in a settlement negotiated by conflicted parties for a wholly inadequate sum. Moreover, most class cases settle after certification regardless of the remote prospect of an interlocutory appeal succeeding. Here, if the Court certifies the class, all that will happen is that AIG will have to negotiate with Class Plaintiffs directly, Class Plaintiffs will insist on settling Class claims separately from AIG's claims against the AURs and NWCRP Board, Class counsel will not let the Class subsidize other parties' settlements, and Class counsel will bring to bear knowledge gained in litigating this case over the last 15 months – knowledge that Proposed Intervenors and their counsel demonstrably lack, as shown in Elden Dec. at ¶¶ 15, 17.

Delaying class certification instead channels settlement into a pattern repeatedly condemned by courts as "attorney shopping" and "reverse auction." *See Reynolds*, 288 F.3d at 282 (discussed at p. 3, above); *Christman*, 191 F.R.D. at 151-52 (holding that would-be intervenors' negotiation of settlement while not the named parties raised "substantial questions about the propriety of the settlement negotiations" and seriously undermined the bargaining strength of the class as whole); *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979) (courts should be skeptical of agreements negotiated by individuals not authorized to represent a class because "unauthorized settlement negotiations create the possibility of negotiation from a position of weakness by the attorney who purports to represent

the class…"); *Orlowski v. Dominick's Finer Foods, Inc.*, No. 95 C 1666, 1998 WL 161020, at *4 n.10 (N.D. Ill. Mar. 31, 1998) (finding that if the named class plaintiffs were "more interested in their own individual settlements than in the class settlement, they have a direct conflict that would require immediate removal as class representatives").

**II.     Alternatively, If The Court Grants the Stay, Class Plaintiffs Request Expedited Discovery Regarding The Negotiations Which Led To The Proposed Settlement.**

If the Court grants the Proposed Intervenors' motion to stay a ruling on Class Plaintiffs' motion for class certification, Class Plaintiffs request an expedited schedule for discovery and briefing to minimize the delay on class certification. Such certification should occur before the discovery cutoff on June 29, and we suggest an expedited (and limited and focused, as explained below) schedule as follows:

- 14 days to file written discovery;
- 14 days to respond;
- Immediate oral hearing on objections;
- Depositions begin 7 days later;
- Up to two tracks of depositions for no more than two weeks to include, primarily, Rule 30(b)(6) depositions of each Proposed Intervenor, Goldberg Kohn, LLBL, and AIG; and
- Class Plaintiffs' brief due two weeks after depositions end, for a total of about two months, readying the issues for decision by April.

The discovery would be focused on and limited to these subjects:

- When, how and by whom the $450 million deal was negotiated;
- How the Proposed Intervenors and their counsel of record evaluated the claims both by and against AIG, including how much they relied on LLBL and other counsel who are conflicted;
- How and when Proposed Intervenors' counsel of record was hired and what work it did between then and January 5;

- 10 -

- Whether AIG disputes any statements in the Miller Dec. ████████████████████████████████████████████████ and if so on what bases; and

- Whether Proposed Intervenors and LLBL deny knowing the Class' settlement position by September 15.

This discovery is necessary to show that the motion to intervene is not "timely." Under both branches of Rule 24, a motion to intervene must be "timely," as assessed by reference in part to when the intervenor knew or should have known of his interest in the case. *See Nissei Sangyo America, Ltd. v. U.S.*, 31 F.3d 435, 438-39 (7th Cir. 1994). The law in this Circuit requires a potential intervenor to "act with dispatch." *Atlantic Mutual Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 960 (7th Cir. 1994). Intervention is unavailable to a party who "dragged its heels." *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989). Potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights; upon so learning, they must act reasonably promptly. *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983) (courts refuse intervention to a party which waited and watched litigation when it knew its interests were implicated); *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1062 (9th Cir. 1997) (affirming denial of motion to intervene as untimely after party "made the strategic decision to rely on [an existing party] to advance their interests"). As part of the timeliness analysis, courts must consider the potential prejudice to the original parties if intervention is granted. *See Nissei*, 31 F.3d at 438-39.[3]

---

[3] If the Court does not deny the motion to stay class certification, such discovery is plainly necessary. *Christman*, 191 F.R.D. at 152 (holding that if court were to appoint would-be intervenors that had previously negotiated settlement agreement with defendant as class representatives, it would be necessary to allow the named Class Plaintiffs discovery into settlement negotiations and the relationship between the defendants, their counsel, the intervenors and their counsel).

Class Plaintiffs have reason to believe that this focused expedited discovery will enable them to prove the following bases for denying the motion to intervene (of which the class action complaint is an integral part, *see* Fed. R. Civ. P. 24(c), last sentence): (a) that Proposed Intervenors knew of the alleged grounds for intervention months ago, but conceded then that Class Plaintiffs were adequate class representatives; and (b) intervention will severely prejudice Class Plaintiffs because the settlement set forth in the Term Sheet is highly unlikely to be approved and thus the only result of the intervention would be delay and expense.

## CONCLUSION

For the foregoing reasons, Class Plaintiffs request that the Court deny Proposed Intervenors' motion for a stay and to rule at "an early practicable time" on Class Plaintiffs' motion for class certification. *See* Fed. R. Civ. P. 23(c)(1)(A).

Dated: January 10, 2011

Respectfully submitted,

SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY

By: /s/ Gary M. Elden
    One of Their Attorneys

Gary M. Elden
Gary M. Miller
Matthew O. Sitzer
Daniel M. Hinkle
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 704-7700

Michael A. Walsh
Allison D. Burroughs
NUTTER, McCLENNEN & FISH, LLP
155 Seaport Boulevard
Boston, Massachusetts 02110
Telephone: (617) 439-2775

1066110

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 10, 2011, I caused a true and correct copy of the foregoing **CLASS PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' REQUEST FOR STAY OF RULING ON MOTION FOR CLASS CERTIFICATION AND CLASS PLAINTIFFS' ALTERNATIVE REQUEST FOR EXPEDITED DISCOVERY AND BRIEFING SCHEDULE ON RULE 24 MOTION TO INTERVENE** to be filed with the Clerk of the Court and served using the CM/ECF e-filing system upon all counsel of record, and that the same was served via electronic mail on all counsel of record on January 10, 2011.

                                                    s/ Gary M. Elden

1066110