**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) | Case No. 07 CV 2898 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) ) ) | |
| Counter-Claimants, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Counter-Defendants. | ) ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) | Case No. 09 CV 2026

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**AIG'S RESPONSE TO LIBERTY MUTUAL'S AND CLASS PLAINTIFFS' MOTIONS
FOR ORDERS DIRECTING INTERVENORS TO PERMIT THEM
TO PARTICIPATE IN SETTLEMENT NEGOTIATIONS**

AIG respectfully submits this response to Liberty Mutual's and Class Plaintiffs' Motions for Orders Directing Intervenors to Permit Them to Participate in Settlement Negotiations (the "Motions").

## ARGUMENT

The companion motions filed by Liberty Mutual and Class Plaintiffs (collectively, "Liberty Mutual," as Class Plaintiffs are two Liberty Mutual subsidiaries) seek an order compelling the Intervenors to allow them fully to participate in the ongoing settlement negotiations. While AIG always has been willing to include all interested parties, including Liberty Mutual, in constructive and meaningful settlement discussions, Liberty Mutual's prior representations and conduct call into question the sincerity of and motivation for this current demand.

Liberty Mutual has said explicitly that it strongly opposes and will not participate in the settlement being negotiated between AIG and the Intervenors. In fact, so strong is its opposition to the settlement, that Liberty Mutual has threatened to sue several of the Intervenors as a result of their willingness to reach the present agreement to settle this case. Given this backdrop, it strains belief that Liberty Mutual has any true desire to participate in the settlement negotiations for any purpose other than to scuttle them. Liberty Mutual itself acknowledges its motivation in its motion, where Liberty Mutual states that it "intend[s] to participate constructively in all [settlement] meetings and teleconferences to ensure a fair allocation of any sums to be allocated, *whether as a result of the proposed term sheet **or some other mechanism for settlement.***" (Liberty Mutual Mot. ¶ 14 (quotation marks omitted) (first alteration in original) (emphasis added).) As that statement makes clear, Liberty Mutual's aim in seeking a seat at the ongoing settlement negotiations is not to advance them, but to interfere with them in order to force a

settlement on different terms that Liberty Mutual would prefer. AIG respectfully submits that the Court did not intend to promote such divisive efforts when it directed that Liberty Mutual be allowed to participate constructively in the settlement negotiations if it so desired.

AIG and the Intervenors have worked diligently to reach a fair and reasonable settlement that has the approval of the NWCRP Board of Governors, the NAIC Examiner and a significant number of other members of the proposed settlement class. Liberty Mutual has had ample opportunity to attempt to dissuade all these constituencies from participating in the settlement, but such efforts have failed. This motion is but the latest salvo in Liberty Mutual's anti-settlement campaign, and it should fail as well.

AIG asks that the Court now allow AIG and any other party sincerely interested in finalizing the settlement reflected in the agreed-upon Settlement Term Sheet expeditiously to do so without interference. Once that happens, Liberty Mutual will have a full and fair opportunity to challenge the proposed settlement and urge others to reject it, but Liberty Mutual should be required to do those things openly and at the appropriate time, not as a fox in the hen house.

**A.** *Class Plaintiffs and Liberty Mutual Have Declined Invitations To Participate Constructively in the Settlement Process*

As a threshold, the key premise of Liberty Mutual's motions – *i.e*, that Liberty Mutual historically has been excluded from settlement negotiations – is untrue. Liberty Mutual has not been excluded from efforts to negotiate a global settlement, or from participation in the negotiations that resulted in the agreed-upon Settlement Term Sheet. However, after numerous fruitless negotiations marked by Liberty Mutual's unreasonable and self-interested demands threatened to derail the settlement process, the Intervenors – supported by the NWCRP Board of Governors and the NAIC Lead Examiner – were forced to assume the lead role in negotiations to protect their own interests.

2

For a period of time, in fact, Liberty Mutual was driving the settlement efforts. In January 2008, Liberty Mutual, apparently acting as a representative for the NWCRP, approached AIG to discuss the possibility of a global settlement. AIG welcomed this invitation and cooperated fully in the resulting negotiations. Those discussions ultimately failed as a result of Liberty Mutual's unreasonable position, both resisting any legitimate method of calculating damages and rejecting the guidance of and analysis by the NAIC's Multi-State Market Analysis Working Group, and instead insisting upon direct participation in and control over the Examination.

In 2010, Liberty Mutual again stepped in to lead the NAIC Examiner-supervised settlement process. AIG fully cooperated with this arrangement, including by attending a day-long presentation session in Boston in April 2010, during which Liberty Mutual laid out its full case for what AIG perceived as exorbitantly inflated damages and an equally unrealistic settlement demand. While AIG vigorously disagreed with Liberty Mutual's assumptions and conclusions, it nonetheless responded in detail and continued to negotiate in good faith with Liberty Mutual. Further, Liberty Mutual (through Class Plaintiffs) was present at the meeting when AIG first presented the settlement proposal that ultimately led to the agreement reflected in the Term Sheet. *Liberty Mutual* elected not to participate in a meaningful way after that meeting, apparently having concluded that AIG's settlement proposal was not what it wanted. Finally, recognizing Liberty Mutual's inability adequately to represent their interests, the Pool Board, though the Intervenors, reassumed the lead role of negotiating with AIG an appropriate settlement for its members.

Further, despite the previous failed negotiations described above, AIG has extended invitations welcoming constructive participation in the settlement process to Liberty Mutual and

3

its subsidiaries for several months, yet they have steadfastly refused to accept. (*See, e.g.*, 1/9/2011 Decl. of Gary M. Elden ("Elden Decl.") Ex. 3 at 3, Dkt. No. 306-1 ("As has been the practice to date, counsel for Liberty Mutual—including you and Mr. Walsh and your firms—are invited to continue to participate in such settlement negotiations."); Elden Dec. Ex. 5 at 2 ("To the extent that your firm wishes to be more involved in or kept better informed about these negotiations, we do not object to you or your in-house contacts at Liberty Mutual communicating such desire to counsel for the NWCRP Board or the NAIC Examiner."); *id.* at 1 ("Liberty Mutual has been in regular communication with counsel for the NWCRP, the other members of the NWCRP and the NAIC Examiner, through which Liberty has expressed its strong views concerning the current state of settlement negotiations. Whether Liberty elects to continue this participation in the settlement negotiations though its in-house litigation counsel, its outside attorneys from the Butler Rubin firm and/or your firm, that is Liberty's decision to make.").) Even now, AIG has been supportive of efforts by the Intervenors to receive input from Liberty Mutual with respect to the proposed settlement, and it will continue to encourage such efforts as long as they do not jeopardize the settlement process.

It has become abundantly clear, however, that Liberty Mutual's recent involvement in the settlement process has been designed to frustrate settlement efforts, rather than to participate on a constructive basis. Over the past month, Liberty Mutual has put on a road-show of closed-door meetings with various parties for the express purpose of talking them out of the current proposed settlement and the $450 million settlement amount in particular. Liberty Mutual has given in-person presentations to the NAIC Examiner and his experts, the Pool Board and the Intervenors, and to a number of other putative class members, all focused upon Liberty Mutual's arguments for why the current settlement should be rejected. While Liberty Mutual understandably does

not like the fact that these same parties continue to champion the current settlement, it cannot be said that Liberty Mutual has not been given the full opportunity to make its views heard.

Having *elected* not to participate in a constructive manner in the settlement process, Liberty Mutual and Class Plaintiffs should not now be heard to demand inclusion in that process on the basis of their purported exclusion from it.

B.  *Class Plaintiffs and Liberty Mutual Have Rejected the Agreed-Upon Term Sheet*

As the foregoing demonstrates, Liberty Mutual's historic participation in the settlement process has been focused upon advancing its own unreasonable monetary demands and undermining any productive settlement efforts that diverge from Liberty Mutual's agenda. There can be no question that Liberty Mutual's current settlement objectives are no more constructive. Though Liberty Mutual now expresses a purported interest in cooperatively participating in "meetings relating to allocation of settlement funds" (Liberty Mutual Mot. ¶ 5 (quotation marks omitted)), Liberty Mutual has unequivocally and repeatedly rejected the agreed-upon terms of that same settlement: "Class Plaintiffs are willing to settle, ***but not on the basis outlined in the Term Sheet***." (Class Plaintiffs' Opposition to Proposed Intervenors' Request for Stay of Ruling on Motion for Class Certification at 1, Dkt. No. 306 (emphasis added).) Liberty Mutual has not retracted these objections in connection with its demand to participate in the settlement process; instead, it has restated its opposition. (*See, e.g.*, Elden Decl. ¶ 11 (opposing settlement terms); 1/13/2011 Hr'g Tr. at 13 (stating that Class Plaintiffs oppose the settlement).) Indeed, after being content for the last three years to accuse only AIG of underreporting premium, Liberty Mutual, in a transparent attempt to scuttle the developing settlement, has now threatened in open court to sue some of the Intervenors for underreporting as well. (1/13/2011 Hr'g Tr. at 80.)

5

Having unambiguously reaffirmed its rejection of the agreed-upon settlement terms, Liberty Mutual can have no legitimate purpose for seeking to participate in the final negotiations of that settlement. Liberty Mutual (both in the motion filed by Liberty Mutual proper and in the motion filed by Class Plaintiffs) suggests that its participation is necessary and appropriate to ensure a fair allocation of AIG's $450 million proposed settlement payment among the members of the class. (Liberty Mutual Mot. ¶ 14; Class Plaintiffs Mot. ¶ 11.) But Liberty Mutual has no legitimate interest in such an allocation among the settling parties where it has elected not to participate in the settlement and receive an allocated percentage of the $450 million settlement amount.

Having rejected the settlement, Liberty Mutual has no incentive to ensure that the allocation of settlement funds – or any other aspect of the settlement – is fair. To the contrary, as a party strongly opposing the settlement, Liberty Mutual's only incentive is to ensure that the allocation is flawed or unfair so that the proposed settlement will be rejected. Thus, while Liberty Mutual accuses the Intervenors of being in a conflicted position vis-à-vis the class (Liberty Mutual Mot. ¶ 15), Liberty Mutual suffers from a more direct and debilitating conflict.

Seventh Circuit law supports limiting a party that seeks to interfere in a legitimate settlement agreement. In *Mars Steel Corp. v. Continental Illinois National Bank & Trust Co. of Chicago*, 834 F.2d 677 (7th Cir. 1987), two separate putative class actions were filed on behalf of identically-defined classes against the same defendant for the same alleged conduct. Both class representatives engaged in settlement negotiations; one settlement was determined to be fair and was approved. The non-settling class representatives challenged rulings that, they argued, had the effect of preventing discovery into the settlement negotiations that would have shown that the settlement lacked merit. The Seventh Circuit upheld the rulings, finding that

6

"[d]iscovery of settlement negotiations in ongoing litigation is unusual because it would give a party information about an opponent's strategy . . . ." *Id.* at 684. The Court further warned against the danger of unfairness inherent in such discovery:

> Suppose Joyce and Kubasiak, allowed to discover the details of Continental's negotiations with Torshen, had found out that Continental had acknowledged certain weaknesses in its defense; Joyce and Kubasiak could have used that information to drive a harder bargain with Continental or, if settlement negotiations had broken down, to undermine Continental's defense at trial.

*Id.*; *see also Siemer v. Quizno's Franchise Co. LLC*, No. 07 C 2170, 2010 WL 3238840, at *3 (N.D. Ill. Aug. 13, 2010) (denying discovery by intervenors into global settlement negotiations that "led to the division of the proceeds of the Settlement Agreement among the different Class members . . .").

Here, as in *Mars Steel Corp.*, allowing Liberty Mutual a seat at the table to participate in the final negotiations of a settlement it already has rejected would create unfairness and give Liberty Mutual a platform from which to sabotage the settlement. It also would discourage candor and free-flowing communication among the Intervenors and AIG, since Liberty Mutual recently threatened to sue some of the Intervenors. Accordingly, the motions filed by Liberty Mutual and Class Plaintiffs should be denied.

Dated: January 24, 2011

AMERICAN INTERNATIONAL GROUP, INC., et al.,

By: /s/ Rebekah H. Parker
One of Their Attorneys

Stephen Novack
Andrew D. Campbell
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza

7

Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of **AIG'S RESPONSE TO LIBERTY MUTUAL'S AND CLASS PLAINTIFFS' MOTIONS FOR ORDERS DIRECTING INTERVENORS TO PERMIT THEM TO PARTICIPATE IN SETTLEMENT NEGOTIATIONS** was served upon all counsel of record in this action pursuant to the written consent of the parties under Fed. R. Civ. P. 5(b)(2)(E) via the U.S. District Court CM/ECF e-filing system on January 24, 2011.

                                                   /s/ Rebekah H. Parker