**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 07 CV 2898 |
| vs. | ) ) | District Judge Robert W. Gettleman |
| ACE INA HOLDINGS, INC., *et al.*, | ) ) | Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) | |

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, *et al.*, individually and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) | No. 09 CV 2026 |
| Plaintiffs, | ) ) | District Judge Robert W. Gettleman |
| vs. | ) ) | Magistrate Judge Sidney I. Schenkier |
| AMERICAN INTERNATIONAL GROUP, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

**SETTLEMENT CLASS PLAINTIFFS'
OPPOSITION TO MOTIONS OF OBJECTORS
REGARDING PARTICIPATION IN SETTLEMENT NEGOTIATIONS**

ACE INA Holdings, Inc. Auto-Owners Insurance Co., Companion Property & Casualty Ins. Co., FirstComp Insurance Co., The Hartford Financial Services Group, Inc., Technology Insurance Co., and The Travelers Indemnity Company (collectively, "Settlement Class Plaintiffs") would like nothing more than to achieve a fair and reasonable global settlement that would resolve this dispute as to <u>all</u> class members. That global

settlement would include Liberty Mutual Insurance Group and its subsidiaries ("Liberty"), such as Safeco Insurance Company of America and Ohio Casualty Insurance Company (collectively, "Safeco"). (Liberty and Safeco are collectively referred to as the "Objectors.") So far, the Objectors are the only class members who have stated objections to the proposed settlement.

Based on the belief that it should be the goal of the Objectors to help to conclude a fair and reasonable settlement that will be approved by the Court, Settlement Class Plaintiffs have invited Objectors' comments and contributions to the draft "Settlement Agreement".[1] At the same time, Settlement Class Plaintiffs ask that the Objectors, who have declared in open court their intent to sue several of the Settlement Class Plaintiffs and to thwart the proposed settlement, not disrupt productive discussions that have successfully brought the parties to the brink of achieving what Objectors have been unable to accomplish in several years of fits and starts of negotiating with AIG—a fair and reasonable resolution of this long-running, expensive, and burdensome dispute.

---

[1] On January 19, 2011, Settlement Class Plaintiffs committed: (a) to send Objectors the draft Settlement Agreement, (b) to consider comments from Objectors on the draft Settlement Agreement, and (c) to meet with Objectors to discuss their comments. (*See* Exhibit A, January 21, 2011 emails from/to F. Klein and M. Schwartz) Despite that promise, on January 20, 2011, Liberty filed its Motion for Order Directing Intervenors to Permit Liberty Mutual to Participate in Settlement Negotiations (the "Liberty Motion") and Safeco filed its Motion for Order Directing Intervenors To Permit Them To Participate in Settlement Negotiations and Joinder in Liberty Mutual's Motion Requesting Identical Relief (the "Safeco Motion"). (Case No. 07-cv-2898, D.E. ## 821, 823; Case No. 09-cv-2026, D.E. # 319) (Case No. 07-cv-2898 and Case No. 09-cv-2026 are collectively referred to as the "Litigation" or the "Case"). Given the January 19 promise noted above, and the filing of the Motions the next day, it does not appear to be the Objectors' goal to obtain the draft Settlement Agreement, but instead to have an issue to bring before the Court. The issue, if it ever was one, has been mooted because the Settlement Class Plaintiffs have sent Objectors the draft Settlement Agreement, solicited Objectors' comments, and agreed to meet to discuss Objectors' comments.

## I.   THE RELIEF OBJECTORS ARE REQUESTING IS IMPRACTICAL AND INAPPROPRIATE.

Settlement Class Plaintiffs have agreed to involve Objectors in the development of the settlement documents by providing Objectors a current, working draft of the proposed Settlement Agreement; allowing Objectors to present comments and questions to Settlement Class Plaintiffs regarding the Settlement Agreement; and agreeing to meet to discuss any such issues with Settlement Class Plaintiffs. Objectors' Motions, however, demonstrate that they will not be satisfied with anything less than a level of participation that actually prevents the proposed settlement from being concluded.

In a multi-party litigation such as this, it is not practical for any single party to be included in all discussions. Settlement Class Plaintiffs have offered Objectors a meaningful role in the process that should be more than sufficient to realize the goal of exploring reasonable settlement terms. Further, Objectors have never been "excluded" from the negotiations leading up to the proposed settlement; in fact Liberty has played a leading role for over two years in advancing the discussions from Point A to Point B. It was only relatively recently, after it became clear that Objectors and AIG were not able to get over the hump to Point C (that being a full resolution), that the Board of Governors of the National Workers Compensation Reinsurance Pool (the "NWCRP") ("NWCRP Board") and the Settlement Class Plaintiffs took responsibility for getting the settlement completed for presentation to the Court.

Settlement Class Plaintiffs and AIG have agreed in principle to a payment of $450 million and other key terms, but the details of the settlement need to be articulated through a settlement agreement that will likely exceed 30 pages, to be accompanied by some 10

exhibits. The Settlement Class Plaintiffs and AIG are diligently working in good faith to document the proposed agreement and present it to the Court on January 28, 2011 for prompt evaluation. Regardless of whether the settlement is ultimately approved or rejected, it is in the best interests of all parties and the purported class to expedite that process.

To that end, the parties who are working very hard to advance the settlement require an opportunity to confer free from unnecessary distraction and controversy, and without concern that Objectors would inappropriately use information obtained against the promoters of the settlement in an effort to undermine the settlement which as nearly been achieved. This is more fair than because the Settlement Class Plaintiffs are willing and have offered to give Objectors a meaningful opportunity to comment on and confer regarding all settlement terms. Objectors' impractical request for access to every single discussion relating to the drafting of the proposed Settlement Agreement, if allowed, would unnecessarily chill discussions, and deter and delay a prompt presentation of the agreement to the Court. The Objectors' Motions should therefore be denied.

## II.     OBJECTORS HAVE NOT BEEN EXCLUDED FROM SETTLEMENT NEGOTIATIONS.

Both Motions are premised on the erroneous assertion that Objectors have been "excluded" from settlement negotiations to date. (Liberty Motion, D.E. # 821 ¶ 11; Safeco Motion, D.E. # 319, ¶ 3) This mischaracterization ignores a huge swath of the history of the

4

negotiations and lead-up to the current settlement proposal.[2]  Far from being excluded, Liberty was instrumental in initiating the negotiations with AIG and counsel for the state regulators (Examiner in Charge David Leslie ("EIC")), and was even the NWCRP Board of Governors' authorized representative in those negotiations for many months.

Indeed, Liberty served as NWCRP Board chair from June 2007 to June 2008, and again from June 2009 to June 2010.  In the prior year (2006-2007) and the intervening year (2008-2009), Liberty was the vice-chair, and Liberty remains a member of the NWCRP Board currently.  In its capacities as chair and vice-chair, Liberty had a major role in directing the settlement discussions until recusing itself from the effort in recognition that Liberty's interests and desires diverged from those of the rest of the NWCRP Board and of other "Participating Companies" in the NWCRP.

Rather than being kept in the dark, Objectors have participated in multiple rounds of negotiations and presentations that have included the NWCRP Board, AIG, and the EIC.  A short chronology of these meetings and efforts is useful to illustrate the extent of Objectors' mischaracterizations that they have been "shut out" of the process and excluded.  That characterization is not even close to accurate.

---

[2] Given the short period of time between the filing of Liberty's Motion and Safeco's Motion and the January 25, 2010 hearing, and Settlement Class Plaintiffs' desire to file their Opposition prior to the hearing, Settlement Class Plaintiffs have not provided a supporting declaration with regard to the following time line of events, and instead are making these representations as officers of the Court.  If the Court requests such a declaration, counsel will provide one in a timely manner.

### A. Liberty Was Actively Involved in Initial Settlement Discussions With the NWCRP Board, the EIC, and AIG.

Liberty was a Board member when the NWCRP voted to initiate the litigation against AIG that was filed in May 2007 through the National Council on Compensation Insurance, Inc. ("NCCI"), as attorney-in-fact for the NWCRP Participating Companies. Around the same time, various state insurance commissioners began investigating AIG's premium underreporting conduct. The state commissioners' investigations were eventually consolidated into a combined investigation led by the EIC. In February 2008 – at Liberty's urging – NCCI agreed to a several month stay of the Litigation to pursue settlement negotiations that proved unsuccessful.

In October 2008, the NWCRP Board and the EIC entered into an information sharing agreement that was later expanded to include Liberty (the "Ground Rules Agreement") by which these parties would exchange documents and data, and would meet jointly with AIG for purposes of settlement discussions. While these negotiations also proved unsuccessful, they began the exchange of settlement demands between AIG on the one hand, and the NWCRP Board and Objectors on the other, with the assistance and facilitation of the EIC and with Liberty still playing a leading role.

### B. Objectors Took the Lead Role in Settlement Negotiations Following Dismissal of the NCCI Action.

In August 2009, when the Court dismissed the NCCI action for lack of standing, Objectors continued to litigate their claims against AIG. At this juncture, <u>Objectors took over negotiations with AIG, and insisted that counsel for the NWCRP Board should not have any role in the negotiations going forward</u>. Nonetheless, the NWCRP Board and the EIC

continued to work with Objectors toward a global settlement with AIG. The NWCRP and Objectors also worked together with shared consultants to develop a damages model.

In January 2010, the NWCRP Board agreed to delegate authority to Liberty to act as the lead spokesperson for settlement discussions with AIG. Pursuant to this authority, Liberty and the EIC met on multiple occasions from February through April 2010 to discuss the issues, and ultimately presented their analysis to AIG. In May 2010, the CEOs of Liberty and AIG met, but ultimately were not able to agree to settle these disputes.

### C. Objectors Were Invited to Join Further Settlement Discussions Leading Up to the Settlement Term Sheet.

In July 2010, the EIC and certain state commissioners met with AIG, and persuaded AIG to raise its settlement proposal to the current $450 million proposal. The EIC, AIG, and the NWCRP Board began focusing on the possibility of a settlement based on that figure in August 2010. In September 2010, the NWCRP Board authorized its counsel to meet with Objectors' counsel to attempt to bring them into the process of finalizing a term sheet that would be agreeable to Objectors. Objectors, however, believed that the $450 million figure was too low, and that the litigation should proceed.

Certain NWCRP Board member companies continued to believe that the proposed settlement based on the payment of $450 million by AIG was a viable avenue to resolving the case on terms that are advantageous to the NWCRP Participating Companies. To this end, the undersigned counsel was retained by the Settlement Class Plaintiffs to evaluate the issues, and, if appropriate, bring the proposed settlement to the Court's attention for further evaluation and dissemination to the putative class members.

**D. Objectors Had Multiple Opportunities to Meet With the NWCRP Board and the EIC.**

Objectors had substantive meetings the NWCRP Board (in September 2010), and with the Settlement Claim Representatives (a 6-hour meeting on December 20, 2010) to present their views on the appropriate timing and valuation of a settlement. Settlement Class Plaintiffs also met at length with the EIC and his experts (on December 17, 2010), and with representatives of AIG and its experts (on January 3, 2011) to obtain a balanced understanding of the liability and damages issues. The Objectors then met with the EIC (on January 4, 2011), and with putative class members (on January 19, 2011) to articulate their views on settlements. Thus, there have been numerous meetings and full and open exchanges of views, and the Objectors have been heard at length by every constituency.

**E. Objectors' Claim of "Exclusion" from the Settlement Discussions is Meritless.**

As the foregoing demonstrates, Objectors have had ample opportunities to participate, hear opposing viewpoints, and present their perspectives on the pros and cons of continuing the Litigation versus consideration of the current proposed settlement. Nonetheless, Objectors have taken an adamant position that the current settlement proposal is inadequate, and they have threatened to sue or disqualify anyone who disagrees with them. In light of Objectors' deep involvement in the settlement negotiations for over two years and multiple opportunities to present their view of the Litigation, there is absolutely no basis for any assertion that Objectors have been excluded from this settlement process.

III.   **FURTHER INVOLVEMENT IN THE DETAILS OF THE PROPOSED SETTLEMENT WILL IMPAIR PROSPECTS FOR PROMPT AND EFFICIENT PRESENTATION OF THE SETTLEMENT TO THE COURT.**

Following the filing of the Settlement Class Plaintiffs' Rule 24 Motion to Intervene and Request for Stay of Ruling on Motion for Class Certification (the "Motion to Intervene"), Objectors demanded "unfettered" access to all meetings, telephone conferences, emails, and every other form of communication among Settlement Class Plaintiffs and others. (*See* Safeco's Motion, D.E. # 319, Exhibits B, C and D) As noted above, Settlement Class Plaintiffs have already agreed to provide Objectors with significant participation in the settlement process by providing them a working draft of the Settlement Agreement and inviting comments from the Objectors. Even more extensive involvement in the process is not warranted, and would unnecessarily chill and potentially delay the discussions necessary to completing the draft Settlement Agreement.

Objectors have been adamant in oral and written representations to the Court that they oppose the settlement being pursued by the Settlement Class Plaintiffs. Indeed, Safeco's counsel stated at the hearing on the Motion to Intervene on January 13, 2011: "I think we can make a very compelling case to the Court that this settlement has no chance ever of being approved. It is so far off the mark, it's so unlikely to be approved." (January 13, 2011 Tr. at 22.) Counsel for Liberty also said that it was "likely" to sue certain Settlement Class Plaintiffs. (*Id.* at 80.) Thus, the intent of Objectors' request appears to be less directed to constructive participation in settlement negotiations, and more to seek a litigation advantage either against the Settlement Class Plaintiffs or AIG. In any event, the Objectors have made

no secret of their deep, abiding, and passionate opposition to the Settlement Term Sheet, and their plans to derail and hopefully destroy this settlement.

### A. Movants Refused to Clarify their Intentions.

In response to Objectors' request to be included in all discussions, Settlement Class Plaintiffs requested two simple clarifications: (1) whether Objectors oppose the "Settlement Term Sheet", and (2) whether Objectors intend to sue four of the seven Settlement Class Plaintiffs (ACE, Hartford, Travelers and Sentry), as Objectors' counsel indicated to the Court that it was likely to do (Jan. 13 Tr. at 80-81). Objectors refused to answer either question. (*See* Safeco's Motion, D.E. # 319, Exhibits B, C and D.)

At the January 13 hearing, counsel for Safeco further clarified Objectors' agenda: "I think the conflicts of interest [sic] we can develop somewhat further also." (Jan. 13 Tr. at 22-23.) Liberty confirmed this position in its motion which states that the Settlement Class Plaintiffs are "hopelessly conflicted." (Liberty's Motion, D.E. # 821, ¶ 2.) This alleged conflict appears to be a key part of Objectors' argument against the fairness of the proposed settlement. While they are entitled to raise this issue at the appropriate time, there is no justification for allowing Objectors to participate in the day-to-day of the settlement process merely so they can develop evidence to support their objections.

Based on these circumstances, the involvement of Objectors in every discussion concerning the draft Settlement Agreement would only serve to chill and deter the candor and efficiency of those discussions, and the Settlement Class Plaintiffs' efforts to bring the proposal before the Court. If "unfettered" access were allowed, certain Settlement Class Plaintiffs may refrain from commenting because of fear that they will be creating a record

Objectors will use to sue them. Similarly, AIG would need to be constrained in its communications for fear that any admissions of weaknesses in its defenses will be used by Objectors against AIG. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank and Trust Co.*, 834 F.2d 677, 684-85 (7th Cir. 1987) (affirming district court ruling to deny discovery into settlement negotiations between defendant and plaintiff's counsel in a class action case: "Discovery of settlement negotiations in ongoing litigation is unusual because it would give a party information about an opponent's strategy, and it was not required in this case.").

Here, Objectors have unambiguously stated that they intend to challenge the adequacy of the proposed settlement, and to initiate litigation against certain Settlement Class Plaintiffs. Any permitted discovery should not equate to access to all further discussions necessary to draft the Settlement Agreement and to bring it before the Court for review because the likely use of such access is only to disrupt and delay the process, to gain an advantage in the Litigation, and not to constructively advance or improve this settlement proposal.

**B.    Objectors Have Been Included in the Settlement Process to an Appropriate Extent.**

The ongoing settlement discussions involve diverse companies that range from national multi-line insurers to single state workers compensation only companies. Over two dozen businesspeople and lawyers from corporate legal departments are involved. Many companies have multiple outside counsel involved, and the EIC is also a participant in the discussions. There are many moving parts in these negotiations, and introducing Objectors' sand into these gears threatens to derail efforts that date back over two years. This is especially true in light of the fact that, as discussed above, Liberty was deeply involved in the

11

settlement discussions up until the current Settlement Term Sheet, was in fact driving the multi-party settlement discussions until they failed, and then elected to step back from the settlement efforts to pursue its own objectives.

Moreover, the relief requested by Objectors is unrealistic. If Objectors' Motions were granted, the Court could reasonably anticipate disputes over whether Objectors were improperly excluded from a particular phone call or conversation, as well as disputes over notes and emails regarding these details. There is no reasonable way for Settlement Class Plaintiffs to meet these demands or for this Court to monitor compliance with an order in the broad and unlimited nature of the one requested by Objectors.

Settlement Class Plaintiffs have agreed to involve Objectors in a meaningful way as described above, and have demonstrated that they are making good on that agreement by supplying the current working (yet-to-be-approved) draft of the Settlement Agreement. Contrary to Objectors' assertions, fairness would be best served by allowing the Settlement Class Plaintiffs an opportunity to complete their work without being hampered by the imposition of an obtrusive obligation to include parties who have indicated their adamant opposition to this settlement proposal in every discussion.

## V.    CONCLUSION

For the foregoing reasons, Settlement Class Plaintiffs respectfully request that Liberty's Motion and Safeco's Motion, both regarding access to settlement related discussions, be denied in their entirety.


Dated:  January 24, 2011

Respectfully submitted,

ACE INA HOLDINGS, INC., AUTO-OWNERS
INSURANCE CO., COMPANION PROPERTY &
CASUALTY INS. CO., FIRSTCOMP INSURANCE
CO., THE HARTFORD FINANCIAL SERVICES
GROUP, INC., TECHNOLOGY INSURANCE CO.,
and THE TRAVELERS INDEMNITY COMPANY


By     /s/ Frederic R. Klein
                One of Their Attorneys


Frederic R. Klein
William C. Meyers
Kerry D. Nelson
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000

# EXHIBIT A

**From:** mschwartz@butlerrubin.com [mailto:mschwartz@butlerrubin.com]
**Sent:** Friday, January 21, 2011 5:22 PM
**To:** Klein, Frederic
**Cc:** Schlessinger, Daniel; Nelson, Kerry; msitzer@grippoelden.com; Snider, Rowe; Meyers, William C.;
jmorsch@butlerrubin.com; jrubin@butlerrubin.com; gelden@grippoelden.com
**Subject:** Re: Safeco v. AIG -- draft Settlement Agreement

Fred,

Thank you for your email. We accept the terms set forth therein, though fully reserve our rights to object
to both the Term Sheet and the forthcoming settlement agreement. Please provide us with the draft
settlement agreement as soon as possible.

With respect to your statement below -- that Liberty Mutual has, thus far, "explicitly declined [your] request
that [we] identify" our objections to the Term Sheet -- this is simply not accurate. We requested the
January 19 meet-and-confer to discuss a single issue: whether you would permit Liberty Mutual to
participate in settlement negotiations. As I explained then and reiterate now, that conversation was not
intended to be a substantive discussion about the infirmities with the Term Sheet. Further, as I explained
then, and reiterate now, Liberty Mutual *does* have substantive questions and concerns about the Term
Sheet, which questions and concerns are, in part, set forth in Gary Elden's letter to you sent earlier today,
which Liberty Mutual incorporates herein by reference.

In addition to those questions and concerns, Liberty Mutual also raises the following additional point: The
class action includes only claims brought with respect to AIG's underreporting in NWCRP states. The
Term Sheet, however, would require all parties (including Liberty Mutual were it to sign on) to release
claims against AIG with respect to AIG's underreporting not just in NWCRP states, but in non-Pool states
as well. As you know, Liberty Mutual has asserted claims against AIG that go beyond the NWCRP. What
is the rationale for requiring Liberty Mutual, under the current settlement terms, to release its claims as to
non-Pool states without being compensated for those claims? In answering, please identify any
documents or due diligence upon which you are relying.

Mark

**Mark A. Schwartz**

**Butler Rubin Saltarelli & Boyd LLP**
70 West Madison St. | Suite 1800 | Chicago, IL 60602
312.696.4488 | 312.873.4358 fax

mschwartz@butlerrubin.com
www.butlerrubin.com

---

"Klein, Frederic"
<Frederic.Klein@goldbergkohn.com>

To <mschwartz@butlerrubin.com>, <msitzer@grippoelden.com>

cc "Snider, Rowe" <RSnider@lockelord.com>, "Schlessinger, Daniel"

01/21/2011 09:26 AM                    <DSchlessinger@lockelord.com>, "Nelson, Kerry"
                                       <kerry.nelson@goldbergkohn.com>, "Meyers, William C."
                                       <William.Meyers@goldbergkohn.com>

                                       Subject Safeco v. AIG – draft Settlement Agreement

.Mark and Matt – As promised in my email of January 19 at 9:29 a.m. to Mark (which you did not respond to in writing), and subject to Rule 408 of the FRE, I will send you a working, not-yet-approved or authorized, draft of the Settlement Agreement in accordance with the undertaking I describe below. When you receive the draft Settlement Agreement, please understand that neither the Settlement Class Representatives (also called the "Intervenors") nor AIG has yet approved of this document, and it is likely to change in some ways, but this is the current draft. After you receive and review it, please provide us your comments and input, if you choose to do so. As promised in my January 19 email, if you would like to meet with us to discuss the draft Settlement Agreement after you have reviewed it, we will schedule such a meeting before January 28.

Let me explain, though, that I am providing this working draft of the Settlement Agreement at this time notwithstanding the following facts: (a) your clients unequivocally have rejected the Settlement Term Sheet in court filings and in open court, (b) you stated on January 19 that your clients continue to oppose the $450 million settlement, (c) you further stated on January 19 that your clients have other objections to the Settlement Term Sheet, though you have explicitly declined our requests that you identify them, and (d) Liberty Mutual has threatened in open court to sue three of my clients (ACE, The Hartford, and Travelers), and one other company I do not represent (Sentry). When I asked you late in the day on January 19 (for the fourth time) whether Liberty Mutual intended to sue my clients, you stated that the decision about whether Liberty Mutual will sue my clients (and presumably Sentry as well) has not yet been made.

Please note that I will provide this draft to you under the following conditions: you are not authorized to file this draft document with the court, or to show it to anyone except (a) to those in your respective firms who are working on this matter, and of course (b) to your clients Safeco, Ohio Casualty, Liberty Mutual, and others within the Liberty Mutual family of companies. In particular, you are not authorized to show or shop this draft document to any potential Settlement Class Member or putative class member other than your clients. Especially in light of Rule 408 and the fact that this is a draft Settlement Agreement which may change, I need your confirmation that you will abide by these conditions which are conventional. An email from both of you, signifying your acceptance of these conditions by you and your respective clients, will be fine.

If you agree to this undertaking, I will send the draft Settlement Agreement promptly. After you receive it, if you choose to provide comments on the draft Settlement Agreement in writing or orally, we will consider them. This is not a promise or a commitment to make the changes you may suggest. It is a promise and commitment, though, to consider your changes and suggestions.

        Fred

---

Frederic Klein | **GOLDBERG KOHN** | 55 East Monroe, Suite 3300, Chicago, Illinois 60603 | direct 312.201.3908 | direct fax 312.863.7408 | frederic.klein@goldbergkohn.com | www.goldbergkohn.com

---

This e-mail is subject to Goldberg Kohn's terms and conditions regarding e-mail, which are available on our web site or by clicking here.

---

IRS Circular 230 Disclosure: Unless we have specifically stated to the contrary in writing, any discussion of federal tax issues or submissions in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the United States federal tax laws or (2) promoting, marketing, or recommending to anyone any transaction or matter addressed herein.

---

This email message is intended for the sole use of the intended recipient(s) and may contain confidential or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy and delete all copies of the original message. To reply to our email administrator directly, send an email to postmaster@butlerrubin.com.

BUTLER RUBIN SALTARELLI & BOYD LLP
excellence in litigation

http://www.butlerrubin.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on January 24, 2011, she caused a true and correct copy of the **Settlement Class Plaintiffs' Opposition to Motions of Objectors Regarding Participation in Settlement Negotiations** to be served upon the parties of record via the Court's ECF/electronic mailing system.

/s/ Frederic R. Klein