# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | Case No. 07 CV 2898 |
| Plaintiffs, | Judge Robert W. Gettleman |
| v. | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | |
| Defendants. | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | |
| Counter-Claimants, | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | |
| Counter-Defendants. | |
| SAFECO INSURANCE COMPANY OF AMERICA, and OHIO CASUALTY INSURANCE COMPANY, individually and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | Case No. 09 CV 2026 |
| | Judge Robert W. Gettleman |
| Plaintiffs, | Magistrate Judge Sidney I. Schenkier |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | |
| Defendants. | |

## <u>SETTLEMENT AGREEMENT</u>

This Release and Settlement Agreement is made and entered into by and between AIG, the Settling Plaintiffs (on behalf of themselves and the Settlement Class Members), and (for the limited purpose of providing the Releases in Section VIII below) the NCCI and the NWCRP.[1]

WHEREAS, on April 1, 2009, Named Plaintiffs filed the Putative Class Action, which alleges that AIG fraudulently underreported workers compensation premium to various state insurance regulators and to the NCCI, as agent and administrator of the NWCRP;

WHEREAS on July 16, 2010, Named Plaintiffs filed a motion for certification of a class consisting of all participants in the NWCRP, excluding AIG;

WHEREAS on October 8, 2010, AIG filed an opposition to the motion for class certification, and on November 3, 2010, Named Plaintiffs filed a reply thereto;

WHEREAS the motion for class certification has not been decided;

WHEREAS on January 5, 2011, the Settling Plaintiffs filed a motion to intervene as settlement class representatives in the Putative Class Action and to stay ruling on the Named Plaintiffs' motion for class certification, and on January 6, 2011, AIG filed a response in support of that motion;

WHEREAS the Settling Parties intend, separately or jointly, to move the Court to certify the Settlement Class;

WHEREAS AIG has brought claims in the 07 Action against certain participating companies in the NWCRP arising out of such companies' service on the NWCRP Board of Governors and/or their alleged underreporting of workers compensation premium to various state insurance regulators and the NCCI;

WHEREAS AIG has brought claims in the 07 Action against the NCCI and the NWCRP for an accounting relating to the alleged underreporting of workers compensation premiums by certain participating companies in the NWCRP;

WHEREAS Liberty Mutual Insurance Company (and certain of its subsidiaries and affiliates) and The Hartford Financial Services Group, Inc. (and certain of its subsidiaries and affiliates) have brought counterclaims against AIG in the 07 Action;

WHEREAS the Settling Parties acknowledge that it will be costly and time-consuming to resolve the Litigations in Court;

WHEREAS the Settling Parties wish to resolve forever these Litigations and all other claims based upon, arising out of, or related to the subject matter of these Litigations without further litigation as to any party;

---

[1] All capitalized terms used in the Settlement Agreement shall (unless otherwise noted) have the meanings ascribed to them in Section I of this Settlement Agreement.

WHEREAS AIG has separately agreed to the Regulatory Settlement Agreement that resolves all insurance regulatory claims, controversies and disputes relating to or arising out of the facts and circumstances that were the subjects of the Multistate Regulatory Examination;

WHEREAS the Regulatory Settlement Agreement provides for payment by AIG of $100 million in fines and penalties and AIG's agreement to enter into a compliance plan describing agreed-upon specific steps and standards for evaluating AIG's ongoing compliance with workers compensation insurance rating and reporting requirements established by law; and

WHEREAS the Regulatory Settlement Agreement is contingent upon the final settlement of all claims between AIG and the Settlement Class Members in the Litigations, and will not become effective until the Final Settlement Date.

NOW, THEREFORE, IT IS HEREBY AGREED, by and among the Settling Plaintiffs (on behalf of themselves and classes of those similarly situated), AIG, the NWCRP, and the NCCI, by and through their duly authorized counsel, that, based upon the terms and conditions set forth in this Settlement Agreement and the Releases set forth herein, and subject to the approval of this Settlement Agreement by the Court, and to such approval becoming Final, (i) all claims and counterclaims in the Litigations between the Settlement Class Members, AIG, the NWCRP, and/or the NCCI hereby are settled and compromised; (ii) all claims and counterclaims in the Litigations between the Settlement Class Members, AIG, the NWCRP, and/or the NCCI will be dismissed with prejudice; (iii) the Released Claims will be released as to the Releasees; and (iv) the NWCRP Released Claims will be released as to the NWCRP Releasees.

## I. DEFINITIONS

A. As used in this Settlement Agreement, the following terms have the indicated meanings:

1. "07 Action" means the action captioned *American International Group, Inc. et al. v. ACE INA Holdings, Inc., et al.,* No. 07-CV-2898 (N.D. Ill.).

2. "Administrative Expenses" means all Court-approved expenses associated with the implementation and administration of the settlement contemplated by this Settlement Agreement, including, but not limited to, the expenses associated with printing and mailing the Notice and publishing the Summary Notice, establishing, staffing and maintaining any toll-free telephone number, website or e-mail address, determining the amount (pursuant to the terms of the Plan of Allocation) of the Class Fund to be allocated to each Settlement Class Member, and distributing the Class Fund to or on behalf of Settlement Class Members; *provided however*, that Administrative Expenses shall not include any amounts attributable to attorneys' fees and expenses awarded by the Court; *provided further* that Administrative Expenses shall be paid exclusively from the Class Fund.

3. "Administrator" means the person or entity to be chosen pursuant to Section V below, which person or entity shall be appointed by the Court in the Preliminary Approval Order to act in accordance with the terms of this Settlement Agreement and shall at all times work diligently, efficiently and in the best interests of the Settling Parties and Settlement Class Members; *provided* that the costs incurred by such Administrator shall be paid exclusively from the Class Fund; provided further that the Settling Parties shall request, pursuant to Rule 53(c) of the Federal Rules of Civil Procedure, that the Court appoint such Administrator to supervise and administer the notice procedure as well as the processing of claims.

4. "AIG" or "Defendants" means any or all of American International Group, Inc.; AIG Casualty Company f/k/a Birmingham Fire Insurance Company of Pennsylvania n/k/a Chartis Property Casualty Company; AIU Insurance Company; American Home Assurance Company; American International Pacific Insurance Company f/k/a American Fidelity Company n/k/a 21st Century Pacific Insurance Company; American International South Insurance Company f/k/a American Global Insurance Company n/k/a Chartis Casualty Company; American International Specialty Lines Insurance Company f/k/a Alaska Insurance Company n/k/a Chartis Specialty Insurance Company; Commerce and Industry Insurance Company, Granite State Insurance Company; Illinois National Insurance Co., The Insurance Company of the State of Pennsylvania; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Indemnity Company n/k/a 21st Century Security Insurance Company; and New Hampshire Insurance Company.

5. "AIG Releasee" means each and every one of, and "AIG Releasees" mean all of, the following: AIG, any and all of its current and former parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units and subsidiaries, and each such entity's respective past and present directors, officers, employees, members, partners, principals, agents, and attorneys.

6. "Approval Date" means the date on which the Judgment and the Order Approving Settlement are entered by the Court.

7. "Bar Order" means that portion of the proposed Order Approving Settlement that is set out in paragraph 12 of such Order, a copy of which is attached as **Exhibit A** to this Settlement Agreement.

8. "Business Day" means a day other than a Saturday, Sunday or a "legal holiday," as that term is defined in Section XIII.J of this Settlement Agreement.

9. "Cash Settlement Account" means an interest-bearing account into which the Class Fund shall be deposited, as described in Section III.A.4 below.

10. "Claim" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, bonds, bills, specialties, variances, covenants, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses, whether in law, in admiralty or in equity, whether in contract or in tort, whether based on federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise, whether foreseen or unforeseen, whether matured or un-matured, whether accrued or not accrued, whether known or unknown, and whether existing now or arising in the future.

11. "Class Counsel" means the law firm of Goldberg Kohn Ltd.

12. "Class Fund" means the "WCF Payment" and the "Supplemental Payment," plus any accrued interest earned thereon from the time of transfer by AIG.

13. "Court" means the Court in which the Litigations are pending.

14. "Defendants' Counsel" means either or both of the law firms of Quinn Emanuel Urquhart & Sullivan, LLP and Novack and Macey LLP.

15. "Escrow Account" means the interest-bearing account, established and administered by the Pool Administrator under the direction of the Board of Governors of the NWCRP, pursuant to the Escrow Agreement, into which the WCF Payment and the Supplemental Payment shall be deposited, as described in Section III.A.2 below.

16. "Escrow Agent" means the escrow agent for the Escrow Agreement.

17. "Escrow Agreement" means the escrow agreement pursuant to which the Escrow Account is to be established and administered, which agreement shall be in a form substantially and materially consistent with the document attached as **Exhibit B** to this Settlement Agreement.

18. "Execution Date" means the date on which this Settlement Agreement has been executed by all Settling Parties.

19. "Fairness Hearing" means the hearing at or after which the Court will make a final decision pursuant to Fed. R. Civ. P. 23 as to whether to approve this Settlement Agreement.

20. "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final and no longer subject to appeal:

    (a) if no appeal (including any petition for rehearing or reargument, petition for rehearing en banc, and petition for certiorari, or any

request for other form of review) is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired, or

(b)    if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any request for other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the order or judgment.

21.    "Final Settlement Date" means the date on which the Judgment and the Order Approving Settlement become Final.

22.    "Judgment" means the judgment entered by the Court pursuant to the Order Approving Settlement, as contemplated in Section XI of this Settlement Agreement. A copy of the Settling Parties' proposed Judgment is attached as **Exhibit C** to this Settlement Agreement.

23.    "Liberty Companies" means Liberty Mutual Insurance Company and any of its current or former parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units and subsidiaries, including bsut not limited to the Named Plaintiffs.

24.    "Litigations" means the Putative Class Action and the 07 Action.

25.    "Multistate Regulatory Examination" means the Multistate Targeted Workers Compensation Market Conduct Examination noticed by letter dated January 28, 2008, respecting American International Group, Inc. and certain of its insurance company subsidiaries, which involved an examination by NAIC, through a group of "Lead States" and their appointed examiner, of, among other things, AIG's workers compensation premium reporting issues (that were first the subject of AIG's 2006 regulatory settlement with the New York Authorities).

26.    "NAIC" means the National Association of Insurance Commissioners.

27.    "Named Plaintiffs" means Safeco Insurance Company of America and Ohio Casualty Insurance Company.

28.    "NCCI" means the National Council on Compensation Insurance, Inc.

29.    "NCCI Releasee" means each and every one of, and "NCCI Releasees" means all of, the following: the NCCI, any and all of its current and former respective parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units and subsidiaries,

and each such entity's respective past and present directors, officers, employees, members, partners, principals, agents, and attorneys.

30. "New York Authorities" means the Office of the Attorney General of the State of New York and the New York State Department of Insurance.

31. "NMWCARP" means the New Mexico Workers Compensation Assigned Risk Pool.

32. "Notice" means the notice sent to Settlement Class Members. A copy of the Settling Parties' proposed Notice is attached as **Exhibit D** to this Settlement Agreement.

33. "NWCRP" means the National Workers Compensation Reinsurance Pool and any successors and assigns.

34. "NWCRP Released Claims" means every Claim, including Unknown Claims, by reason of any matter whatsoever arising out of or related to any decision, act, or failure to act, attributable to the NWCRP Board of Governors or its members in their capacity as members of the NWCRP Board of Governors relating to any actual or alleged underreporting of workers compensation premium to the full extent that such underreporting could have affected the apportionment of NWCRP residual market reinsurance obligations, including but not limited to such claims and allegations asserted by AIG against members of the NWCRP Board of Governors in the Litigations.

35. "NWCRP Releasee" means each and every one of, and "NWCRP Releasees" mean all of, the following: the NWCRP, any and all of its current and former respective parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units and subsidiaries, and each such entity's respective past and present directors, officers, employees, members, partners, principals, agents, and attorneys.

36. "Order Approving Settlement" means the Court's order approving the settlement terms set out in this Settlement Agreement, as well as the Plan of Allocation. A copy of the Settling Parties' proposed Order Approving Settlement is attached as **Exhibit A** to this Settlement Agreement.

37. "Plan of Allocation" means the terms and procedures for allocating the Class Fund among, and distributing the Class Fund to, Settlement Class Members, as prepared by the Pool Administrator.

38. "Pool Administrator" means NCCI in its capacity as administrator of the NWCRP and the NMWCARP.

39. "Preliminary Approval Date" means the date on which the Preliminary Approval Order is entered.

40. "Preliminary Approval Hearing" means the hearing at or after which the Court will preliminarily approve this Settlement Agreement.

41. "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving this Settlement Agreement as contemplated in Section X of this Settlement Agreement. A copy of the Settling Parties' proposed Preliminary Approval Order is attached as **Exhibit E** to this Settlement Agreement.

42. "Putative Class Action" means the action entitled *Safeco Insurance Company of America, et al. v. American International Group, Inc., et al.,* No. 09-CV-2026 (N.D. Ill.).

43. "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

44. "Regulatory Settlement Agreement" means the agreement dated as of December 17, 2010, a copy of which is attached as **Exhibit F** to this Settlement Agreement, that resolves all insurance regulatory claims, controversies and disputes arising out of or relating to the facts and circumstances that were the subjects of the Multistate Regulatory Examination.

45. "Releases" means the releases and waivers set forth in Section VIII of this Settlement Agreement.

46. "Released Claims" means each and every Claim, including Unknown Claims, by reason of any matter whatsoever arising out of underreporting of workers compensation premium in any of the 50 States or the District of Columbia for all years from the beginning of time through the Execution Date, including but not limited to the claims and allegations in the Litigations and any costs and expenses incurred in the Litigations, *provided that* "Released Claims" shall not include an entity's continuing obligation to pay its share (as adjusted pursuant to the Plan of Allocation) of outstanding residual market claims.

47. "Releasee" means each and every one of, and "Releasees" means all of, the following: AIG Releasees, NCCI Releasees, NWCRP Releasees, and Settlement Class Member Releasees.

48. "Settlement Agreement" means this agreement and the accompanying Exhibits, including any subsequent amendments hereto and any Exhibits to such amendments.

49. "Settlement Class" or "Settlement Class Members" means all insurance companies, and their parents, predecessors, successors, subsidiaries and affiliates (each such insurance company, together with its parents, predecessors, successors, subsidiaries and affiliates, is referred to herein as

an "Insurance Company"), other than AIG, that participated in the NWCRP or the NMWCARP, at any time during the period from 1970 through the Execution Date, whether or not those Insurance Companies also participated in any other workers compensation residual market mechanism operating in any of the 50 States and the District of Columbia, *provided that* "Settlement Class" or "Settlement Class Members" does not include such entities that submit valid and timely requests for exclusion from the Settlement Class in accordance with the procedures set out in Section VI of this Settlement Agreement. For the avoidance of doubt, "Settlement Class" or "Settlement Class Members" does not include any Insurance Company that has not participated in either the NWCRP or the NMWCARP at any time between 1970 and the Execution Date.

50. "Settlement Class Releasee" means each and every one of, and "Settlement Class Releasees" means all of, the following: the Settlement Class Members, any and all of their current and former respective parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units and subsidiaries, and each such entity's respective past and present directors, officers, employees, members, partners, principals, agents, and attorneys.

51. "Settling Insurance Regulators" means each of the insurance regulatory departments, divisions, or offices of each of the States and the District of Columbia that adopt, agree to, and approve the Regulatory Settlement Agreement.

52. "Settling Parties" means any or all of (a) AIG; (b) the Settling Plaintiffs; and (c) the NCCI and the NWCRP (for the limited purpose of providing the Releases in Section VIII of this Settlement Agreement).

53. "Settling Plaintiffs" means ACE INA Holdings, Inc., for itself and as successor in interest to CIGNA's property and casualty divisions, Auto-Owners Insurance Co., Companion Property & Casualty Insurance Co., FirstComp Insurance Co., The Hartford Financial Services Group, Inc., Technology Insurance Co., and The Travelers Indemnity Company.

54. "Stipulation and Order of Confidentiality" means the Court-approved stipulation and order described in Section VII below. A copy of the Settling Parties' proposed Stipulation and Order of Confidentiality is attached as **Exhibit G** to this Settlement Agreement.

55. "Summary Notice" means the published notice of the proposed settlement. A copy of the Settling Parties' proposed Summary Notice is attached as **Exhibit H** to this Settlement Agreement.

56. "Supplemental Payment" means the difference between $450 million and the WCF Payment.

57.   "Tax Expenses" means (i) all taxes on the income of the Class Fund and (ii) expenses and costs incurred in connection with the taxation of the Class Fund (including, without limitation, expenses of tax attorneys and accountants).

58.   "Unknown Claim" means any Claim that any Settling Party or Settlement Class Member does not know or suspect to exist in its favor at any time on or before the date that the Settling Party's or Settlement Class Member's release becomes effective, and that, if known by it, might have affected its settlement with any of the Releasees or, if a Settlement Class Member, might have affected its decision not to request exclusion from the Settlement Class or not to object to this Settlement Agreement.

59.   "WCF Payment" means payment into the Escrow Account of the full amount remaining in the Workers Compensation Fund on the tenth (10th) Business Day following the Preliminary Approval Date, including all interest and investment income of the Workers Compensation Fund.

60.   "Workers Compensation Fund" means the fund established pursuant to the January 18, 2006 settlement agreement between the Attorney General of the State of New York, the New York State Department of Insurance, and AIG.

## II.   BACKGROUND & PROCEDURAL HISTORY

### A.   The Workers Compensation Fund

1.   In 2005, AIG became subject to an investigation conducted by the New York Authorities. They alleged that AIG had engaged in certain historical practices that resulted in AIG underreporting its workers compensation premium to the NCCI.

2.   To determine the effect of AIG's alleged underreporting on third parties, a professional team of regulatory consultants, under the supervision of the New York Authorities, was retained to review AIG's data and to work with AIG to prepare a model to estimate the effect.

3.   On the basis of that analysis, in January 2006, AIG and the New York Authorities reached a settlement with respect to AIG's alleged underreporting.

4.   As part of that settlement, AIG agreed to establish the Workers Compensation Fund with $301,216,234, which was the amount that the consultants, with the New York Authorities' approval, had concluded would compensate third parties affected by AIG's alleged underreporting, including the participating companies in the NWCRP.

5.     The Workers Compensation Fund was structured to allow for a period of time in which only governmental entities could receive distributions from the Fund. That period runs through February 1, 2011. As originally structured, it was expected that the States would receive distributions from the Workers Compensation Fund on behalf of both public and private residual market mechanisms, such as the NWCRP.

6.     Following the period in which only governmental entities can receive distributions from the Workers Compensation Fund, to the extent that there are other residual market mechanisms that were not compensated through claims asserted on their behalf by governmental entities, they are permitted to receive distributions from the Workers Compensation Fund in settlement of any claims they may have.

**B.    The 07 Action**

1.     In May 2007, the NCCI, solely as attorney-in-fact for the participating companies of the NWCRP, filed the original complaint in this matter against AIG, alleging that AIG underreported premiums received on workers compensation policies to insurance regulators in numerous States.

2.     In March 2008, AIG filed counterclaims for an accounting against the NCCI and the NWCRP, as well as a third-party complaint against twenty-four insurance companies alleging claims arising out of, among other things, their alleged underreporting and/or their participation on the NWCRP's Board of Governors.

3.     In April 2009, Liberty Mutual Insurance Company (and certain of its subsidiaries and affiliates) filed third-party counterclaims against AIG arising out of AIG's alleged underreporting of workers compensation premium, which were amended in October 2009.

4.     In August 2009, the Court dismissed the complaint filed by NCCI solely as attorney-in-fact for lack of standing, and AIG was realigned as the plaintiff in the 07 Action.

5.     In September 2009, AIG filed a first amended complaint, alleging that the NWCRP, those NWCRP participating companies that allegedly underreported their own workers compensation premium, and members of the NWCRP's Board of Governors participated in a scheme to underreport workers compensation premium and to ignore premium underreporting by companies other than AIG.

6.     In August 2010, The Hartford Financial Services Group, Inc. (and certain of its subsidiaries and affiliates) filed counterclaims against AIG arising out of AIG's alleged underreporting of workers compensation premium.

C.  **The Putative Class Action**

1.  In April 2009, the Named Plaintiffs filed the Putative Class Action complaint against AIG on behalf of all members of the NWCRP, excluding AIG.

2.  In August 2009, Named Plaintiffs filed their first amended class action complaint, which asserts claims under the Racketeer Influenced and Corrupt Organizations Act and various common law claims arising out of AIG's alleged underreporting of workers compensation premium.

3.  In July 2010, Named Plaintiffs filed their motion for class certification. That motion is *sub judice*.

D.  **The Regulatory Settlement**

1.  NAIC, through a group of "Lead States" and their appointed examiner, has conducted the Multistate Regulatory Examination.

2.  AIG and the NAIC Lead States have entered into the Regulatory Settlement Agreement that sets forth the material terms of a settlement of all of AIG's regulatory liabilities arising out of workers compensation premium underreporting.

3.  The primary terms of the Regulatory Settlement Agreement include: (a) a one-time payment by AIG of a $100 million fine to be apportioned among the participating States; (b) payment of additional premium taxes or premium-tax assessments due from AIG to any participating States; (c) the entry of a compliance plan describing steps and standards for ensuring and evaluating AIG's ongoing compliance with workers compensation insurance rating and reporting requirements; and (d) a contingent fine of up to $150 million that would only become due in the event that AIG materially failed to satisfy the terms of the compliance plan.

4.  The Regulatory Settlement Agreement is contingent upon the achievement of a resolution of all claims related to AIG's workers compensation premium reporting, including specifically:

    (a)  AIG and the Settling Plaintiffs entering into this Settlement Agreement;

    (b)  the Court entering the Order Approving Settlement and the Judgment becoming Final; and

    (c)  a final settlement of claims between AIG and the insurance guaranty funds represented by Joseph C. Tanski of all claims and liabilities arising out of or related to workers compensation premium underreporting.

**E.**   **Settlement Discussions**

1.   This Settlement Agreement is the result of extensive negotiations, including the broad exchange of confidential documents and information, between the Settling Parties, all of which was monitored and facilitated by the NAIC examiner appointed by the Lead States supervising the Multistate Regulatory Examination. In particular, the NAIC examiner has carefully considered and supported the settlement structure and the monetary terms of the settlement set forth herein.

**F.**   **Settlement Considerations**

1.   AIG considers it desirable for the Litigations to be settled and dismissed because the settlement terms set out in this Settlement Agreement will, among other things: (i) bring to an end the substantial expense, burdens and uncertainties associated with continued litigation of the claims made in the Litigations; (ii) put to rest those claims and the underlying matters; and (iii) confer substantial benefits upon Settlement Class Members and AIG including, without limitation, the avoidance of further expense and disruption due to the prosecution, pendency, and defense of the Litigations.

2.   The Settling Plaintiffs consider it desirable for the Litigations to be settled and dismissed because the settlement terms set out in this Settlement Agreement will, among other things: (i) bring to an end the substantial expense, burdens and uncertainties associated with continued litigation of the claims made in the Litigations, including but not limited to the financial burden placed upon the NWCRP and the participating companies in the NWCRP in light of the indemnification provisions of the "Articles of Agreement"; (ii) put to rest the claims made in the Litigations and the underlying matters; and (iii) confer substantial benefits upon Settlement Class Members including, without limitation, the avoidance of further expense and disruption due to the prosecution, pendency, and defense of the Litigations.

3.   AIG and the Settling Plaintiffs believe that if the Litigations are not settled in accordance with the terms of this Settlement Agreement, the Litigations will likely proceed through an interlocutory appeal of the Court's decision on the motion for class certification in the Putative Class Action; through substantial and expensive fact and expert discovery; through motions for summary judgment; through the time-consuming and expensive preparation of a pretrial order (including motions in limine and "Daubert" or Rule 702 motions); through a jury trial likely to last at least two months; through post-trial motions; and through appeal after final judgment is entered by the Court. In addition to the fact that AIG and the Settling Plaintiffs believe that the Settlement Agreement is a fair and reasonable compromise of disputed claims, the time, effort, and cost of

continuing on with the Litigations (as noted above) are other settlement considerations which have brought AIG and the Settling Plaintiffs to agree to the terms set forth in this Settlement Agreement.

4.  Neither this Settlement Agreement, the offer of this Settlement Agreement nor compliance with this Settlement Agreement shall constitute or be construed to be an admission by the Settling Parties, or any of them individually, of any wrongdoing or liability.

5.  Except as provided in Section X, this Settlement Agreement shall not be admissible in any judicial, regulatory, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement.

## III.  TERMS AND CONDITIONS OF THE SETTLEMENT

### A.  Payments into the Escrow Account & Transfer To The Cash Settlement Account

1.  AIG will take all necessary and appropriate steps to obtain approval by the New York Authorities for the release and use of the funds in the Workers Compensation Fund for the WCF Payment.

2.  On the tenth (10th) Business Day following the Preliminary Approval Date, AIG shall deposit or cause to be deposited into the Escrow Account:

    (a)  the WCF Payment and

    (b)  the Supplemental Payment.

3.  In the event that any potential Settlement Class Members submit valid and timely requests for exclusion from the Settlement Class in accordance with the procedures set out in Section VI of this Settlement Agreement and (if applicable) no party elects to terminate the Settlement Agreement pursuant to Sections XII.B or XII.C of this Settlement Agreement, the Supplemental Payment shall be reduced by the amount allocated to those excluded parties by the Plan of Allocation.

4.  Within twenty (20) Business Days following the Final Settlement Date, the Escrow Agent shall, consistent with the terms of the Escrow Agreement, be instructed to cause the Class Fund to be deposited into the Cash Settlement Account.

5.  The funds in the Cash Settlement Account shall not be distributed except in accordance with this Settlement Agreement, the Plan of Allocation (as approved by the Court) or by order of the Court.

6.    All Tax Expenses (if any) due respecting the Class Fund shall be paid out of the monies held in the Cash Settlement Account.

**B.    Distribution of the Class Fund**

1.    The Class Fund shall be allocated among the Settlement Class Members according to a Plan of Allocation prepared by the Pool Administrator. Prior to or promptly after the Execution Date, the Board of Governors of the NWCRP shall direct and authorize the Pool Administrator to prepare a Plan of Allocation. The Pool Administrator shall initially prepare a draft Plan of Allocation to be submitted to AIG and the Settling Plaintiffs. Upon receipt of the draft Plan of Allocation, AIG and the Settling Plaintiffs will have seven days to submit comments to the Pool Administrator. Within three Business Days after the conclusion of the seven-day comment period, the Pool Administrator will publish the final Plan of Allocation, which will not be subject to challenge by AIG or the Settling Plaintiffs. Notwithstanding the foregoing, the portion of the Class Fund attributable to the NMWCARP shall be allocated as determined by the NMWCARP. AIG's ongoing cash obligations, outstanding reserve obligations, and obligations for assessments under Article X of the Articles of Agreement with respect to its NWCRP and NMWCARP participation shall be adjusted as of January 1, 2009 based upon the workers compensation premium reflected in the amended Page-14s to be filed as contemplated by the Regulatory Settlement Agreement.

2.    Except as provided in the Escrow Agreement, no portion of the Class Fund shall be released from the Escrow Account or distributed to any Settlement Class Member until the Final Settlement Date.

3.    No person or entity shall have any claim against AIG, Settling Plaintiffs, Class Counsel, Defendants' Counsel, the Settling Insurance Regulators, the Administrator, the Pool Administrator, the Escrow Agent, any Releasee, or any agent of any of the foregoing with respect to or arising out of any distribution or lack thereof that shall have been made or omitted in accordance with the terms of the Plan of Allocation, NMWCARP's allocation, this Settlement Agreement, or an order of the Court.

4.    Except as described in Section III.B.1, Releasees and/or their respective counsel shall have no role in, responsibility for, or liability with respect to the Plan of Allocation, the form, substance, method or manner of allocation, administration, or distribution of the Class Fund, any tax liability that a Settlement Class Member may incur as a result of this Settlement Agreement, or as a result of any action taken pursuant to this Settlement Agreement, the administration or distribution of the Class Fund, or the maintenance of the Cash Settlement Account as a Qualified Settlement Fund; *provided however*, that the Settling Plaintiffs will cooperate with the Administrator and the Pool Administrator as required to ensure that  Administrator and the Pool Administrator have all

information necessary to allow the Plan of Allocation to be prepared and the distribution required by such Plan of Allocation to be implemented. In consideration of the distribution of the Class Fund, each recipient shall agree not to make use of the premium reallocation underlying this Settlement Agreement in any way with regard to its premium tax submissions to the States.

5.      Unless otherwise ordered by the Court, Settlement Class Members shall look solely to the Class Fund for settlement and satisfaction of all Released Claims, and the Class Fund shall be the sole source of monetary payment for any Administrative Expenses and any attorneys' fees and expenses that the Court awards for work arising out or of related to the Litigations. Except as expressly provided by this Settlement Agreement, the Plan of Allocation or order of the Court, no Settlement Class Member shall have any interest in the Class Fund or any portion of it.

6.      If there is a balance remaining in the Class Fund six (6) months following the date of the final distribution pursuant to the Plan of Allocation (whether by reason of tax refunds, uncashed checks or otherwise), to the extent practicable, such balance shall be reallocated by the Pool Administrator to Settlement Class Members in an equitable and economic manner. If the remaining balance is such that a direct reallocation to Settlement Class Members is neither feasible nor practicable (*e.g.*, the individual check amounts would be too small), then such remaining balance shall be donated to charitable organizations and/or state agencies that provide appropriate risk management information or training to Settlement Class Members, as agreed to by Class Counsel, the Defendants' Counsel, as approved by the Court, but in no event shall any such monies revert to AIG.

7.      Settling Plaintiffs shall seek the Court's approval of the Plan of Allocation and provide notice to the Settlement Class Members of the Plan of Allocation. AIG shall not object to such approval.

**C.    Maintenance of Accounts As Qualified Settlement Accounts**

1.      All necessary steps to enable the Escrow Account and Cash Settlement Account to be Qualified Settlement Funds shall be taken, including the timely filing by Locke Lord Bissell & Liddell LLP ("Locke Lord") and/or its agent of all elections and statements required pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations or published rulings now or hereafter enacted or promulgated, for all taxable years in which the Escrow Account and the Cash Settlement Account are in existence, beginning with the date of its establishment. Locke Lord shall be the "administrator" of the Qualified Settlement Fund for purposes of the taxation of the Escrow Account and the Cash Settlement Account under Treas. Reg. §§ 1.468B-0 through 1.468B-5.

Locke Lord and/or its agent, on behalf of the Escrow Account and the Cash Settlement Account, shall file or cause to be filed on a timely basis all required federal, state and local tax returns and shall pay taxes in a manner consistent with treatment of the Escrow Account as Qualified Settlement Funds, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5. The Settling Parties agree that the Escrow Account and the Cash Settlement Account shall be treated as Qualified Settlement Funds from the earliest date possible, and they agree and elect to treat the Escrow Account and the Cash Settlement Account as a Qualified Settlement Fund from the earliest date possible. AIG agrees to provide promptly the statement described in Treasury Regulation § 1.468B-3(e). Except as provided in this Settlement Agreement, in no event shall AIG have any responsibility whatsoever for filing other required statements, or tax returns, or for paying the costs associated therewith, the payment of any taxes due, or the expenses of administration of the Escrow Account or the Cash Settlement Account.

Upon request by Defendants' Counsel, Locke Lord shall promptly provide to Defendants' Counsel all information requested in connection with any tax returns a Releasee must file or with any other report or filing a Releasee must make with respect to the Escrow Account.

## IV.  NOTICE TO THE CLASS

### A.  Mailing of the Notice

1. Subject to the requirements of the Preliminary Approval Order and no later than forty-five (45) days before the Fairness Hearing, the Settling Parties shall cause the Administrator to mail, by first-class mail, postage prepaid, a copy of the Notice to each entity in the Settlement Class that can be identified by reasonable effort.

2. If the mailings described in the preceding paragraph result in any Notice being returned to the Administrator with an updated address, the Notice shall be re-mailed to the addressee within two (2) Business Days of receipt of the updated address; *provided however*, that if such updated address is received by the Administrator less than five (5) Business Days prior to, or after, the date of the Fairness Hearing, no re-mailing shall be required.

3. No later than thirty-five (35) days before the Fairness Hearing, the Settling Parties shall cause the Administrator to publish the Notice and Summary Notice on its website.

4. The Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court and any other applicable law,

and shall otherwise be in the manner and form agreed upon by the Settling Parties and approved by the Court.

5.      A copy of the Notice, substantially in the form found in **Exhibit D** to this Settlement Agreement, shall be submitted to the Court for its approval at the time the Settling Parties submit this Settlement Agreement to the Court pursuant to Section X.A below.

**B.      Summary Notice**

1.      No later than thirty-five (35) days before the Fairness Hearing, the Settling Parties shall, through the Administrator, cause the Summary Notice to be published once in all editions of *Business Insurance* and *RM Magazine*.

2.      A copy of the Summary Notice, substantially in the form found in **Exhibit H** to this Settlement Agreement, shall be submitted to the Court for its approval at the time the Settling Parties submit this Settlement Agreement to the Court pursuant to Section X.A below.

## V.      RETENTION OF ADMINISTRATOR

A.      Subject to approval by the Court in the Preliminary Approval Order, the Settling Plaintiffs will select the Administrator.

B.      The Administrator, with the assistance of the Pool Administrator, as appropriate, may assist with various tasks, including, without limitation: (i) mailing or arranging for the mailing (and remailing, if required) of the Notice; (ii) arranging for publication of the Summary Notice; (iii) publishing the Notice and Summary Notice on the Administrator's website; (iv) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or its designee(s); (v) receiving and maintaining on behalf of the Court any requests for exclusion received from potential Settlement Class Members; (vi) establishing a call center with a toll-free number, website and e-mail address to answer inquiries from Settlement Class Members, including a system for e-mail inquiries and replies; (vii) providing additional copies of the Notice, upon request, to Settlement Class Members; (viii) calculating and arranging for allocation of the Class Fund to Settlement Class Members consistent with the Plan of Allocation; and (ix) otherwise assisting Class Counsel and Defendants' Counsel or their designees with the administration and implementation of this Settlement Agreement.

## VI.      REQUESTS FOR EXCLUSION

A.      Any potential Settlement Class Member that wishes to be excluded from the Settlement Class must mail by first-class mail or deliver a written request for exclusion to the Clerk of the Court, care of the address provided in the Notice, postmarked or delivered no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct. A list of the entities that have

requested exclusion shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

**B.**     A potential Settlement Class Member's request for exclusion shall include the following information: (i) its name, (ii) its address, (iii) its telephone number, (iv) the residual market mechanism(s) in which it participated, and (v) the approximate dates of its participation in the identified mechanism(s).

**C.**     Any potential Settlement Class Member that does not file a timely written request for exclusion as provided in Section VI.A shall be bound by the Releases and this Settlement Agreement, and by all proceedings, orders and judgments in the Litigations.

## VII.    OBJECTIONS TO SETTLEMENT

**A.**     Any Settlement Class Member that wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to the Plan of Allocation, or any term(s) of this Settlement Agreement must both serve on Class Counsel and Defendants' Counsel (as identified in the Notice) and file with the Court a statement of its objection(s); *provided* that any such objection statement must be received by Class Counsel, by Defendants' Counsel, and by the Court no later than fifteen (15) days before the Fairness Hearing or as the Court may otherwise direct.

**B.**     The Settlement Class Member's statement of objection shall provide evidence of the objector's membership in the Settlement Class and shall state the specific reason(s), if any, for each such objection made by the Settlement Class Member, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of such objection.

**C.**     Any Settlement Class Member may file an objection on its own, or through an attorney hired at its own expense. If a Settlement Class Member hires an attorney to represent it in connection with filing an objection, the attorney must serve on Class Counsel and the Defendants' Counsel and file with the Court a notice of appearance; *provided that* any such notice of appearance must be received by Class Counsel, by Defendants' Counsel, and by the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.

**D.**     Settlement Class Members and any attorneys hired at their expense may obtain access to the discovery materials in these Litigations for the sole purpose of assessing this Settlement Agreement, but must first agree in writing to be bound by the Stipulation and Order of Confidentiality. A copy of the Stipulation and Order of Confidentiality proposed by the Settling Parties (attached as **Exhibit G** to this Settlement Agreement) will be submitted to the Court for its approval at the time the Settling Parties submit this Settlement Agreement to the Court pursuant to Section X.A below.

1.    The discovery materials in these Litigations shall be made available to a Settlement Class Member (or its attorney (if any)) for inspection up to the date of the Fairness Hearing by appointment during normal business hours at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, New York, New York 10010.

2.    Defendants' Counsel shall inform Class Counsel promptly of any request by a Settlement Class Member or its attorney for access to the discovery materials, and shall advise Class Counsel of the dates on which any such Settlement Class Member (as well as its attorney (if any)) has been granted access to the discovery materials. Defendants' Counsel shall promptly provide Class Counsel with a copy of the executed Stipulation and Order of Confidentiality.

E.    Any Settlement Class Member that files and serves a written objection pursuant to this Section—and only such Settlement Class Members—may appear at the Fairness Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to (i) the fairness, reasonableness or adequacy of this Settlement Agreement, (ii) the Plan of Allocation, or (iii) any term(s) of this Settlement Agreement. Settlement Class Members or their attorneys intending to make an appearance at the Fairness Hearing must serve on Class Counsel and Defendants' Counsel (as identified in the Notice) and file with the Court a notice of intention to appear; *provided that* any such notice of intention to appear must be received by Class Counsel, by Defendants' Counsel, and by the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.

F.    Any Settlement Class Member that fails to comply with any of the provisions of this Section shall waive and forfeit any and all rights it may otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, and shall be bound by all the terms of the Releases and this Settlement Agreement and by all proceedings, orders and judgments in the Litigations.

## VIII. RELEASES AND WAIVER, ORDER OF DISMISSAL

A.    **Releases and Waivers**

1.    Pursuant to the Order Approving Settlement and the Judgment, without further action by anyone, and subject to Section VIII.A.8 and Section VIII.A.10 below, on and after the Final Settlement Date, the NWCRP, the NCCI, and any and all Settlement Class Members (including Settlement Class Members that are parties to any other litigation, arbitration or other proceeding pending on the Final Settlement Date that is based upon a Released Claim and is brought against any or all of the AIG Releasees) on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as

defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through the NWCRP, the NCCI, or a Settlement Class Member and any person or entity representing any or all of the NWCRP, the NCCI, or Settlement Class Members, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Claims against each and every one of the Settlement Class Releasees, Class Counsel, the AIG Releasees, the NWCRP Releases, and Defendants' Counsel, including such Released Claims as already have been, could have been or could be asserted in any pending litigation, arbitration, or other proceeding, whether formal or informal, except that in no event shall this paragraph apply to any company that submits a valid and timely request for exclusion from the Settlement Class in accordance with the procedures set out in Section VI.A. of this Settlement Agreement.

2.   Pursuant to the Order Approving Settlement and the Judgment, without further action by anyone, and subject to Section VIII.A.8 below, on and after the Final Settlement Date, AIG on behalf of itself, its heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through AIG and any person or entity representing AIG, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Claims against each and every one of the Settlement Class Member Releases, the NWCRP Releasees, NCCI Releasees, and Class Counsel, including such Released Claims as already have been, could have been or could be asserted in any pending litigation, arbitration, or other proceeding, whether formal or informal.

3.   Pursuant to the Order Approving Settlement and the Judgment, without further action by anyone, and subject to Section VIII.A.8 below, on and after the Final Settlement Date, AIG and any and all Settlement Class Members on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through AIG or a Settlement Class Member and any person or entity representing AIG or any or all Settlement Class Members, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all NWCRP Released Claims against the NWCRP Releasees and each and every Settlement Class Releasee that has served or is serving on the NWCRP Board of Governors at any time during the

period from January 1, 2005 through the Execution Date, except that in no event shall any NWCRP Released Claim be released pursuant to this paragraph against any company that submits a valid and timely request for exclusion from the Settlement Class in accordance with the procedures set out in Section VI.A of this Settlement Agreement.

4.  Subject to Section VIII.A.8 below, with respect to any and all Released Claims, the NWCRP, the NCCI, AIG and any and all Settlement Class Members (including Settlement Class Members that are parties to any other litigation, arbitrations or other proceedings pending on the Final Settlement Date that is based upon a Released Claim and is brought against any or all of the AIG Releasees) on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through the NWCRP, the NCCI, AIG, or a Settlement Class Member and any person or entity representing any or all of the NWCRP, the NCCI, AIG, or Settlement Class Members shall have and be deemed to have waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code or any federal, state, or foreign law, rule, regulation or common law doctrine that is similar, comparable, equivalent, or identical to, or which has the effect of, Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Notwithstanding the provisions of Section 1542 and any similar provisions, rights and benefits conferred by any law, rule, regulation or common law doctrine of California or in any federal, state or foreign jurisdiction, the NWCRP, the NCCI, AIG, and Settlement Class Members understand and agree that, subject to Section VIII.A.8 below, the Releases are intended to include all Released Claims that the NWCRP, the NCCI, AIG, and any or all Settlement Class Members have or may have, including Released Claims that are Unknown Claims.

5.  Subject to Section VIII.A.8 below, with respect to any and all NWCRP Released Claims, AIG and any and all of the Settlement Class Members, or any agents or experts of the foregoing, on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through any of the Settling Parties or any agents or experts of the foregoing, and any person or entity representing any or all Settling Parties or any agents or experts of the foregoing shall have and be deemed to have waived and relinquished, to the fullest extent permitted by

law, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code or any federal, state, or foreign law, rule, regulation or common law doctrine that is similar, comparable, equivalent, or identical to or which has the effect of, Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Notwithstanding the provisions of Section 1542 and any similar provisions, rights and benefits conferred by any law, rule, regulation or common law doctrine of California or in any federal, state or foreign jurisdiction, AIG and the Settlement Class Members, understand and agree that, subject to Section VIII.A.8 below, the Releases are intended to include all NWCRP Released Claims that AIG and any or all Settlement Class Members have or may have, including NWCRP Released Claims that are Unknown Claims.

6. If any potential Settlement Class Member submits a valid and timely request for exclusion from the Settlement Class in accordance with the procedures set out in Section VI.A of this Settlement Agreement and that party litigates or continues to litigate against AIG with respect to any of the claims that are part of the Litigations, then

   (a) AIG will withdraw any claims for a NWCRP-wide accounting against that party;

   (b) AIG will withdraw the conspiracy allegations stated in Count Two (Civil Racketeering Against Underreporting Pool Board Members in Violation of 18 U.S.C. § 1962(d)) and Count Three (Civil Conspiracy Against Underreporting Pool Board Members) of its Corrected First Amended Complaint in the 07 Action; and

   (c) AIG will amend Count One (Civil Racketeering Against Underreporting Pool Board Members in Violation of 18 U.S.C. § 1962(c)) and Count Four (Breach of Fiduciary Duty Against Pool Board Members) of its Corrected First Amended Complaint in the 07 Action (and the incorporation of any such allegations in subsequent counts) to withdraw any allegations that any Settlement Class Member engaged in underreporting of workers compensation premium or participated in any way in any form of conspiracy.

7. Nothing in Section VIII.A.6 is intended, or should be construed, to compromise or impair AIG's ability to prosecute or defend any remaining claims between AIG and any potential Settlement Class Members that

submit a valid and timely request for exclusion from the Settlement Class in accordance with the procedures set out in Section VI.A of this Settlement Agreement. AIG and the Settling Plaintiffs understand that the reason for Section VIII.A.6 is to seek to ensure that none of the Settlement Class Members will continue to have exposure or to incur expense, either by way of litigation or discovery, in connection with the ongoing litigation claims between AIG and any potential Settlement Class Member that submits a valid and timely request for exclusion from the Settlement Class in accordance with the procedures set out in Section VI. of this Settlement Agreement.

8.    Notwithstanding Sections VIII.A.,VIII.A.2, VIII.A.3, VIII.A.4, and VIII.A.5 above, nothing in the Judgment shall bar any action or claim by the Settling Parties to enforce the terms of this Settlement Agreement or the Judgment.

9.    The releases and waivers contained in this Section were separately bargained for and are essential elements of this Settlement Agreement.

10.   Nothing in Section VIII.A is intended, or should be construed, to modify or affect the Agreement between the NCCI and AIG effective September 25, 2006 ("September 25, 2006 Agreement"), and the terms and conditions of the September 25, 2006 Agreement remain in full force and effect

**B.    Order of Dismissal**

1.    The Settling Parties will seek from the Court a Judgment and an Order Approving Settlement as further described in Section XI below. The Judgment and Order Approving Settlement shall, among other things, (i) approve this Settlement Agreement, including the Plan of Allocation, as fair, reasonable and adequate, (ii) dismiss with prejudice and on the merits all claims and counterclaims in the Litigations between AIG, the NCCI, the NWCRP, and/or the Settlement Class Members (subject to Section VIII.A.6 above), (iii) enter the Bar Order, and (iv) incorporate the Releases.

**IX.   ATTORNEYS' FEES AND EXPENSES**

**A.**   Any award of fees and expenses by the Court to Class Counsel or any other attorneys representing the Settlement Class Members in these Litigations shall be paid exclusively from the Class Fund.

**B.**   Neither AIG nor any of its predecessors, successors, parents, subsidiaries, partners, principals, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), heirs, administrators, executors, attorneys, successors in interest or assigns shall be liable or obligated to pay any fees, expenses, costs or disbursements to, or incur

any expense on behalf of, the Settlement Class Members, Class Counsel or any other attorneys representing the Settlement Class Members in these Litigations.

## X. PRELIMINARY ORDER CERTIFYING THE SETTLEMENT CLASS AND APPROVING NOTICE

A.   Within seven (7) days following the Execution Date, the Settling Parties shall submit this Settlement Agreement to the Court and apply for a Preliminary Approval Order substantially in the form of **Exhibit E** to this Settlement Agreement.

## XI. APPROVAL, JUDGMENT AND THE ORDER APPROVING SETTLEMENT

A.   After the Fairness Hearing, and upon the Court's approval of this Settlement Agreement, the Settling Parties shall seek from the Court a Judgment and an Order Approving Settlement substantially in the form of **Exhibits C and A**, respectively, attached to this Settlement Agreement.

## XII. MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.   The terms and provisions of this Settlement Agreement may be amended, modified or expanded by agreement of the Settling Parties; *provided however*, that, after entry of the Judgment and Order Approving Settlement, the Settling Parties may, by written agreement, effect any amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Court's Judgment and Order Approving Settlement and do not materially limit the rights of Settlement Class Members under this Settlement Agreement; *provided further* that a decision by the Pool Administrator to modify the Plan of Allocation shall not be deemed to be a change that materially limits the rights of Settlement Class Members under this Settlement Agreement to the extent such modification involves an amount equal to or less than $10 million of the Class Fund.

B.   Subject to Sections XII.D and XII.E below, this Settlement Agreement will terminate at the sole option and discretion of AIG, and AIG shall have no obligations or liability under this Agreement of any kind  if:

1.   Any potential Settlement Class Member (other than the Liberty Companies) with one percent or greater allocation of the Class Fund under the Plan of Allocation submits a valid and timely request for exclusion from the Settlement Class in accordance with the procedures set out in Section VI.A of this Settlement Agreement; and/or

2.   The potential Settlement Class Members (other than the Liberty Companies) that submit valid and timely requests for exclusion from the Settlement Class in accordance with the procedures set out in Section

VI.A of this Settlement Agreement aggregate to a five percent or greater allocation of the Class Fund under the Plan of Allocation.

C. Subject to Sections XII.D and XII.E below, this Settlement Agreement will terminate at the option and discretion of AIG or Class Counsel, and AIG and the Settling Plaintiffs shall have no obligations or liability under this Agreement of any kind, if:

1. The funds in the Workers Compensation Fund for the WCF Payment are not available to be used in accordance with this Settlement Agreement within ten (10) Business Days following the Preliminary Approval Date;

2. There is no final Regulatory Settlement prior to July 29, 2011;

3. There is no final settlement of claims between AIG and the insurance guaranty funds represented by Joseph C. Tanski of all claims and liabilities arising out of or related to workers compensation premium underreporting prior to July 29, 2011;

4. The Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this Settlement Agreement or the proposed settlement that the terminating party reasonably and in good faith determines is material, including, without limitation, the terms of relief, the Bar Order, the findings of the Court, the provisions relating to Notice, the definition of the Settlement Class and/or the terms of the Releases; or

5. The Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Judgment or the Order Approving Settlement, including the Bar Order, or any of the Court's findings of fact or conclusions of law that the terminating party reasonably and in good faith believes is material.

D. A party seeking to terminate this Settlement Agreement pursuant to the terms set out in Sections XII.B and XII.C must exercise the option to withdraw from and terminate this Settlement Agreement no later than ten (10) days after receiving actual notice of the event prompting the termination.

E. If an option to withdraw from and terminate this Settlement Agreement arises pursuant to the terms set out above, (i) the party having such option will not be required for any reason or under any circumstance to exercise that option, and (ii) any exercise of that option shall be made in good faith.

F. If this Settlement Agreement is terminated pursuant to the terms set out above, then:

1. This Settlement Agreement shall be null and void and shall have no force or effect, and no Settling Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this Section;

2. This Settlement Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement;

3. Releasees and their current and former parents, predecessors, successors, heirs, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), agents, attorneys, representatives and assigns expressly and affirmatively reserve all defenses, arguments and motions as to all claims that have been or might later be asserted in the Litigations, including (without limitation) any argument that the Putative Class Action may or may not be litigated as a class action;

4. Settling Plaintiffs and their current and former parents, predecessors, successors, heirs, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), agents, attorneys, representatives and assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Litigations, including (without limitation) any argument concerning class certification;

5. Neither this Settlement Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever;

6. Neither the Settling Parties' agreement to the terms set out in this Settlement Agreement nor their execution of this Settlement Agreement shall constitute or be construed to be an admission by any or all of the Settling Parties that any wrongdoing has taken place, or that any federal, state, or common laws have been violated;

7. No monies in the Escrow Account shall be distributed pursuant to the terms of the Escrow Agreement;

8. Subject to the payment of Administrative Expenses and expenses of the Escrow Agent as provided in the Escrow Agreement, an amount equal to the WCF Payment, plus accrued interest, shall revert to the Workers Compensation Fund, and an amount equal to the Supplemental Payment, plus accrued interest, shall revert to AIG;

9. The terms of the Stipulation and Order of Confidentiality shall remain in full force and effect; and

10. Nothing in this Settlement Agreement shall create obligations on the part of any Settling Party to pay any other party's fees or expenses.

## XIII.   GENERAL MATTERS AND RESERVATIONS

A.   The Settling Plaintiffs represent and certify that (i) they have agreed to serve as representatives of the Settlement Class proposed to be certified herein; (ii) they are willing, able and ready to perform all of the duties and obligations as representatives of the Settlement Class, including, but not limited to, being available for, and involved in, discovery and fact finding; (iii) they have read the pleadings in the Litigations, or have had the contents of such pleadings described to them; (iv) they have been kept apprised of the progress of the Litigations and/or the settlement negotiations among the Settling Parties, and have either read this Settlement Agreement, including the exhibits attached to the Settlement Agreement, or have received a description of it from Class Counsel, and they have agreed to its terms; (v) they have consulted with Class Counsel about the Litigations, this Settlement Agreement and the obligations of a representative of a class; (vi) they will remain and serve as representatives of the Settlement Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that said Settling Plaintiffs cannot represent the Settlement Class.

B.   Each Settling Party represents and warrants that it is not a party to any pending action outside of the Litigations that affects or could potentially affect the Settlement Agreement and that the execution, delivery and performance by it of this Settlement Agreement is within its authority, has been duly authorized by all necessary company actions, and does not and will not contravene the terms of its respective charter documents, conflict with, or result in the breach or contravention of, any contractual obligation to which such Settling Party is a party or any law, rule, order, injunction, writ or decree of any governmental authority.

C.   The signatories to this Settlement Agreement represent that they have been duly authorized to execute this Settlement Agreement on behalf of the party or parties they purport to represent and to bind those parties to its terms and conditions.

D.   By executing this Settlement Agreement on behalf of the NWCRP (for the limited purpose of providing the Releases in Section VIII), the Board of Governors of the NWCRP does not purport to bind and will not be deemed to bind any of the participating companies of the NWCRP.

E.   Each party represents and warrants that it enters into this Settlement Agreement of its own free will.  In entering into this Settlement Agreement, no party has relied upon any representation or warranty not set forth expressly herein.

F.   This Settlement Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter, and it may not be altered or modified except by written instrument executed by Class Counsel and Defendants' Counsel.  The Settling Parties expressly acknowledge that no other agreements, arrangements or understandings not expressed in this Settlement Agreement exist among or between them.

G.   This Settlement Agreement and any ancillary agreements shall be governed by and interpreted according to the law of the State of Illinois, excluding its conflict of laws provisions.

H.   The Settling Parties shall jointly request that the Court retain continuing and exclusive jurisdiction over this Settlement Agreement, the Settling Parties, all Settlement Class Members and all Releasees to adjudicate all issues relating to this Settlement Agreement. Any action arising under or to enforce this Settlement Agreement shall be commenced and maintained only in this Court.

I.   Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed effective upon such facsimile transmission, or delivery, to the facsimile number, or address, as the case may be, below:

1.   If to AIG, then to:

Michael B. Carlinsky, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*and*

Stephen Novack, Esq.
Novack and Macey LLP
100 North Riverside Plaza
Chicago, IL 60606-1501
Telephone: (312) 419-6900
Facsimile: (312) 419-6928

2.   If to the Settling Plaintiffs, then to:

Frederic R. Klein, Esq.
Goldberg Kohn Ltd.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 201-3908
Facsimile: (312) 863-7408

3.   If to the NWCRP, then to:

Rowe W. Snider, Esq.
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive

Chicago, Illinois 60606
Telephone: (312) 443-0667
Facsimile: (312) 443-0336

4.      If to the NCCI, then to:

Harry N. Arger, Esq.
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
Telephone: (312) 627-2127
Facsimile: (866) 547-9396

**J.**      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Settlement Agreement, "legal holiday" includes New Year's Day, the observance of the birthday of Martin Luther King, Jr., Presidents Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal holiday.

**K.**      The Settling Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

**L.**      If any provision, paragraph, section, subsection, or other portion of this Settlement Agreement is found to be void (except for Section [VIII], all of the remaining provisions of this Settlement Agreement shall remain in full force and effect.

**M.**      All Settling Parties agree that this Settlement Agreement was drafted by counsel for the Settling Parties at arm's-length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Settling Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed. Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

**N.**      In no event shall the Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any

kind in these Litigations, any other action, or any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity.

O.  No opinion or advice concerning the tax consequences of the proposed settlement to individual Settlement Class Members is being given or will be given by Defendants' Counsel and/or Class Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. The Notice will direct Settlement Class Members to consult their own tax advisors regarding the tax consequences of the proposed settlement and any tax reporting obligations they may have with respect thereto. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

P.  The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to act in good faith in resolving any disputes that may arise in the implementation of the terms of this Settlement Agreement.

Q.  All conditions and requirements of the Class Action Fairness Act, Pub. L. No. 109-2, shall apply to this Settlement Agreement, and the Settling Parties, their successors and assigns, and their attorneys agree to take all reasonable steps to assurance compliance.

R.  This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original. Execution by facsimile or by an electronically transmitted signature shall be fully and legally binding on a Settling Party.

S.  All Releasees that are not parties to this Settlement Agreement are intended third-party beneficiaries entitled to enforce the terms of the Releases set forth herein.

Agreed to this 28th day of January, 2011.

*Brian E. Dowd* (signature)
_____
Brian E. Dowd
President
*On Behalf of ACE INA Holdings, Inc.*


_____
Kenneth Schroeder
Senior Vice President
*On Behalf of Auto-Owners Insurance Co.*


_____
Charles M. Potok
President
*On Behalf of Companion Property & Casualty Insurance Co.*


_____
Stephen Leatak
Chief Financial Officer
*On Behalf of FirstComp Insurance Co.*


_____
Joseph M. Treacy
Assistant Vice President Workers Compensation Industry Affairs
*On Behalf of The Hartford Financial Services Group, Inc.*


_____
Stephen Ungar
General Counsel
*On Behalf of Technology Insurance Co.*


_____
Kenneth F. Spence III
Executive Vice President, General Counsel
*On Behalf of The Travelers Indemnity Company*

_____

Brian E. Dowd
President
*On Behalf of ACE INA Holdings, Inc.*

_____

Kenneth Schroeder
Senior Vice President
*On Behalf of Auto-Owners Insurance Co.*

_____

Charles M. Potok
President
*On Behalf of Companion Property & Casualty Insurance Co.*

_____

Stephen Leatak
Chief Financial Officer
*On Behalf of FirstComp Insurance Co.*

_____

Joseph M. Treacy
Assistant Vice President Workers Compensation Industry Affairs
*On Behalf of The Hartford Financial Services Group, Inc.*

_____

Stephen Ungar
General Counsel
*On Behalf of Technology Insurance Co.*

_____

Kenneth F. Spence III
Executive Vice President, General Counsel
*On Behalf of The Travelers Indemnity Company*

_____
Brian E. Dowd
President
*On Behalf of ACE INA Holdings, Inc.*


_____
Kenneth Schroeder
Senior Vice President
*On Behalf of Auto-Owners Insurance Co.*


_____
Charles M. Potok
President
*On Behalf of Companion Property & Casualty Insurance Co.*


_____
Stephen Leatak
Chief Financial Officer
*On Behalf of FirstComp Insurance Co.*


_____
Joseph M. Treacy
Assistant Vice President Workers Compensation Industry Affairs
*On Behalf of The Hartford Financial Services Group, Inc.*


_____
Stephen Ungar
General Counsel
*On Behalf of Technology Insurance Co.*


_____
Kenneth F. Spence III
Executive Vice President, General Counsel
*On Behalf of The Travelers Indemnity Company*

_____

Brian E. Dowd
President
*On Behalf of ACE INA Holdings, Inc.*


_____

Kenneth Schroeder
Senior Vice President
*On Behalf of Auto-Owners Insurance Co.*


_____

Charles M. Potok
President
*On Behalf of Companion Property & Casualty Insurance Co.*

_____

Stephen Letak
Chief Financial Officer
*On Behalf of FirstComp Insurance Co.*


_____

Joseph M. Treacy
Assistant Vice President Workers Compensation Industry Affairs
*On Behalf of The Hartford Financial Services Group, Inc.*


_____

Stephen Ungar
General Counsel
*On Behalf of Technology Insurance Co.*


_____

Kenneth F. Spence III
Executive Vice President, General Counsel
*On Behalf of The Travelers Indemnity Company*

_____
Brian E. Dowd
President
*On Behalf of ACE INA Holdings, Inc.*


_____
Kenneth Schroeder
Senior Vice President
*On Behalf of Auto-Owners Insurance Co.*


_____
Charles M. Potok
President
*On Behalf of Companion Property & Casualty Insurance Co.*


_____
Stephen Leatak
Chief Financial Officer
*On Behalf of FirstComp Insurance Co.*

_____
Joseph M. Treacy
Assistant Vice President Workers Compensation Industry Affairs
*On Behalf of The Hartford Financial Services Group, Inc.*


_____
Stephen Ungar
General Counsel
*On Behalf of Technology Insurance Co.*


_____
Kenneth F. Spence III
Executive Vice President, General Counsel
*On Behalf of The Travelers Indemnity Company*

_____
Brian E. Dowd
President
*On Behalf of ACE INA Holdings, Inc.*


_____
Kenneth Schroeder
Senior Vice President
*On Behalf of Auto-Owners Insurance Co.*


_____
Charles M. Potok
President
*On Behalf of Companion Property & Casualty Insurance Co.*


_____
Stephen Leatak
Chief Financial Officer
*On Behalf of FirstComp Insurance Co.*


_____
Joseph M. Treacy
Assistant Vice President Workers Compensation Industry Affairs
*On Behalf of The Hartford Financial Services Group, Inc.*


_____
Stephen Ungar
General Counsel
*On Behalf of Technology Insurance Co.*


_____
Kenneth F. Spence III
Executive Vice President, General Counsel
*On Behalf of The Travelers Indemnity Company*

Brian E. Dowd
President
*On Behalf of ACE INA Holdings, Inc.*


Kenneth Schroeder
Senior Vice President
*On Behalf of Auto-Owners Insurance Co.*


Charles M. Potok
President
*On Behalf of Companion Property & Casualty Insurance Co.*


Stephen Leatak
Chief Financial Officer
*On Behalf of FirstComp Insurance Co.*


Joseph M. Treacy
Assistant Vice President Workers Compensation Industry Affairs
*On Behalf of The Hartford Financial Services Group, Inc.*


Stephen Ungar
General Counsel
*On Behalf of Technology Insurance Co.*


Kenneth F. Spence III
Executive Vice President, General Counsel
*On Behalf of The Travelers Indemnity Company*

_Jeffrey A. Wolikson_

Jeffrey A. Wolikson
Vice President, Corporate Secretary and
Deputy General Counsel
*On Behalf of American International Group,*
*Inc.*


_Robert S. Schimek_

Robert S. Schimek
Executive Vice President
*On Behalf of AIG Casualty Company f/k/a*
*Birmingham Fire Insurance Company of*
*Pennsylvania n/k/a Chartis Property*
*Casualty Company; AIU Insurance*
*Company; American Home Assurance*
*Company; American International South*
*Insurance Company f/k/a American Global*
*Insurance Company n/k/a Chartis Casualty*
*Company; American International Specialty*
*Lines Insurance Company f/k/a Alaska*
*Insurance Company n/k/a Chartis Specialty*
*Insurance Company; Commerce and*
*Industry Insurance Company; Granite State*
*Insurance Company; Illinois National*
*Insurance Co.; The Insurance Company of*
*the State of Pennsylvania; National Union*
*Fire Insurance Company of Pittsburgh, Pa.;*
*and New Hampshire Insurance Company*


Ronald Veltman
Assistant Secretary
*On Behalf of American International Pacific*
*Insurance Company f/k/a American Fidelity*
*Company n/k/a 21st Century Pacific*
*Insurance Company, and New Hampshire*
*Indemnity Company n/k/a 21st Century*
*Security Insurance Company*

_____

Jeffrey A. Welikson
Vice President, Corporate Secretary and
Deputy General Counsel
*On Behalf of American International Group,
Inc.*

_____

Robert S. Schimek
Executive Vice President
*On Behalf of AIG Casualty Company f/k/a
Birmingham Fire Insurance Company of
Pennsylvania n/k/a Chartis Property
Casualty Company; AIU Insurance
Company; American Home Assurance
Company; American International South
Insurance Company f/k/a American Global
Insurance Company n/k/a Chartis Casualty
Company; American International Specialty
Lines Insurance Company f/k/a Alaska
Insurance Company n/k/a Chartis Specialty
Insurance Company; Commerce and
Industry Insurance Company; Granite State
Insurance Company; Illinois National
Insurance Co.; The Insurance Company of
the State of Pennsylvania; National Union
Fire Insurance Company of Pittsburgh, Pa.;
and New Hampshire Insurance Company*

_____

Ronald Veltman
Assistant Secretary
*On Behalf of American International Pacific
Insurance Company f/k/a American Fidelity
Company n/k/a 21st Century Pacific
Insurance Company, and New Hampshire
Indemnity Company n/k/a 21st Century
Security Insurance Company*

_Stephen P. Letak_

Stephen Letak
Chair of the Board of Governors
*On Behalf of the National Workers Compensation Reinsurance Pool*


Terrence D. Delehanty
General Counsel and Chief Legal Officer
*On Behalf of the National Council on Compensation Insurance, Inc.*

Terrence D. Delehanty
General Counsel and
Chief Legal Officer

*On Behalf of National Council on*
*Compensation Insurance, Inc. (NCCI)*