# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) | No. 07 CV 2898 |
| vs. | ) ) | District Judge Robert W. Gettleman |
| ACE INA HOLDINGS, INC., *et al.*, | ) ) | Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) | |

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, *et al.*, individually and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) | No. 09 CV 2026 |
| | ) | |
| Plaintiffs, | ) | District Judge Robert W. Gettleman |
| vs. | ) ) | Magistrate Judge Sidney I. Schenkier |
| AMERICAN INTERNATIONAL GROUP, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## SETTLEMENT CLASS PLAINTIFFS' AND AIG'S MEMORANDUM OF LAW  IN OPPOSITION TO ORIGINAL CLASS PLAINTIFFS' <u>MOTION TO STRIKE OPINIONS IN TWELVE DECLARATIONS</u>

s

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    THE MATERIALS SUBMITTED BY SETTLEMENT CLASS PLAINTIFFS AND AIG SUPPORT CLASS CERTIFICATION AND PRELIMINARY APPROVAL. ... 2

    A.    Settlement Class Plaintiffs' Declarations ................................................. 3

    B.    Juster's Declaration ................................................................................ 7

    C.    The Examiner, Merlino and Appel Declarations .................................... 7

    D.    The Exhibits ........................................................................................... 8

    E.    Klein's Declaration ................................................................................. 9

II.    THE SUBMISSIONS ARE ADMISSIBLE AND ESTABLISH SETTLEMENT CLASS PLAINTIFFS' ADEQUACY AND THE ADEQUACY OF THEIR COUNSEL. .................................................................................................. 9

    A.    The Objectors Have Failed to Demonstrate That the Federal Rules of Evidence Apply to the Adequacy Inquiry. ......................................... 10

    B.    The Objectors Misconstrue the Declarations Which Are All Based Upon Personal Knowledge. ......................................................................... 11

III.    THE MATERIALS SUBMITTED BY THE SETTLEMENT CLASS PLAINTIFFS AND AIG WITH RESPECT TO FAIRNESS SHOULD ALSO BE CONSIDERED BY THE COURT. .................................................................................... 11

    A.    The Federal Rules of Evidence Do Not Apply to the Court's Preliminary Inquiry Regarding the Fairness of the Proposed Settlement. .......................................... 11

    B.    Even If the Federal Rules of Evidence Did Apply, and They Do Not, Settlement Class Plaintiffs' and AIG's Submissions Satisfy the Rules of Evidence and Are Admissible. ......................................................................................... 14

    C.    The Cases Relied Upon by The Objectors Are Inapposite .................... 16

# TABLE OF AUTHORITIES

**Cases**

*Am. Honda Motor Co., Inc., v. Allen,*
   600 F.3d 813 (7th Cir. 2010) ................................................................................... 10

*Baxter v. Kawasaki Motors Corp., U.S.A.,*
   259 F.R.D. 336 (N.D. Ill. 2009) ............................................................................... 11

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ................................................................................. 16

*Daubert v. Merrel Dow Pharm., Inc.,*
   509 U.S. 579, 594-95 (1993) ............................................................................. passim

*Flinn v. FMC Corp.,*
   528 F.2d 1169 (4th Cir. 1975) ................................................................................. 16

*Gautreaux v. Pierce,*
   690 F.2d 616 (7th Cir. 1982) ................................................................................... 13

*Glicken v. Bradford,*
   35 F.R.D. 144 (S.D.N.Y. 1964) ............................................................................... 16

*In re AT&T Mobility Wireless Data Services Sales Litig.,*
   270 F.R.D. 330 (N.D. Ill. 2010) .............................................................................. 13

*In re Northfield Labs., Inc. SEC. Litig.,*
   267 F.R.D. 536 (N.D. Ill. 2010) .............................................................................. 10

*Int'l Union v. Ford Motor Co.,*
   No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ............................... 11

*Int'l Union, UAW v. Gen. Motors Corp.,*
   497 F.3d 615 (6th Cir. 2007) .............................................................. 11, 12, 13, 17

*Mangone v. First USA Bank,*
   206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................... 15

*Mars Steel Corp. v. Continental Bank N.A.,*
   880 F.2d 928 (7th Cir. 1989) .............................................................................. 16, 17

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
   No. 5 C 6583, 2010 WL 3184179 (N.D. Ill. Aug. 9, 2010) ..................................... 10

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .................................................. 13

*Reed v. Advocate Health Care*,
   268 F.R.D. 573, 580 (N.D. Ill. 2009) .................................... 11, 16

*Srail v. Village of Lisle*,
   249 F.R.D. 544 (N.D. Ill. 2008) ............................................. 10

*Szabo v. Bridgeport Machs., Inc.*,
   249 F.3d 672 (7th Cir. 2001) ................................................. 10

*Tenn. Ass'n of Health Maint. Orgs. v. Grier*,
   262 F.3d 559 (6th Cir. 2001) ................................................. 13

*Toney v. Rosewood Care Ctr., Inc.*,
   No. 98 C 0693, 1999 WL 199249 (N.D. Ill. Mar. 31, 1999) ................. 10

*UAW v. Gen. Motors Corp.*,
   235 F.R.D. 383 (E.D. Mich. 2006) ........................................... 12

*West v. Prudential SEC., Inc.*,
   282 F.3d 935 (7th Cir. 2002) ................................................. 10

*Williams v. Quinn*,
   No. 05 C 4673, 2010 WL 3894350 (N.D. Ill. Sept. 28, 2010) .............. 12, 17

**Other Authorities**

Linda S. Mullenix, *Taking Adequacy Seriously:  The Inadequate Assessment of Adequacy in Litigation and Settlement Classes*, 57 Vand. L. Rev. 1687 (2004) ......................................... 10

Manual For Complex Litigation § 1.46, at 53-55 (West 1977) ............................................. 13

**Rules**

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 9

Federal Rule of Evidence 702 ................................................................................ passim

Settlement Class Plaintiffs ACE, Auto-Owners, Companion, FirstComp, Hartford, Technology, and Travelers, by their undersigned counsel, and Defendant American International Group, Inc., and its present and former subsidiaries and affiliates named as parties herein (collectively referred to as "AIG"), by their respective undersigned counsel, respectfully submit this joint memorandum of law in opposition to Original Class Plaintiffs' Motion to Strike Opinions in Twelve Declarations ("Motion to Strike") (R. 373).[1]

## INTRODUCTION

Through their Motion to Strike, the Objectors ask this Court to strike the "opinions" in 12 of the 15 declarations, submitted by the Settlement Class Plaintiffs and AIG in support of their January 28, 2011 Joint Motion for Class Certification and Preliminary Approval of Class Action Settlement (the "Joint Motion") (R. 330), and to strike many of the exhibits appended to those declarations.  The Objectors attack the declarations and the exhibits on three grounds:  (1) the declarations supposedly contain, or rely upon, opinions that fail to comply with Federal Rule of Evidence 702 and *Daubert*; (2) the declarations contain fact testimony which purportedly is not based upon the witnesses' personal knowledge; and (3) no foundation has been laid for the exhibits.  In arguing their Motion to Strike, however, the Objectors conflate and muddle the inquiries that the Court will undertake with regard to the Objectors' two discrete challenges to the Joint Motion:  (a) adequacy of the class representatives and of class counsel; and (b) preliminary consideration of the fairness of the $450 million settlement.  The Objectors also fundamentally mischaracterize the nature of the declarations submitted in support of the Joint Motion.  Consequently, the Objectors' Motion to Strike should be denied.

---

[1]  To the extent not re-defined in this Memorandum of Law, the Settlement Class Plaintiffs and AIG incorporate by reference the defined terms contained in Settlement Class Plaintiffs' Reply Memorandum of Law in Support of Joint Motion for Class Certification and Preliminary Approval of Class Action Settlement, filed contemporaneously herewith ("Settlement Class Plaintiffs' Reply Memorandum").

**ARGUMENT**

**I.   THE MATERIALS SUBMITTED BY SETTLEMENT CLASS PLAINTIFFS AND AIG SUPPORT CLASS CERTIFICATION AND PRELIMINARY APPROVAL.**

In support of the Joint Motion, the Settlement Class Plaintiffs and AIG provided the Court with 15 detailed declarations.  Of those, the Objectors ask this Court to strike all, or effectively all, of the following 12 declarations:

1)      Stephen P. Letak for FirstComp ("Letak Decl."), Exhibit A to the Settlement Class Plaintiffs' Supplemental Memorandum ("Settlement Class Plaintiffs' Supp'l Memo") (R. 351);

2)      William H. Malphurs for Technology ("Malphurs Decl."), Exhibit B to the Settlement Class Plaintiffs' Supp'l Memo;

3)      Kenneth Schroeder for Auto-Owners ("Schroeder Decl."), Exhibit C to the Settlement Class Plaintiffs' Supp'l Memo;

4)      Steven Bloss for Companion ("Bloss Decl."), Exhibit D to the Settlement Class Plaintiffs' Supp'l Memo;

5)      Joseph M. Treacy for Hartford ("Treacy Decl."), Exhibit E to the Settlement Class Plaintiffs' Supp'l Memo;

6)      Henry J. Jacobs for ACE ("Jacobs Decl."), Exhibit F to the Settlement Class Plaintiffs' Supp'l Memo;

7)      Jonathan B. Hale for Travelers ("Hale Decl."), Exhibit G to the Settlement Class Plaintiffs' Supp'l Memo;

8)      Rosemary Juster ("Juster") for the Arrowood Family of Companies ("Arrowood") ("Juster Decl."), Exhibit N to the Settlement Class Plaintiffs' Supp'l Memo;

9)      J. David Leslie, the Examiner-in-Charge (the "Examiner") of the AIG Multistate Examination ("Leslie Decl."), Exhibit H to the Settlement Class Plaintiffs' Supp'l Memo;

10)     Matthew P. Merlino, of Merlinos & Associates, Inc. ("Merlinos"), ("Merlino Decl."), Exhibit I to the Settlement Class Plaintiffs' Supp'l Memo;

11)     David Appel ("Appel"), of Milliman, Inc. ("Appel Decl."), Exhibit A to AIG's Supplemental Submission in Support of Motion for Class Certification and Preliminary Approval of Class Action Settlement (R. 355); and

12)     Frederic R. Klein ("Klein"), of Goldberg Kohn Ltd. ("Klein Decl."), Exhibit B to the Settlement Class Plaintiffs' Memorandum of Law (R. 333).

In addition, the Objectors move to strike seven exhibits to the Leslie Declaration; four exhibits to the Merlino Decl.; and nine exhibits to the Supplemental Declaration of Rowe W. Snider ("Snider Supp'l Decl."), Exhibit J to the Settlement Class Plaintiffs' Supp'l Memo.

For the reasons detailed below, all of the materials submitted by Settlement Class Plaintiffs and AIG in support of the Joint Motion should be considered by this Court, including, those declarations and exhibits the Objectors have moved to strike.

## A.    Settlement Class Plaintiffs' Declarations

In their Motion to Strike, the Objectors have misconstrued, apparently deliberately, the Declarations submitted on behalf of the seven Settlement Class Plaintiffs.  For example, they assert that all of these declarations should be stricken and use the Malphurs Declaration as the prototype to argue that they all are defective.  In doing so, they claim that Malphurs' stated reasons for supporting the settlement were limited to "basically legal advice from LLBL … ."   (*See* Memorandum Supporting Original Class Plaintiffs' Motion to Strike Opinions in Twelve Declarations (the "Objectors' Memo") (R. 385) at 29.)  This reductionist approach to the Malphurs Declaration, and the declarations of the six other representatives of the Settlement Class Plaintiffs, bears no relationship to its contents.  In his declaration, Malphurs sets out, in sixteen paragraphs, the reasons for his decisions and establishes that he did not rely solely or "basically" on legal advice.  *See* Malphurs Decl., ¶ 6(a)-(p).  Specifically, the Malphurs Declaration includes, among others, the following considerations which led him to support the settlement:

1. The Lawsuit has been pending since 2007 and in that time, the NWCRP Board has devoted substantial time, and approximately $47 million in legal fees and costs, to the Lawsuit (*see id.* at ¶ 6(a));

2. Malphurs' expectation that the legal fees and costs would increase substantially if the Lawsuit went through trial, judgment, and appeal (*see id.*);

3. The Lawsuit has caused significant friction, and indeed intercompany warfare, between and among some of the largest insurance companies in the workers' compensation industry (*id.* at ¶ 6(b));

4. The presentations by the Objectors' counsel and Liberty's inside counsel on September 15, 2010 (*see id.* at ¶ 6(g));

5. The presentations by the Objectors' counsel on December 20, 2010 (*see id.* at ¶ 6 (j));

6. The presentation by AIG on January 3, 2011 (*see id.* at ¶ 6 (k));

7. The fact that the Examiner has facilitated a settlement between AIG and his clients, the state insurance regulatory bodies for all 50 states and the District of Columbia, relating to AIG's underreporting of workers compensation premium (*see id.* at ¶ 6 (n)); and

8. The recognition that a resolution of the states' related disputes with AIG meant that another important aspect of the industry supported a negotiated resolution with AIG (*see id.* at ¶ 6 (o)).

Consequently, the Objectors' crabbed and limited description of the Malphurs Declaration, and, by extension, the other six declarations submitted by the Settlement Class Plaintiffs, is not simply playing fast and loose with the record -- it is inventing a record that does not exist.

In their declarations, the representatives of the seven Settlement Class Plaintiffs – Letak, Malphurs, Schroeder, Bloss, Treacy, Jacobs, and Hale – each described, in detail, their respective individual experiences (a) in the insurance industry, (b) with their company, (c) serving on the NWCRP Board, and (d) reaching the conclusion that the proposed settlement is fair, reasonable, and in the best interests of the entire proposed class. *All* of this information was based upon the witness' personal knowledge. Specifically, they explain the following:

- The Settlement Class Plaintiffs are represented by senior officers of each of the companies who have served on the NWCRP Board for a collective 24 years (R. 351-2, Exs. A-G), including some representatives that have been employed in the insurance industry for over 30 years (Schroeder Decl., ¶ 1; Treacy Decl., ¶ 1).

- Each acted as his company's representative to the NWCRP Board. They each have knowledge of the status and procedural posture of the Lawsuit. (Letak Decl. ¶¶ 3-4; Malphurs Decl. ¶¶ 3-4; Schroeder Decl. ¶ 3-4; Bloss Decl. ¶¶ 3-4; Treacy Decl. ¶¶ 3-5; Jacobs Decl. ¶ 4-5; Hale Decl. ¶¶ 3, 6.) They have attended dozens of substantive meetings at which, among other things, they heard presentations from counsel for the Objectors, Liberty, the Board, AIG, and the Settlement Class Plaintiffs. (R. 351-2, Exhibits A-G; Settlement Class Plaintiffs' Supp'l Memo at 23-28.) They participated in the negotiations leading up to the proposed settlement. Prior to and after their intervention, the Settlement Class Plaintiffs were kept extremely well informed of the issues in the case and the developments in the litigation by counsel for the NWCRP Board and proposed counsel for the Settlement Class. (Letak Decl., ¶¶ 6-8; Malphurs Decl., ¶¶ 4, 6; Schroeder Decl., ¶ 4; Bloss Decl., ¶¶ 4, 6; Treacy Decl., ¶¶ 5, 7-8; Jacobs Decl., ¶¶ 4-6; Hale Decl., ¶¶ 6, 8.) In addition, three of the seven Settlement Class Plaintiffs have outside counsel representing them in connection with the Lawsuit, and all seven work closely with their inside counsel. (Letak Supp'l Decl., ¶ 17; Malphurs Supp'l Decl., ¶ 12; Schroeder Supp'l Decl., ¶ 9; Bloss Supp'l Decl., ¶ 13; Treacy Supp'l Decl., ¶ 15; Jacobs Supp'l Decl., ¶ 13; Hale Supp'l Decl., ¶ 13.)

- The Settlement Class Plaintiffs are well aware of the liability and damages theories presented by all parties, and they considered and evaluated those theories. (*See* Letak Decl. at ¶¶ 4-6, 8, 12; Malphurs Decl. at ¶¶ 6, 10; Schroeder Decl. at ¶¶ 6, 10; Bloss Decl. at ¶¶ 6, 10; Treacy Decl. at ¶¶ 7-14; Jacobs Decl. at ¶¶ 6, 10; and Hale Decl. at ¶¶ 8-21.)

- These theories included damages and litigation risk analyses performed by NWCRP's counsel, LLBL (*see e.g.*, Snider Supp'l Decl. and Exhibits A-E thereto (R. 351-9), which are "presentation slides" provided to, and discussed with, the NWCRP Board), including an analysis of the Examiner's work, as well as LLBL's own independent analysis of possible damages ranges, likelihood of success, costs of the litigation, and other typical risk analyses performed by competent counsel when advising a client.

- Each of the Settlement Class Plaintiffs devoted substantial time and energy to the management of the Lawsuit and analysis of the potential recovery and various settlement options in the year before executing the Settlement Agreement. (Letak Decl. ¶¶ 8(b)-(d); Malphurs Decl. ¶¶ 6(d)-(e); Schroeder Decl. ¶¶ 6(a)-(b); Bloss

Decl. ¶¶ 6(a)-(c); Treacy Decl. ¶¶ 5, 7-8; Jacobs Decl. ¶¶ 6(a)-(b); Hale Decl. ¶ 6(b).)

- Each of the Settlement Class Plaintiffs attended the September 15, 2010 NWCRP Board meeting and heard the presentations made by the various parties, including the presentation made by counsel for the Objectors. That presentation failed to account for either the cost of future litigation or the risk of loss at any stage of the proceedings. They also heard that day the presentation made by Liberty's inside counsel. (Letak Decl. ¶ 8(g); Malphurs Decl. ¶¶ 6(g)-(h); Schroeder Decl. ¶¶ 6(d)-(e); Bloss Decl. ¶¶ 6(e)-(f); Treacy Decl. ¶ 11; Jacobs Decl. ¶ 6(d); Hale Decl. ¶ 8(b).)

- As a result of those discussions, analysis, and presentations, the NWCRP Board ultimately decided to support an effort to settle with AIG for $450 million (Letak Decl. ¶ 8), and further to support the decisions of the seven Settlement Class Plaintiffs to intervene and seek Court approval to represent the class of NWCRP PCs in their attempts to settle the litigation. (Letak Decl. ¶¶ 8(i), 9; Malphurs Decl. ¶ 6(i), (l); Schroeder Decl. ¶ 6(f), (h); Bloss Decl. ¶ 6(g), (j); Treacy Decl. ¶¶ 14, 20; Jacobs Decl. ¶¶ 6(f), 7; Hale Decl. ¶ 8.)

- The Settlement Class Plaintiffs either attended or learned the details of the December 20, 2010 meeting during which counsel for both the Objectors and Liberty presented their analysis on potential damages, including the results of their sampling analysis, but again failed to take into account either the cost of future litigation or the risk of loss at any stage of the proceedings. (Letak Decl. ¶ 8(j); Malphurs Decl. ¶ 6(j); Schroeder Decl. ¶ 6(g); Bloss Decl. ¶ 6(h); Treacy Decl. ¶ 12; Hale Decl. ¶ 20.)

- In addition to the many forms of counsel they received, the Settlement Class Plaintiffs have also relied upon the work conducted by the Examiner. (Letak Decl. ¶ 8(o)-(r); Malphurs Decl. ¶ 6(n)-(o); Schroder Decl. ¶ 6(k)-(l); Bloss Decl. ¶ 6(l)-(m); Treacy Decl. ¶¶ 16-17; Jacobs Decl. ¶ 6(e); Hale Decl. ¶¶ 9-12.) The Examiner was appointed by the insurance commissioners of all 50 states and the District of Columbia to conduct an investigation into AIG's premium underreporting, and has thoroughly investigated and analyzed AIG's underreporting of workers compensation premium over a number of years. (R. 351-3, Leslie Decl., ¶ 4.)

- All of the Settlement Class Plaintiffs were present, (five in person, and 2 through counsel) at the January 3, 2011 Meeting and participated in a discourse with AIG's representatives and its

counsel regarding AIG's analysis of the various theories of damages and liability. (Letak Decl. ¶ 8(l); Malphurs Decl. ¶ 6(k); Schroeder Decl. ¶ 6(h); Bloss Decl. ¶ 6(i); Treacy Decl. ¶ 13.)

• Following the January 3, 2011 meeting, each of the Settlement Class Plaintiffs agreed to execute the Settlement Agreement and to intervene in the Lawsuit. (Letak Decl. ¶ 8(m)-(n); Malphurs Decl. ¶ 6(l)-(m); Schroeder Decl. ¶ 6(i); Bloss Decl. ¶ 6(j); Treacy Decl. ¶ 13; Jacobs Decl. ¶ 7.)

The Settlement Class Plaintiffs' declarations clearly demonstrate that they are *fact* witnesses whose testimony is based upon their *personal knowledge*. That personal knowledge includes the process they engaged in that informed the decisions they made on behalf of their companies, and the NWCRP Board, regarding the Lawsuit. The Settlement Class Plaintiffs are not offering opinion testimony of any kind. Rather, they set forth what each did in determining that the settlement was fair and adequate.

### B.    Juster's Declaration

Juster is the Assistant General Counsel of Arrowood. Arrowood is the successor in interest to several companies who were or are PCs in the NWCRP and the NMWCARP (Juster Decl. ¶¶ 1, 2). In her declaration, Juster simply informs the Court of the business decision made by Arrowood to support the $450 million settlement. Like the Settlement Class Plaintffs, Juster, a fact witness, offers no opinion testimony.

### C.    The Examiner, Merlino and Appel Declarations

It is undisputed that one of the main factors that the Settlement Class Plaintiffs analyzed and considered in deciding to support the $450 million class settlement was the analysis of the Examiner. In his declaration, the Examiner explains, in detail, his thorough investigation and analysis of AIG's underreporting, over a multi-year period, conducted on behalf of his clients the insurance commissioners of all 50 states and the District of Columbia. (Leslie Decl. ¶¶ 4-61.) The Examiner was assisted by Merlinos, an experienced actuarial firm. (Leslie Decl. ¶¶ 4;

-7-

Merlino Decl. ¶¶12).  Both the Examiner's and Merlinos' analysis, methodology, and ultimately their damages model were informed by the work of Appel, the experienced actuary retained by AIG (Appel Decl. ¶¶ 5, 6, 7, 30-74).  The analysis that both Merlinos and Appel engaged in is detailed in their respective declarations.  Although they are not being offered as opinion witnesses in the current procedural setting – their respective declarations are factual submissions explaining what they did, why they did it, what they communicated to others, and why -- it is undoubtedly the case that given their education, training, and vast experience in their chosen fields, the Examiner, Merlinos, and Appel could be qualified to testify as experts at a final fairness hearing.  For present purposes, though, all three are simply offered as fact witnesses who, in their declarations, explain the work they did, and the information they conveyed to the people they communicated with, so that the court can understand the full breadth of information that the Settlement Class Plaintiffs considered in reaching their decision to support a settlement with AIG.

### D.    The Exhibits

The declarations of the Examiner and Merlinos, and the Supplemental Declaration of Snider, attach and reference the exhibits the Objectors move to strike, and establish that the exhibits consist of communications among the parties, analyses performed by the declarant, or presentations made to the NWCRP Board.  *See* Leslie Decl. ¶¶ 19, 20, 25, 29, 30, 31 and 61; Merlino Decl. ¶¶ 55, 57, 64 and 66; and Snider Supp'l Decl. ¶¶ 2-7, 11-13.

The Objectors also move to strike the Discussion of the Plan of Allocation, attached as Exhibit L to the Settlement Class Plaintiffs' Supp'l Memo.  This document, which is a summary of the POA, was specifically requested by the Court at the February 4, 2011 hearing: "The allocation, I read the motion that we just dealt with, 5,000 pages? I want a summary, a readable summary." (R. 351-19, Exhibit O, February 4, 2011 Tr. at 8).

### E. Klein's Declaration

Finally, Klein as counsel for the putative settlement class, sets forth in his original Declaration, and in his Supplemental Declaration attached as Exhibit 8 to Settlement Class Plaintiffs' Reply Memorandum, his ample qualifications to represent the class, his view that the $450 million settlement is reasonable, and the detailed basis for that view. Klein's statements with respect to his adequacy to serve as class counsel consist of a purely factual recitation of his education, training, and experience, clearly topics on which he has personal knowledge. Moreover, to the extent that the balance of his Declaration and Supplemental Declaration are also admissible in support of the fairness of the proposed settlement, such testimony is not subject to the Federal Rules of Evidence, and therefore the Objectors have no basis to challenge their admissibility on any grounds.

## II. THE SUBMISSIONS ARE ADMISSIBLE AND ESTABLISH SETTLEMENT CLASS PLAINTIFFS' ADEQUACY AND THE ADEQUACY OF THEIR COUNSEL.

Because the Objectors have conceded numerosity, commonality, typicality, and predominance, the Settlement Class Plaintiffs submit their own declarations and the declarations of their counsel, Klein, in order to demonstrate the remaining element of adequacy. Neither the Settlement Class Plaintiffs nor Klein offer any *opinion* testimony with respect to their adequacy to serve as class representatives and class counsel pursuant to Fed. R. Civ. P. 23(a)(4). Instead, they submit facts within their personal knowledge to demonstrate their adequacy under the case law. The Objectors assert that all of these declarations should be stricken for failing to comply with, *inter alia*, Federal Rule of Evidence 702 and *Daubert*, claiming that all of the submissions contain "opinion" testimony. They do not.

A.     **The Objectors Have Failed to Demonstrate That the Federal Rules of Evidence Apply to the Adequacy Inquiry.**

As a preliminary matter, it is not even clear that the Objectors are right to invoke the structures of Federal Rule of Evidence 702, because whether the Federal Rules of Evidence apply at all to the Court's inquiry regarding the adequacy component of class certification is an open question.  "As is well known, class certification hearings are not subject to the ordinary rules of evidence."  Linda S. Mullenix, *Taking Adequacy Seriously:  The Inadequate Assessment of Adequacy in Litigation and Settlement Classes*, 57 Vand. L. Rev. 1687, 1742 (2004).  Indeed, the Objectors have not cited a single case applying the Federal Rules Evidence to the adequacy of class representatives or of class counsel.  *See Am. Honda Motor Co., Inc., v. Allen,* 600 F.3d 813, 814, 815-817 (7th Cir. 2010) (expert testimony offered to establish predominance of antitrust injury – adequacy not addressed); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001) (a generic cite, having nothing to do with adequacy, stating that a court cannot simply accept the plaintiff's assertions as conclusive when ruling on class certification motion); *West v. Prudential SEC., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) (noting that a class certification decision may require court to decide between competing experts' perspectives -- not an adequacy case); *In re Northfield Labs., Inc. SEC. Litig.*, 267 F.R.D. 536, 541-44, 547-48 (N.D. Ill. 2010) (Fed. R. Evid. applied to reject class proponents' expert on predominance – not applied to adequacy inquiry); *Srail v. Village of Lisle*, 249 F.R.D. 544, 551-55, 557-59 (N.D. Ill. 2008) (court considers Fed. R. Evid. in connection with predominance testimony, not adequacy); *Toney v. Rosewood Care Ctr., Inc.*, No. 98 C 0693, 1999 WL 199249 at *2-3 (N.D. Ill. Mar. 31, 1999) (adequacy requirement satisfied – no application of Fed. R. Evid.); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 5 C 6583, 2010 WL 3184179, at *7 (N.D. Ill. Aug. 9, 2010) (affidavits offered to establish commonality – adequacy not addressed); *Baxter v. Kawasaki*

*Motors Corp., U.S.A.*, 259 F.R.D. 336, 338, 342-43 (N.D. Ill. 2009) (adequacy requirement addressed without reference to Fed. R. Evid.); and *Reed v. Advocate Health Care*, 268 F.R.D. 573, 580, 594 (N.D. Ill. 2009) (expert testimony regarding predominance excluded – adequacy requirement satisfied without reference to Fed. R. Evid.).

> **B.** **The Objectors Misconstrue the Declarations Which Are All Based Upon Personal Knowledge.**

Assuming for arguments sake, however, that the Federal Rules of Evidence do apply to the adequacy inquiry, the Settlement Class Plaintiffs' and Klein's declarations are admissible because their testimony with respect to adequacy, the only Rule 23 certification requirement at issue in this litigation, is based entirely on their personal knowledge. As noted in Section I.A., above, the Objector's arguments to the contrary are based upon a fundamental mischaracterization of the declarations of the Settlement Class Plaintiffs. The Objectors' bald assertions that these declarations constitute opinion testimony does not make them so, and no applicable case law supports their arguments. Accordingly, the Motion to Strike should be denied.

> **III.** **THE MATERIALS SUBMITTED BY THE SETTLEMENT CLASS PLAINTIFFS AND AIG WITH RESPECT TO FAIRNESS SHOULD ALSO BE CONSIDERED BY THE COURT.**

> **A.** **The Federal Rules of Evidence Do Not Apply to the Court's Preliminary Inquiry Regarding the Fairness of the Proposed Settlement.**

As a starting point, it appears that the Objectors' arguments that Settlement Class Plaintiffs' and AIG's materials must be stricken are a non-starter; the limitations imposed by the Federal Rules of Evidence, and specifically Rule 702 and *Daubert*, do not apply to submissions in support of the fairness of a class action settlement. *See Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006), *aff'd sub nom. Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) (holding that the court "is entitled to consider

anything it deems helpful in evaluating the Settlement," including contested expert affidavits and reports). *See also Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (preliminary approval granted without a hearing, and the Federal Rules of Evidence do not apply, as "any information can be considered, including affidavits and other items not normally admissible at trial, that will aid the court in reaching an informed and reasoned decision…").

In *UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006), *aff'd sub nom. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), objecting parties asserted a *Daubert* challenge to the settling parties' expert witnesses because their opinions allegedly did not contain "an adequate description of the facts and data analyzed and relied upon by each expert, or the principles and methods adopted and applied to such facts and date by each expert." *UAW*, 235 F.R.D. at 387. The court found that the concerns underpinning its gate-keeping role under *Daubert* do not apply in the settlement approval context because the "trial judge sitting alone is presumed capable of weighing evidence to sift the important from the unimportant, and even the admissible from the inadmissible when those are intertwined in the same way that might counsel excluding the same evidence from consideration by a lay jury." *Id.*

On appeal, the Sixth Circuit noted that "no court of appeals, to our knowledge, has demanded that district courts invariably conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement." *Int'l Union, UAW v. General Motors, Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). The Court of Appeals also noted that those Objectors' reliance upon Rule 702 was misplaced:

> Rule 702 argument [ ] overlooks the differences between a full trial and a [class action settlement] fairness hearing. In a trial, the judge must strictly screen expert opinions for 'evidentiary relevance and reliability' because a jury often has difficulty assessing such evidence. *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 594-95 (1993). In a [final] fairness hearing, the judge **does not resolve**

> **the parties' factual disputes but merely ensures that the disputes are real and that the settlement fairly and reasonably resolves the parties' differences**.

*Id.* at 636-637 (emphasis added). The Sixth Circuit then rejected the objectors' *Daubert* challenge. *See also Tenn. Ass'n of Health Maint. Orgs. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (district court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasonable decision" and need not endow objecting class members with "the entire panoply of protections afforded by a full-blown trial on the merits"); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) (rejecting argument that district court should have required an evidentiary hearing prior to ruling on settlement when proponents "submitted voluminous supporting memoranda with citations to affidavits").

At the preliminary approval phase, the Court is tasked with an even narrower inquiry **--** to "determine whether the proposed settlement is 'within the range of possible approval' . . . [and to] ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *In re AT&T Mobility Wireless Data Services Sales Litig. ("AT&T Mobility"),* 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Manual For Complex Litigation* § 1.46, at 53-55 (West 1977)); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (preliminary approval process is to determine whether the proposed settlement is "within the range of possible approval"). It is well-established that the process for preliminary approval of a class action settlement is even more circumscribed than the final fairness hearing, which itself is not "a full trial on the merits." *AT&T Mobility*, 270 F.R.D. at 346 ("This [preliminary approval] hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.").

Whether in the context of a hearing on preliminary approval or at a final fairness hearing, it must be remembered that such a hearing is *not* a trial, and the Court is *not* being asked to make specific findings of fact as to the "correct" amount of damages or otherwise. Instead, the Court determines whether the settlement negotiated by the parties is within a range of possible approval. This is not an exact science, nor is the process intended to replicate a trial before a jury or the Court. That is why the Federal Rules of Evidence are not strictly applied in this context, and sometimes they are not applied at all. The fact that the Objectors are unwilling or unable to accept this procedural framework does not alter its applicability or the necessary result that the submitted declarations are appropriately before the Court at this stage.

**B.      Even If the Federal Rules of Evidence Did Apply, and They Do Not, Settlement Class Plaintiffs' and AIG's Submissions Satisfy the Rules of Evidence and Are Admissible.**

Even if the Federal Rules of Evidence did apply to the Court's inquiry on preliminary approval of the proposed settlement (they do not), Rule 702 and *Daubert* still would not apply because none of the declarations are offered for purposes of asserting expert opinion. Specifically, the Settlement Class Plaintiffs explain what they did and why. They are not offering opinions based on an analysis which requires scientific knowledge or other specialized expertise, the hallmarks of expert testimony, nor are they offering lay opinions. Instead, their declarations recount, in detail, events of which they have personal knowledge -- the meetings they attended, the information they considered, the process by which these company representatives decided to support the $450 million settlement, and the documents they signed. Their declarations are offered to establish that they engaged in a lengthy and careful process, considered the numerous detailed analyses presented by the interested parties, their advisors and counsel, and thought carefully about the risks and costs of continued litigation. These declarations are not offered to prove some ultimate truth that $450 million is the "right" or the

"perfect" settlement amount. Nor are they offered to prove with scientific certainty that the Settlement Class Plaintiffs, in lieu of settlement, would not, or could not, establish liability and recover damages in an amount greater or less than $450 million. Rather, their declarations establish how and why the Settlement Class Plaintiffs concluded what they did -- that based upon careful consideration of the available information, and after serious deliberation, they made business decisions to support the proposed settlement. The Settlement Class Plaintiffs clearly satisfy the personal knowledge requirements of Federal Rule of Evidence 602.

Like the Settlement Class Plaintiffs, Juster's Declaration recounts her experience as the representative of a PC in the NWCRP and the NMWCARP. Juster is a fact witness with personal knowledge of the facts in her declaration who clearly satisfies the personal knowledge requirements of Federal Rule of Evidence 602. Furthermore, the testimony of absent class members are routinely considered by courts when evaluating the fairness of a class settlement. *Mangone v. First USA Bank*, 206 F.R.D. 222, 224 (S.D. Ill. 2001).

The declarations of the Examiner, Merlinos, and Appel are not offered to establish their expert opinions, but instead to demonstrate what information the Settlement Class Plaintiffs and AIG considered in reaching their business decisions to approve the $450 million settlement.

The exhibits which are attached to the Examiner and Merlinos Declarations, and the Snider Supplemental Declaration, consist of the documents the declarants wrote, reviewed, received and presented to the NWCRP Board. Like the declarations themselves, these exhibits are offered to demonstrate the information the Settlement Class Plaintiffs and AIG considered in reaching the decision to support the settlement. The Discussion of Plan Allocation was provided in response to a direct request from the Court.

Finally, with respect to Klein, the Objectors have not cited a single case applying the Federal Rules of Evidence to the testimony of class counsel regarding the fairness of a proposed class settlement nor have Settlement Class Plaintiffs found any such case.

### C. The Cases Relied Upon by The Objectors Are Inapposite

Not one of the cases cited by the Objectors in support of their argument that the Court must apply the Federal Rules of Evidence to the materials submitted by the Settlement Class Plaintiffs and AIG deals with the admissibility of testimony regarding the fairness of a proposed settlement (*see* Objectors' Memo at 2-3). Among the cases the Objectors rely upon, all of which are addressed in Section II.A., above, is *Reed v. Advocate Health Care*, 268 F.R.D. 573, 594 (N.D. Ill. 2009). However, a careful reading of that decision and its citations demonstrates its inapplicability to the instant issue. Citing *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989), the district court in *Reed* stated that "the Seventh Circuit found that the Federal Rules of Evidence apply to proceedings under Rule 23." *Id.* at n.20. However, *Mars Steel* does not actually stand for that proposition. Rather, the Seventh Circuit, in *dictum*, noted that the objectors *could have made a plausible legal argument* that the rules applied in their motion to strike: "[t]o say that [counsel for objectors] did not construct a plausible legal argument is not to say that the firm couldn't have." *Mars Steel*, 880 F.2d at 938. Indeed, the Seventh Circuit noted that several cases had held that "when deciding whether a settlement of a class action should be approved, the court can use 'whatever is necessary to aid it in reaching an informed, just and reasoned decision.'" *Id.* (citing *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y. 1964); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)) (internal quotation marks and citations omitted). Furthermore, in the almost 22 years since the Seventh Circuit in *Mars Steel* observed that "no case expressly holds that affidavits are admissible in [settlement approval] hearings," a number

of courts have expressly held that they are admissible in connection with fairness hearings, and that the Federal Rules of Evidence do not even apply in that context. *Id. See e.g. Int'l Union, UAW*, 497 F.3d at 636-37; *Williams*, 748 F.3d at 897.

Ultimately, not a single case cited by the Objectors in support of their contention that the Federal Rules of Evidence apply to testimony submitted regarding the fairness of a proposed settlement actually address that issue. There is no basis to strike *any* of the Declarations or exhibits. Accordingly, the Objectors' Motion to Strike should be denied.

Dated:  June 3, 2011

Respectfully submitted,

ACE INA HOLDINGS, INC., AUTO-OWNERS
INSURANCE CO., COMPANION PROPERTY &
CASUALTY INS. CO., FIRSTCOMP INSURANCE
CO., THE HARTFORD FINANCIAL SERVICES
GROUP, INC., TECHNOLOGY INSURANCE CO.,
and THE TRAVELERS INDEMNITY COMPANY

By: /s/ William C. Meyers
    One of Their Attorneys

Frederic R. Klein
William C. Meyers
Kerry D. Nelson
Nury R. Agudo
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 201-4000

Respectfully submitted,

AMERICAN INTERNATIONAL GROUP, INC., *et al.*

By: /s/ Rebekah H. Parker
    One of Their Attorneys

Stephen Novack
Andrew D. Campbell
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on June 3, 2011, he caused a true and correct copy of **SETTLEMENT CLASS PLAINTIFFS' AND AIG'S MEMORANDUM OF LAW  IN OPPOSITION TO ORIGINAL CLASS PLAINTIFFS' MOTION TO STRIKE OPINIONS IN TWELVE DECLARATIONS** to be served upon the parties of record via the Court's ECF/electronic mailing system.

<u>/s/ William C. Meyers</u>