# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al. | Case No. 07 CV 2898 |
| Plaintiffs, | Judge Robert W. Gettleman |
| v. | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al. | |
| Defendants. | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al. | |
| Counter-Claimants | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al. | |
| Counter-Defendants | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | Case No. 09 CV 2026 |
| | Judge Robert W. Gettleman |
| | Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | |
| Defendants. | |

## DECLARATION OF JEFFREY A. COHEN

I, Jeffrey Cohen, declare and state as follows based on my personal knowledge, as well as on information and belief:

## I.  Qualifications

1.  My name is Jeffrey Cohen.  I am a Managing Principal of Analysis Group, an economic, financial, and strategy consulting firm.  I specialize in the application of economic analysis to legal and regulatory issues.

2.  I earned both an MBA, with a concentration in finance, and a B.A. from the University of Chicago.  I am also the author of a book on the economics of intangible assets entitled, *Intangible Assets: Valuation and Economic Benefit* (Wiley, 2005).

3.  I have offered expert testimony in the form of court testimony and depositions, as well as expert reports and affidavits on a variety of economics topics.

4.  In my consulting work over the past 23 years, I have often worked on matters involving the analysis of large datasets containing financial information.  These analyses, which I have frequently directed, have often required extensive data programming and auditing.

5.  My qualifications are summarized in greater detail in my curriculum vitae, which is attached to this report as Appendix A.  Appendix A also contains information relating to my previous employment, testimony, and publications.

6.  I have been retained by counsel for Original Class Plaintiffs in conjunction with the case caption referenced above.

1

**OCP APPENDIX 00148**

7.   I have been asked by counsel (a) to analyze the assembly of AIG's workers compensation data in this matter, and (b) in connection with Original Class Plaintiffs' sampling analysis, to apportion AIG's estimated underreporting of workers compensation insurance premium by calendar year and state.  By "apportion" I mean the assigning of the overall estimate of underreporting to individual states and calendar years.

## II.   Data and Information Considered

8.   In preparing this Declaration, I relied upon my skill, knowledge, education, experience, and training, as well as publicly available information and other materials.

9.   The primary data sources used in the analyses described herein are AIG's own workers compensation premium and loss files.  In addition, I relied on information regarding the allocation of premium across calendar years provided to me by Mr. Kevin Ryan, a former President of the NCCI, retained by Original Class Plaintiffs for his expertise in the WC insurance industry.

10.   In the work I have conducted in this matter and in the work I have conducted under the direction of Dr. Arnold Barnett, the Original Class Plaintiffs' expert statistician, I have been assisted by professionals at Analysis Group.  Analysis Group is a consulting firm that assists law firms, corporations, and the Government on a wide variety of financial matters as they relate to legal issues.  Employees working on this matter under my direction and supervision are trained in statistics, economics, and data programming.

11.   My work in this matter is ongoing.  I may supplement this Declaration if additional information becomes available.

2

OCP APPENDIX 00149

### III.    AIG's Data Used in the Sampling Process

12.    The primary data sources used in the Original Class Plaintiffs' sampling analyses are premium and loss data from AIG's electronic records for Divisions 50 and 55/51.  Division 51/55 data come from AIG's so-called 5110 database; AIG's Actuarial Department provided the Division 50 data. AIG has represented that these are the electronic datasets that it provided to the NAIC Examiner-In-Charge, Mr. Leslie, and his consultant, Mr. Merlino.

13.    For the statistical sampling conducted by the Original Class Plaintiffs in this matter, the time period analyzed ranges from effective years 1977 to 1996, which is the period encompassed by the electronic data AIG provided.  As I discuss in more detail below, in AIG's data "effective" and "calendar" dates need not be the same—though one can translate between the two.  Some of the key variables considered by the experts are the effective and booking dates of AIG's policies, the line of business corresponding to the premium or losses reported by AIG (such as workers compensation, general liability, and auto liability), the premium reported by AIG, and the reported losses that AIG incurred.

### IV.    Construction of Populations for Sampling

14.    As described in Dr. Barnett's Declaration, the AIG data were divided into four sets.[1]  Within each set, in accordance with the Sampling Plan (i.e., "Dr. Kadane's Final Proposed Sampling Plan for AIG Divisions 55/51 and 50", approved by Dr. Kadane on July 28, 2010 and by the Court on August

---

[1] These are described in Dr. Barnett's Declaration as the Set of 300, the Set of 100, the Set of 161, and the Set of 25.

OCP APPENDIX 00150

12, 2010) subsets of the data were created that further divided the sets into separate populations by year and other characteristics. AIG was provided an opportunity to examine and object to the populations assembled prior to Dr. Kadane's random selection of contracts, but AIG did not interpose any objection to the population sets I assembled.

15.  Both the Division 50 and 55/51 datasets contain information at the policy level. To create the populations to be used by Dr. Kadane, I aggregated the data provided by AIG into contract/effective-year combinations. For a given effective year a "contract" is the identifier that allows one or several related policies to be grouped together. And, for a given contract there will be only one "effective year", though perhaps several calendar year records.

16.  The contracts included in the databases were assigned to 32 different populations:

(a)  Twenty populations of Division 55/51 contracts with positive WC premium and total direct premium over $100,000 (one population for each effective year ranging from 1977 to 1996). From each of these 20 populations, Dr. Kadane randomly chose 15 contracts, which totaled 300 contracts ("Set of 300").

(b)  Ten populations of Division 50 contracts with positive WC premium and total direct premium over $100,000 (one population for each two-effective-year band ranging from 1977 to 1996). From each of these ten populations, Dr. Kadane randomly chose ten contracts, which totaled 100 contracts ("Set of 100").

(c)  One population of Division 55 contracts ranging from effective year 1977 to 1996 for which WC losses are reported but no WC

4

premium is included in AIG's electronic data. From this population, Dr. Kadane drew 25 contracts ("Set of 25").

(d) One population of Division 55 contracts ranging from effective year 1977 to 1996 for which positive WC losses are reported electronically but are associated with zero or negative WC premium. This population includes 161 contracts that were sampled "with certainty." In other words, all 161 contracts were reviewed ("Set of 161").

17. After receiving Dr. Kadane's sample-contract designations, I transferred the appropriate electronic files to Mr. Ryan and his team of professional underwriting and regulatory experts, in order to assist with his analysis of underreporting. These electronic files included summaries of the premium and loss data corresponding to the sample-contract selections as well as potentially "linked" contracts identified by AIG.[2] This information was used by Mr. Ryan and his team to calculate underreporting.

18. After Mr. Ryan and his team calculated underreporting of WC premium for the sampled files, Dr. Barnett and professional staff at Analysis Group extrapolated the sample findings to the greater population of contracts at issue in this case. This is discussed in detail in Dr. Barnett's Declaration.

## V.   Conversion from Effective Years to Calendar Years

19. Effective year is determined from the AIG data as the year in which a policy was originally issued. Booked year is defined as the calendar year in which premium for a policy was actually booked.

---

[2] "Linked" contracts are contracts that need to be analyzed jointly, that is treated as one contract for purposes of determining underreporting, and further analysis such as extrapolation to the populations. Linked contracts were identified by AIG and verified by Mr. Ryan and his team.

5

20. Underreporting findings for each of the sampled sets (*i.e.* Sets of 300, 100, 25, and 161), were made by Mr. Ryan and his team on an effective-year basis.

21. For the vast majority of contracts included in the Divisions 50 and 55/51 datasets, effective year and booking year (also referred to as calendar year) are available. Therefore, one can calculate for each effective year the distribution of AIG's reported WC premium across calendar years.

22. For each of the four sampled sets, I computed the distribution of AIG's reported effective-year premium across calendar years. For example, assume that contracts that originated in effective year 1986 include in total $100 of WC premium booked in years 1986 and 1987. Further assume that $90 of WC premium was booked in 1986 while $10 of WC premium was booked in 1987. This implies that for effective year 1986, 90 percent of booked premium was allocated to calendar year 1986 and 10 percent to calendar year 1987. Analogous calculations were made for each effective year between 1977 and 1996.

23. The results of this exercise represent the allocation of AIG's *reported* effective-year WC premium to calendar year.

24. Mr. Ryan also provided me with the distribution of effective-year WC premium to calendar year that AIG *should have reported*. Using this distribution, and Dr. Barnett's figures for underreporting, I then allocated the effective-year WC premium that AIG *should have reported* to calendar year.

25. By subtracting what AIG *reported* as WC premium from what AIG *should have* reported as WC premium, I arrived at the underreporting values associated with each effective-year and calendar-year combination.

6

26. Calendar-year underreporting for any given year is comprised of multiple effective-year underreporting estimates. Using the example of calendar year 1986, the estimate of underreporting comes from effective year 1986—when most of the premium was booked—as well as prior effective years 1985, 1984, back to 1977.

## VI. Allocation to States

27. The 5110 premium dataset provided by AIG does not include a variable that identifies the state in which WC premium was booked. Accordingly, and as Mr. Leslie states, the allocation of underreporting to states must be done "in proportion to some proxy."[3] The proxy used by AIG, and the proxy specifically provided for in the Court-Approved Sampling Plan, relies on allocation of underreported premium according to the amount of known losses by state, for the year.[4] This is the methodology I employ as well.

28. For each effective year, I derived the proportion of WC Capped losses associated with each state. For a given effective year, the allocation for a particular state is computed as the total WC Capped losses reported by AIG associated with that particular state as a percentage of the total WC capped losses reported by AIG for all states.

## VII. Apportionment of Underreporting

29. The final step in my preparation of the data is, for each of the four sampled sets of contracts, to apply the appropriate state percentages to the

---

[3] Leslie Declaration, at ¶46.

[4] *See* Sampling Plan at ¶ 4(3) (footnote 5) and ¶ 14.

7

OCP APPENDIX 00154

underreporting values associated with each effective-year and calendar-year combination.  The total underreporting from any given calendar-year and state combination will include underreporting values associated with multiple effective years.  This information was provided to Prof. Scott Harrington for purposes of calculating damages.

30. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Signed: _____

Jeffrey A. Cohen


Dated: April 26, 2011

8

# APPENDIX A

OCP APPENDIX 00156

## JEFFREY A. COHEN
**Managing Principal**

Phone: 312-291-5626      180 North Stetson Avenue
Fax: 312-291-5601      Suite 2300
jcohen@analysisgroup.com      Chicago, IL 60601

Mr. Cohen has over 23 years' experience as an expert in intellectual property, antitrust, valuation, and securities matters, and has testified in federal courts on various aspects of economic damages. He specializes in analyzing financial institutions and high-technology industries including computer software and hardware, medical devices, and entertainment. Mr. Cohen is the author of *Intangible Assets: Valuation and Economic Benefit* (John Wiley & Sons, 2005). He has worked on behalf of significant corporations and government agencies including Wells Fargo, Microsoft, Allstate Insurance, Johnson & Johnson, Oracle, United Airlines, TWA, DaimlerChrysler, H&R Block, Motorola, Anheuser-Busch, and the U.S. Department of Justice.

## EDUCATION

M.B.A.      Finance, Strategy, Graduate School of Business, The University of Chicago

B.A.      Political Science, with Honors, The University of Chicago

## PROFESSIONAL EXPERIENCE

2008 – Present Analysis Group, Inc., Managing Principal

1996 – 2008      Chicago Partners, LLC, Principal

1989 – 1995      Lexecon, Inc., Economist

1987 – 1989      Lexecon, Inc., Research Associate

## TESTIMONY AND EXPERT REPORTS

- Deposition in <u>SCF Arizona v Wachovia Bank, N.A.</u>, United States District Court, Southern District of New York, No. 09-CV-9513 (WHP). (February 24, 2011)

- Expert Report in <u>SCF Arizona v Wachovia Bank, N.A.</u>, United States District Court, Southern District of New York, No. 09-CV-9513 (WHP). (January 28, 2011)

- Expert Report in <u>Intellivision, A Joint Venture, Bruce Adams, John Daniels and Paul Hoffman, v Microsoft Corporation</u>, United States District Court, Southern District of New York, No. 07-CV-4079(JGK)(MHD). (January 22, 2010)

**OCP APPENDIX 00157**

*Jeffrey A. Cohen*

- Supplemental Expert Report in <u>Tyco Healthcare Group, LP d/b/a United States Surgical v. Ethicon Endo-Surgery, Inc.</u>, United States District Court, District of Connecticut, No. 3:04-CV-01702-JBA. (November 14, 2007)

- Testimony in <u>Varsity Gold, Inc. v. Brad Durham, et al.</u>, Superior Court of the State of Arizona, Maricopa County, No. CV 2005-003954. (April 30, 2007)

- Deposition in <u>Tyco Healthcare Group, LP d/b/a United States Surgical v. Ethicon Endo-Surgery, Inc.</u>, United States District Court, District of Connecticut, No. 3:04-CV-01702-JBA. (February 20, 2007)

- Deposition in <u>Lendingtree, LLC v. Lowermybills, Inc. d/b/a Lowermybills.com</u>, United States District Court, Western District of North Carolina, Charlotte Division, No. 3:05CV153. (October 25, 2006)

- Expert Report in <u>Tyco Healthcare Group, LP d/b/a United States Surgical v. Ethicon Endo-Surgery, Inc.</u>, United States District Court, District of Connecticut, No. 3:04-CV-01702-JBA.  (October 11, 2006)

- Expert Report in <u>Lendingtree, LLC v. Lowermybills, Inc. d/b/a Lowermybills.com</u>, United States District Court, Western District of North Carolina, Charlotte Division, No. 3:05CV153.  (September 29, 2006)

- Testimony in <u>American Seating Company v. USSC Group, Inc.</u>, United States District Court, Western District of Michigan, Southern Division, No. 1:01CV578. (June 21-22, 2006)

- Deposition in <u>American Seating Company v. USSC Group, Inc.</u>, United States District Court, Western District of Michigan, Southern Division, No. 1:01CV578. (April 5, 2006)

- Expert Report in <u>American Seating Company v. USSC Group, Inc.</u>, United States District Court, Western District of Michigan, Southern Division, No. 1:01CV578. (March 30, 2006)

- Deposition in <u>Morris Materials Handling, Inc. v. KCI Konecranes International PLC.</u>, United States District Court, Eastern District of Wisconsin, No. 03-C-0975. (November 9, 2005)

- Expert Report with John Garvey in <u>Morris Materials Handling, Inc. v. KCI Konecranes International PLC.</u>, United States District Court, Eastern District of Wisconsin, No. 03-C-0975. (October 6, 2005)

- Testimony in <u>Varsity Gold, Inc. v. Brad Durham, et al.</u>, Superior Court of the State of Arizona, Maricopa County, No. CV 2005-003954. (August 23-24, 2005)

- Testimony in <u>Hagale Industries, Inc. v. Lands' End, Inc.</u>, United States District Court, Western District of Missouri, Southern Division, No. 00-3474-CV-S-4. (December 17, 2002)

- Deposition in <u>Hagale Industries, Inc. v. Lands' End, Inc.</u>, United States District Court, Western District of Missouri, Southern Division, No. 00-3474-CV-S-4. (November 6, 2002)

*Jeffrey A. Cohen*

- Affidavit with W. Dana Northcut in <u>Hagale Industries, Inc. v. Lands' End, Inc.</u>, United States District Court, Western District of Missouri, Southern Division, No. 00-3474-CV-S-4. (October 4, 2002)

- Expert Report in <u>Zeftek, Inc. v. Holland Company</u>, American Arbitration Association, No. 51-133-00130-00 01 (JAR). (May 23, 2001)

- Affidavit in <u>Inhalation Plastics, Inc. an Illinois Corporation, d/b/a IPI Medical Products v. Johnson & Bell, Ltd.</u>, Circuit Court of Cook County, Illinois, No. 97 L 02609. (September 27, 2000)

- Expert Report in <u>Optical Products Development Corp. v. Dimensional Media Associates, Inc.</u>, United States District Court, Southern District of New York, No. 00-CV-1714 (JSR). (August 17, 2000)

- Declaration in <u>Alexander Binzel Corporation and Alexander Binzel GMBH & Co. v. KG Nu-Tecsys Corporation and Karl-Heinz Binzel</u>, United States District Court, Northern District of Illinois, Eastern Division, No. 91 C 2092. (May 4, 1999)

*Jeffrey A. Cohen*

**SELECTED CONSULTING EXPERIENCE**

- <u>Carolinas Healthcare System v. Wachovia Bank et al</u>. Reed Smith (2010)

- <u>Board of Trustees of the Southern California IBEW v. Bank of New York Mellon Corporation et al.</u>  Paul Weiss (2010)

- <u>WCRA et al. v. Wells Fargo</u>. Zelle Hofmann (2009)

- <u>Hawaiian Iron Workers v. Calpine Corp.</u> Kirkland & Ellis (2008)

- <u>Boston Scientific v. Cordis</u>. Sidley Austin LLP (2007)

- <u>Eolas v. Microsoft</u>. Sidley Austin LLP (2007)

- <u>Lynne Carnegie, et al. v. Household International, H&R Block, et al.</u>, United States District Court, Northern District of Illinois, No 98C 2178. Jenner & Block LLP (2006)

- <u>Applied Medical Resources Corp. v. Johnson & Johnson, Inc.</u>, Central District of California, No. SACV 03-1329. Sidley Austin LLP (2005-2006)

- <u>Conmed Corp. v. Johnson & Johnson</u>, United States District Court, Southern District of New York, No. 03-CV8800. Weil, Gotshal & Manges LLP (2005-2006)

- <u>IPXL Holdings v. Amazon</u>, United States District Court, Eastern District of Virginia, No. 04-CV-70. Kirkland & Ellis LLP (2004)

- <u>Microsoft Antitrust Litigation</u>, including <u>U.S. Department of Justice (remedies)</u>, <u>Sun Microsystems v. Microsoft</u>, and <u>class action litigation in California, Arizona, Minnesota, Maryland, and Iowa</u>. Sullivan & Cromwell LLP, Heller Ehrman LLP (2002-2006)

- <u>SouthTrust of Georgia, Inc. v. United States</u>, United States Court of Federal Claims, No. 95-773-C. U.S. Department of Justice (2001)

- <u>Trans World Airlines, Inc. Bankruptcy</u>. Kirkland & Ellis LLP (2001)

- <u>LRP Publications Inc. v. IHS Information Handling Services Inc.</u>, No. 00-CV-1859 and 00-CV-3767. Bell, Boyd & Lloyd LLP (2001)

- <u>Valeo Electrical Systems v. Siemens Automotive Corp.</u>, United States District Court, Eastern District of Michigan, No. 99-CV-40430. Kirkland & Ellis LLP (2001)

- <u>Siemens Medical Systems, Inc., CTI, Inc., CTI PET Systems, Inc., Terry Douglass, and Ronald Nutt</u>, American Arbitration Association. Kirkland & Ellis LLP (2001)

- <u>Venture Industries Corporation, and its affiliates v. Elizabeth Chalmers, Trustee for Autostyle Plactics, Inc., Bayer Corporation, Mascotech, Inc., Citicorp Venture Capital, Ltd., and Treasurer of the State of Michigan</u>, Circuit Court for the County of Kent, State of Michigan, No. 99-07219-CK. Jenner & Block LLP (2000)

- <u>Anderson, et al. (Plaintiffs) and The Federal Deposit Insurance Corporation, as Successor to the Rights of  CenTrust Bank, a State Savings Bank (Plaintiff Intervenor) v. United</u>

*Jeffrey A. Cohen*

> <u>States of America</u>, United States Court of Federal Claims, No. 91-34. U.S. Department of Justice (1999)

- <u>High Fructose Corn Syrup Antitrust Litigation</u>, United States District Court, Central District of Illinois, Peoria Division, No. 95 1477. Jenner & Block LLP (1998)

- In addition, Mr. Cohen has consulted to:

  - o  BP
  - o  IGT (gaming)
  - o  Playboy Enterprises
  - o  Hershey's
  - o  Ortho Biotech
  - o  Marsulex (sulfuric acid)
  - o  Gibson Music
  - o  Multimatic (auto industry)
  - o  Sportexe (astroturf)
  - o  Syntax Brillian (vchip)
  - o  Anheiser-Busch
  - o  United Airlines
  - o  Oracle
  - o  Motorola

## PUBLICATIONS/PRESENTATIONS

*Consumer Confusion or Profitable Promotion?*, Panelist in Copyright/Trademark Session, Corporate Intellectual Property Law Conference, February 8, 2011.

*The Entire Market Value Rule and the End of Casual Empiricism,* Presentation with Sidley Austin, Chicago, Illinois, October 29, 2010.

*Economic Experts: When To Select, Who To Select, and How To Work with Them*, Part 3 of an 8-part series, Litigating and Trying Complex Civil Antitrust Class Actions, ABA Teleconference, January 7, 2009.

*The "Entire Market Value Rule": An Economic Perspective*, Corporate Intellectual Property Law Conference, Law Bulletin Seminar, February 19, 2008.

*Intangible Assets: Valuation and Economic Benefit*, John Wiley & Sons, 2005.

*MPx – The future of MP3 and the Record Industry*, working paper (2001).

## OTHER

Editorial Advisory Board Competition Law360 (2010)