## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Plaintiffs, | ) | No. 07 CV 2898 |
| vs. | ) ) | |
| ACE INA HOLDINGS, INC., et al., | ) ) | District Judge Robert W. Gettleman |
| Defendants. | ) ) ) | Magistrate Judge Sidney I. Schenkier |

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, et al., individually and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) | No. 09 CV 2026 |
| Plaintiffs, | ) ) | District Judge Robert W. Gettleman |
| vs. | ) ) | Magistrate Judge Sidney I. Schenkier |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

## <u>NOTICE OF FILING</u>

TO:     All Parties of Record (ECF Filing)

PLEASE TAKE NOTICE that on August 4, 2011, we filed with the United States District Court for the Northern District of Illinois the **PROPOSED ESCROW AGREEMENT FOR SETTLEMENT PAYMENTS**, a copy of which is attached hereto.

DATED: August 4, 2011

Respectfully submitted,

ACE INA HOLDINGS, INC., AUTO-
OWNERS INSURANCE CO., COMPANION
PROPERTY & CASUALTY INS. CO.,
FIRSTCOMP INSURANCE CO., THE
HARTFORD FINANCIAL SERVICES
GROUP, INC., TECHNOLOGY INSURANCE
CO., and THE TRAVELERS INDEMNITY
COMPANY

By   /s/ Frederic R. Klein
     One of Their Attorneys

Frederic R. Klein
William C. Meyers
Kerry D. Nelson
Nury R. Agudo
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, IL 60603
(312) 201-4000

AMERICAN INTERNATIONAL GROUP,
INC., et al.,

By   /s/ Stephen Novack
     One of Their Attorneys

Stephen Novack
Andrew D. Campbell
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000

## ESCROW AGREEMENT FOR SETTLEMENT PAYMENTS

This ESCROW AGREEMENT FOR SETTLEMENT PAYMENTS (the "Escrow Agreement") is entered into by and between AIG[1]; Class Counsel; and U.S. Bank National Association, as escrow agent.

WHEREAS, AIG was named as defendants in the putative class action titled *Safeco Insurance Company of America, et al. v. American International Group, Inc., et al.*, No. 09-CV-2026 (N.D. Ill.) (the "Class Action"), in which Settling Plaintiffs alleged that AIG engaged in certain conduct that violated federal statutory and state common law, as well as Plaintiffs and Counter-Defendants in the related litigation captioned *American International Group, Inc., et al., v. ACE INA Holdings, Inc., et al.*, No. 07-CV-2898 (the "07 Action"); and

WHEREAS, Settling Plaintiffs and AIG entered into a Settlement Agreement dated [month] [day], 2011 (the "Settlement Agreement"); and

WHEREAS, the Settlement Agreement requires AIG to pay or cause funds to be paid into the Escrow Account ten (10) Business Days following entry of the Court's Preliminary Approval Order;

WHEREAS, the Execution Date of the Settlement Agreement was [month] [day], 2011, and the Court entered a Preliminary Approval Order on [month] [day], 2011.

NOW, THEREFORE, AIG, Class Counsel, and [ESCROW AGENT] agree as follows:

1. **Definitions and Interpretations**

   a. Definitions

---

[1] Capitalized terms in this Escrow Agreement have either (i) the meaning ascribed in this Escrow Agreement, or (ii) the meaning ascribed in the Settlement Agreement.

(i)    "Deposit Date" means a date that is ten (10) Business Days following the Preliminary Approval Date, as defined in the Settlement Agreement.

(ii)    "Escrow Account" means Account No _____, an interest-bearing account, established and administered pursuant to this Escrow Agreement, into which the WCF Payment and the Supplemental Payment shall be deposited, as described herein.

(iii)    "Escrow Agent" means U.S. Bank National Association to whom Escrow Expenses shall be paid pursuant to Section 4.

(iv)    "Escrow Funds" means all monies that are held in the Escrow Account.

(v)    "Final Disputed Amounts" means the aggregate, without duplication, of the following: (i) the portion of the Final Escrow Expenses (if any) disapproved by AIG or Class Counsel with respect to which the Escrow Agent has, by the date required in Section 6 below, expressed an intention to submit a dispute to the Court pursuant to Section 6 below and (ii) the portion of disapproved Escrow Expenses (if any) that are the subject of a dispute that is pending before the Court as of the date the Escrow Agent receives a Joint Written Notice that this Escrow Agreement is to be terminated pursuant to Section 5.b.

(vi)    "Final Escrow Expenses" means Escrow Expenses respecting which the Escrow Agent has not yet sought approval as of the date on which the Escrow Agent receives a Joint Written Notice that the Settlement Agreement has been terminated pursuant to its terms.

(vii)    "Joint Written Notice" means a written instruction or notice of the occurrence of an event provided to the Escrow Agent that is signed by AIG and Class Counsel.

(viii)    "Settlement Agreement Termination Date" means the effective date of a termination of the Settlement Agreement.

b.    Unless stated otherwise, a reference to a Section means a Section of this Escrow Agreement.  Capitalized terms used herein not otherwise defined shall have the meanings assigned to them in the Settlement Agreement.  The Escrow Agent shall be provided a copy of the Settlement Agreement for reference purposes only, and without limiting any other provisions of this Escrow Agreement, the Escrow Agent shall have no duties, obligations or liabilities arising under the Settlement Agreement.

c.    Section headings in this Escrow Agreement are for convenience only and shall not be construed as part of this Escrow Agreement.

**2.    Appointment of and Acceptance by Escrow Agent**

AIG and Class Counsel hereby jointly appoint U.S. Bank National Association  to act as the Escrow Agent for this Escrow Agreement, and U.S. Bank National Association hereby accepts this appointment and, upon receipt of the WCF Payment and the Supplemental Payment, agrees to act as the Escrow Agent pursuant to the terms and conditions set forth in this Escrow Agreement.

**3.    Deposits into the Escrow Account**

a.    Upon execution of this Escrow Agreement, the Escrow Agent shall establish the Escrow Account.  The Escrow Agent shall promptly verify to AIG and Class Counsel the establishment of the Escrow Account, and provide to AIG and Class Counsel all relevant account information.

b.    On or before the Deposit Date, AIG shall deposit or cause to be deposited, by wire transfer, certified check or other guaranteed funds, the WCF Payment and the Supplemental Payment into the Escrow Account.

c.    The Escrow Agent is instructed and authorized to invest all Escrow Funds in an interest-bearing U.S. dollar denominated money market deposit account of the Escrow Agent (which has ratings on its short-term deposits of "A-l+" by S&P, "P-1" by Moody's and "F1+" by Fitch) described on Schedule A hereto.

d.    The Escrow Agent shall hold the Escrow Funds in the Escrow Account as provided in this Escrow Agreement and shall not withdraw any proceeds except as provided in this Escrow Agreement.  The Escrow Funds (as such funds may be reduced by distributions required to be made under this Escrow Agreement) shall be held only for the purposes and subject to the terms and conditions set forth in this Escrow Agreement, and shall not be subject to any lien, attachment, trusteeship or any other judicial process.  No third parties or their respective creditors shall have any right to, or claim respecting, the Escrow Funds.

e.    Any and all income earned on the Escrow Funds in the Escrow Account shall accrue to and become part of the account on which it was earned.

f.    The Escrow Account shall be held separately and segregated from all other funds or accounts held by the Escrow Agent.

4.    **Payment of Escrow Expenses and Administrative Expenses**

a.    **Escrow Expenses**.  Subject to Section 6 below, the Escrow Agent shall be reimbursed for Escrow Expenses, which reimbursements shall be made from the Escrow Funds pursuant to the following terms:

(1)    The Escrow Agent shall prepare periodic invoices for its fees and expenses.

(2)    Invoices for Escrow Expenses shall be submitted by the Escrow Agent to AIG and Class Counsel on a timely basis, and in no event later than the month following the month in which the Escrow Expenses were incurred.

(3)     Upon their receipt of an invoice for Escrow Expenses, AIG and Class Counsel shall, within ten (10) days of receiving the invoice, advise the Escrow Agent in writing if they approve or disapprove (provided that approval shall not be unreasonably withheld) the invoice or any portion of it; provided further that if both AIG on the one hand, and Class Counsel, on the other, fail to disapprove all or a portion of the invoice within fourteen (14) days of receiving the invoice, such invoice shall be deemed approved in its entirety.

(4)     Upon being notified in writing of approval of an invoice (or upon the passage of fourteen (14) days time as provided above) for Escrow Expenses by AIG and Class Counsel, the Escrow Agent is authorized to reimburse itself respecting such Escrow Expenses (or the approved portion of such Escrow Expenses) out of Escrow Funds.

(5)     Upon being notified in writing of disapproval of an invoice (or any portion of an invoice) for Escrow Expenses by AIG and Class Counsel, the Escrow Agent (i) is authorized to pay to itself any portion (if any) of the Escrow Expenses that AIG and Class Counsel have approved and (ii) may, in its discretion, submit any dispute with respect to disapproved Escrow Expenses (or any portion thereof) to the Court pursuant to Section 6 below.

b.     **Administrative Expenses**.  Administrative Expenses shall be paid to the Administrator from the Escrow Account pursuant to the following terms:

(1)     Invoices for Administrative Expenses shall be submitted by Settlement Class Counsel to the Escrow Agent for payment.

(2)     Within ten (10) days of the receipt of an invoice for Administrative Expenses, the Escrow Agent shall pay the invoice (or a portion of the invoice if so directed by Settlement Class Counsel).

   c.  **Escrow Agent to Provide Accounting, File Tax Forms**.  The Escrow Agent shall, within five (5) Business Days following the end of each calendar month in which the Escrow Account is in existence, provide to AIG and Class Counsel the following information respecting the Escrow Account: (i) an accounting of all Escrow Funds paid out of the Escrow Account during such calendar month, including amounts paid to the Escrow Agent, (ii) the interest earned on the Escrow Account during such calendar month and (iii) the balance of the Escrow Account as of the date of the accounting.  The Escrow Agent shall also be responsible for filing any tax forms that are necessary respecting the Escrow Account, including federal and state tax returns required to be filed on IRS Form 1120-SF or a similar state form; provided that the Trustee shall have no 1099 or W-2 reporting obligations with respect to any compensation, income or other benefits paid to claimants or counsel.  The Escrow Agent may hire and rely on accountants and other agents for tax preparation, reporting and filing, and the reasonable cost of such accountants or other agents shall be considered a reasonable Escrow Expense.

   5.  **Distributions from the Escrow Account**

   a.  **Upon the Occurrence of the Final Settlement Date**

   (1)  If the Final Settlement Date occurs, AIG and Class Counsel shall provide Joint Written Notice to the Escrow Agent within five (5) Business Days advising the Escrow Agent of the occurrence of the Final Settlement Date, including the date on which the Final Settlement Date occurred.

   (2)  Within ten (10) Business Days following the Final Settlement Date, the Escrow Agent shall provide to Class Counsel any outstanding invoices for all Final Escrow Expenses (to the extent not previously invoiced).

   (3)  Within twenty (20) Business Days following the Final Settlement Date, Class Counsel shall advise the Escrow Agent in writing if it approves or

disapproves any invoices or any portion of invoices regarding Final Escrow Expenses; provided that if Settlement Class Counsel fails to disapprove all or a portion of any invoice received pursuant to Section 4 within twenty-five (25) Business Days following the Final Settlement Date, such invoice shall be deemed approved in its entirety; provided further that if Settlement Class Counsel disapproves in writing any invoice (or portion of any invoice) relating to Final Escrow Expenses, the Escrow Agent shall, within twenty-five (25) Business Days following the Final Settlement Date, notify Settlement Class Counsel in writing if the Escrow Agent intends to submit a dispute regarding such disapproval to the Court pursuant to Section 6 below.

   (4) Within twenty (20) Business Days following the Final Settlement Date, the Escrow Agent shall disburse and distribute Escrow Funds as follows:

    (i) the portion of the Final Escrow Expenses approved by AIG and Class Counsel to the Escrow Agent;

    (ii) the balance of any outstanding invoice for Administrative Expenses as directed by Class Counsel;

    (iii) the balance of the Escrow Funds to the Cash Settlement Account;

    (iv) to the extent there are any Final Disputed Amounts at the time the distribution pursuant to this Section occurs, the Escrow Agent shall retain Escrow Funds in the Escrow Account in an amount equal to the Final Disputed Amounts until such time as the dispute(s) regarding the Final Disputed Amounts are resolved pursuant to Section 6 below.

   **b.** **Upon Termination of the Settlement Agreement**

   (1) If a Settlement Agreement Termination Date occurs, AIG and Class Counsel shall provide Joint Written Notice to the Escrow Agent within five (5)

Business Days following a Settlement Agreement Termination Date advising the Escrow Agent of a Settlement Agreement Termination Date.

(2)     Within ten (10) Business Days following a Settlement Agreement Termination Date, the Escrow Agent shall provide to AIG any outstanding invoices for all Final Escrow Expenses (to the extent not previously invoiced).

(3)     Within twenty (20) Business Days following a Settlement Agreement Termination Date, AIG shall advise the Escrow Agent in writing if it approves or disapproves any invoices or any portion of invoices regarding Final Escrow Expenses; provided that if AIG fails to disapprove all or a portion of any invoice received pursuant to Section 4 within twenty-five (25) Business Days following a Settlement Agreement Termination Date, such invoice shall be deemed approved in its entirety; provided further that if AIG disapproves any invoice (or portion of any invoice) relating to Final Escrow Expenses, the Escrow Agent shall, within twenty-five (25) Business Days following a Settlement Agreement Termination Date, notify AIG in writing if the Escrow Agent intends to submit a dispute regarding such disapproval to the Court pursuant to Section 6 below.

(4)     Within twenty (20) Business Days following a Settlement Agreement Termination Date, the Escrow Agent shall disburse and distribute or take other action with respect to the Escrow Funds as follows:

(i)     the portion of the Final Escrow Expenses approved by AIG to the Escrow Agent;

(ii)     the balance of any outstanding invoice for Administrative Expenses as directed by AIG;

(iii)     an amount equal to the Supplemental Payment as directed by AIG;

(iv)     the balance of the Escrow Funds to the Workers Compensation Fund; and

(v)     To the extent there are any Final Disputed Amounts at the time the distribution pursuant to this Section occurs, the Escrow Agent shall retain Escrow Funds in an amount equal to the Final Disputed Amounts until such time as the dispute(s) regarding the Final Disputed Amounts are resolved pursuant to Section 6 below.

**6.     Settlement of Disputes**

a.     Any issue, claims and/or disputes arising in connection with this Escrow Agreement, including any disputes regarding the payment of Escrow Expenses or Final Escrow Expenses, shall be submitted to the Court for resolution; provided that any submission of a dispute to the Court shall be subject to the following:

(1)     any submission regarding a dispute shall be made within the time periods set out in this Escrow Agreement; provided that if there is no specific time period regarding a particular dispute, the submission shall be made within twenty (20) Business Days of the date on which the submitting party first learns of the conduct or act that gives rise to the dispute;

(2)     the party submitting a dispute to the Court shall provide notice of the submission pursuant to the notice provisions of this Escrow Agreement;

(3)     all parties agree to be bound by the determination of the Court regarding any issues, claims and/or disputes in connection with this Escrow Agreement, which determination shall not be subject to appeal.

b.      If the Escrow Agent is uncertain as to its duties or rights under this Escrow Agreement, or receives instructions, claims or demands from a party to the Escrow Agreement that, in its opinion, conflict with the terms of this Escrow Agreement, it may refrain from taking action in connection with the Escrow Funds or such funds with respect to which such uncertainty or conflict exists, until it is able to obtain a resolution of the issue pursuant to this Section.  During the period in which the issue remains unresolved, the Escrow Agent's sole obligation with respect to the Escrow Funds that are the subject of the dispute shall be to keep safely such Escrow Funds and related books and records it holds under this Escrow Agreement; provided that with respect to all other Escrow Funds as to which there is no dispute, the Escrow Agent shall be bound by the terms and conditions of this Escrow Agreement.

c.      EACH OF THE PARTIES IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDINGS ARISING OUT OF, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, OR ITS BREACH, TERMINATION OR VALIDITY. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT:

(1)      NO REPRESENTATIVE, AGENT OR ATTORNEY OR ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS WAIVER;

(2)      EACH SUCH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER,

(3)      EACH SUCH PARTY MAKES THIS WAIVER VOLUNTARILY; AND

(4)     EACH SUCH PARTY HAS BEEN INDUCED TO

ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL

WAIVERS AND CERTIFICATION IN THIS SECTION.

d.     The Escrow Agent shall distribute Escrow Funds retained pursuant

to this Section consistent with the rulings of the Court pertaining to such Final Disputed

Amounts; provided that upon notification that the Court has issued a ruling respecting any

dispute involving Final Disputed Amounts, the Escrow Agent shall, within five (5) Business

Days following receipt of a copy of such ruling, distribute the relevant Escrow Funds

accordingly.

### 7.     Termination of the Escrow Agreement

When all disputes regarding Final Disputed Amounts are resolved and the Escrow

Agent has distributed the relevant Escrow Funds accordingly, the Escrow Account shall

terminate; provided that if any Escrow Funds remain in the account at the time of termination

(and after all distributions required by Sections 5.b.(4)(i), (ii), and (iii) have been made), such

Escrow Funds shall be distributed as directed in writing by AIG or Defendants' Counsel.

### 8.     Provisions Regarding the Escrow Agent

a.     The Escrow Agent has no duties or responsibilities except those

expressly provided in this Escrow Agreement. The Escrow Agent has no liability under this

Escrow Agreement except for its own bad faith, gross negligence, willful misconduct or breach

of this Escrow Agreement.  It may rely on any Joint Written Notice which it reasonably believes:

(i) to be genuine; and (ii) to have been signed or presented by a proper person or persons.  The

Escrow Agent shall not be obligated to expend its own funds or take any legal action in

connection with the Escrow Account or this Escrow Agreement unless it has been indemnified to

its satisfaction.  The Escrow Agent may consult legal counsel selected by it in the event of any

dispute or question as to the construction of any of the provisions hereof or of its duties hereunder, and shall incur no liability in acting in accordance with the advice or instruction of such counsel. The Escrow Agent acts as Escrow Agent only and not personally. All persons shall therefore look solely to the Escrow Account and not to the Escrow Agent personally, for compensation with respect to any contract, obligation, or liability made or incurred by the Escrow Agent in good faith. The Escrow Account shall defend, indemnify, and hold the Escrow Agent harmless from and against any and all uninsured claims, liabilities, costs, damages, or expenses arising from any contract, obligation, or liability made or incurred by the Escrow Agent in good faith. Notwithstanding the foregoing, this indemnification shall not apply to any liability: (i) arising from a criminal proceeding where the Escrow Agent had reasonable cause to believe that its conduct was unlawful; or (ii) where the Escrow Agent is held to have acted with gross negligence or willful misconduct.

        b.      The Escrow Agent has no duties with respect to any agreement(s) with respect to the Escrow Funds other than as provided in this Escrow Agreement. The Escrow Agent has no interest in the Escrow Funds except as provided in this Escrow Agreement. This Section shall survive notwithstanding the termination of this Escrow Agreement or the Escrow Agent's resignation or removal.

        c.      The Escrow Agent shall keep proper books of record and account, and make full and correct entries of the receipts and disbursements in the Escrow Account.

        d.      In addition to the accountings that the Escrow Agent shall provide pursuant to Section 4.c. above, the Escrow Agent shall provide to AIG and/or Class Counsel, upon written request and without additional cost, a statement of transaction details on completion of any transaction involving the Escrow Account.

e.    The Escrow Agent may resign as escrow agent by giving sixty (60) days' notice by registered or certified mail to AIG and Class Counsel consistent with Section 9.f. below. Subject to Section 8.g. below, such resignation shall take effect at the end of such sixty (60) days or on the Escrow Agent's earlier receipt of Joint Written Notice of appointment of a new escrow agent.

f.    AIG and Class Counsel may jointly remove the Escrow Agent by sending the Escrow Agent a Joint Written Notice regarding such removal. Such removal shall be effective on the date set forth in such Joint Written Notice (the "Removal Date").

g.    Notwithstanding anything to the contrary in Sections 8.e. and 8.f., the resignation or removal of the Escrow Agent shall not be effective unless and until AIG and Class Counsel jointly appoint a successor escrow agent. If no Joint Written Notice of appointment of a new escrow agent has been delivered to the Escrow Agent within sixty (60) days after the Escrow Agent delivers its notice of resignation or by the Removal Date, the resigning or removed Escrow Agent may, at AIG's and Class Counsel's expense (which expense shall be paid out of the Escrow Funds), petition the Court for appointment of a successor escrow agent. The Escrow Agent's resignation or removal shall not discharge any liability or obligations of the Escrow Agent arising before the effective date of Escrow Agent's resignation or removal.

h.    AIG and Class Counsel shall jointly appoint a successor escrow agent to fill any vacancy resulting from (i) the Escrow Agent being dissolved or otherwise becoming incapable of acting, (ii) the Escrow Agent being taken over by a government official, agency, department or board, or (iii) the Escrow Agent's position becoming vacant for any other reason.

i.    AIG and Class Counsel shall cause any successor escrow agent appointed pursuant to this Escrow Agreement to execute, acknowledge and deliver to the Escrow Agent, and to AIG and Class Counsel an instrument in writing accepting its appointment, at which point the Escrow Agent shall deliver to the successor escrow agent, as directed in writing by AIG and Class Counsel, all property and moneys it holds under this Escrow Agreement, and the books of records and account (including the accounting described in Section 4.c. above), and any other information, required by the successor escrow agent to perform its obligations under the escrow agreement among AIG and Class Counsel and such successor escrow agent.

j.    AIG and Class Counsel shall release the Escrow Agent with respect to all claims, damages and liabilities for anything done or omitted by the Escrow Agent in performing its duties under this Escrow Agreement, except such claims that are based upon the Escrow Agent's bad faith, gross negligence, willful misconduct or breach of this Escrow Agreement.

k.    The Escrow Agent shall not be liable for special, indirect or consequential loss or damage (including lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

l.    The Escrow Agent is acting under this Escrow Agreement as a stakeholder only and is an independent contractor with respect to each party.  No provision of this Escrow Agreement is intended to create any principal, joint venture, partnership or debtor/creditor relationship between or among the Escrow Agent and any of the parties.

**9.    General Matters**

a.    This Escrow Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict of laws provisions.  All

disputes arising under this Escrow Agreement shall be resolved through the procedure described in Section 6 above.

b.     This Escrow Agreement is binding on and shall inure to the benefit of the parties' heirs, executors, administrators, legal representatives, successors and permitted assigns.

c.     This Escrow Agreement and any Joint Written Notice related hereto may be executed in one or more counterparts which, taken together, constitute one and the same instrument. Execution by facsimile or by an electronically transmitted signature shall be fully and legally binding on a party.

d.     No amendment or discharge of this Escrow Agreement, or waiver under it, shall be valid or binding unless set forth in writing and duly signed by the party against whom enforcement of the amendment, discharge or waiver is sought and by the Escrow Agent. Any such waiver shall waive only the specific matter described in the writing and shall not impair the rights of the party granting the waiver in any other respect or at any other time. Neither the waiver by a party of a breach of a provision of this Escrow Agreement, nor the failure by a party, on one or more occasions, to enforce a provision of this Escrow Agreement, or to exercise a right or privilege under this Escrow Agreement, shall constitute a waiver of any other breach of a similar nature, or a waiver of any of such provisions, rights or privileges under this Escrow Agreement.

e.     The invalidity or unenforceability of any provision of this Escrow Agreement in any jurisdiction shall not affect the validity or enforceability of the rest of this Escrow Agreement in that jurisdiction or the validity or enforceability of this Escrow Agreement (including that provision) in any other jurisdiction. If any restriction or provision of this Escrow

Agreement is held unreasonable, unlawful or unenforceable in any respect, such restriction or provision shall be interpreted, revised or applied in a manner that makes it lawful and enforceable to the fullest extent possible under law.

        f.      Notices, requests, demands and other communications under this Escrow Agreement shall be in writing and shall be deemed to have been given (unless otherwise specifically provided for in this Escrow Agreement) if delivered by hand, delivered by a nationally recognized overnight courier for next-day delivery, mailed (registered or certified mail, postage prepaid) or telecopied (which telecopy is confirmed by a transmission receipt):

*If to Class Counsel:*

Frederic R. Klein, Esq.
William C. Meyers, Esq.
Kerry D. Nelson, Esq.
Goldberg Kohn LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 201-4000
Facsimile: (312) 332-2196

*If to the AIG Parties:*

Michael B. Carlinsky, Esq.
Quinn Emanuel Urquhart &
  Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*and*

Stephen Novack, Esq.
Novack and Macey LLP
100 North Riverside Plaza
Chicago, IL 60606-1501
Telephone: (312) 419-6900
Facsimile: (312) 419-6928

*If to the Escrow Agent:*

U.S. Bank National Association
Corporate Trust Services
Attn: Grace Gorka
209 S. LaSalle Street, Suite 300
Chicago, IL 60604
Telephone: (312) 325-8907
Facsimile: (312) 325-8974

Notices, requests, demands and communications shall be deemed to have been given (i) on the date on which so hand-delivered (or, if not delivered before 5:00 p.m. Eastern Time, on the next Business Day), (ii) on the next Business Day if delivered by a nationally recognized overnight courier, (iii) on the third Business Day after the date on which mailed or (iv) on the date on which telecopied and confirmed (or, if telecopy does not occur before 5:00 p.m. Eastern Time on a Business Day, on the next Business Day).

g. The Escrow Agent represents and warrants that (i) this Escrow Agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligation and (ii) its execution, delivery and performance of this Escrow Agreement does not and will not violate any statute, law, rule or regulation.

h. Michael B. Carlinsky represents that (i) he is authorized to execute and deliver this Escrow Agreement on behalf of AIG and (ii) AIG's execution, delivery and performance of this Escrow Agreement does not and will not violate any statute, law, rule or regulation.

i. Frederic R. Klein represents that (i) he is authorized to execute and deliver this Escrow Agreement on behalf of Class Counsel and (ii) Class Counsel's execution, delivery and performance of this Escrow Agreement does not and will not violate any statute, law, rule or regulation.

j.     Each party shall take (or cause to be taken) such further actions to execute, deliver and file (or cause to be executed, delivered or filed) such further documents and instruments, and to obtain such consents, as may be necessary or reasonably requested to effectuate fully the purposes, terms and conditions of this Escrow Agreement.

k.     Except as provided in this Escrow Agreement, no party shall assign, encumber or otherwise transfer any of its rights and obligations under this Escrow Agreement to any person without the consent of the other parties.  Any such purported assignment, encumbrance or other transfer shall be void and unenforceable.

l.     The Escrow Agent shall keep, and shall cause its agents to keep, confidential the information it receives under this Escrow Agreement, except for:

(1)     information that is or becomes publicly known other than as a result of a breach of this Section;

(2)     information obtained by the Escrow Agent from sources other than AIG or any of them and not subject to a confidentiality obligation;

(3)     information requested or required to be disclosed (i) by a statute, law, rule or regulation, (ii) to any government agency or regulatory body having or claiming authority to regulate or oversee the Escrow Agent's business, (iii) under any subpoena, civil investigative demand or similar demand or request of a court, regulatory authority, arbitrator or arbitration to which the Escrow Agent or any affiliate, or an officer, director, employer or shareholder of the Escrow Agent or such affiliate, is a party, or (iv) to any affiliate, independent or internal auditor, agent, employee or attorney of the Escrow Agent having a need to know the information, provided that the Escrow Agent advises the recipient of the confidential nature of the information being disclosed; or

(4)     any other disclosure authorized by the person submitting such information.

m.     All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Escrow Agreement or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, or, when the act to be done is the filing of a paper in the Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

n.     To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust, or other legal entity, the Escrow Agent requires documentation to verify its formation and existence as a legal entity. The Escrow Agent may ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.  The parties hereto acknowledge that a portion of the identifying information set forth herein is being requested by the Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and they agree to provide any additional information requested by the Escrow Agent in connection with the Act or any similar legislation or regulation to which the Escrow Agent is subject, in a timely manner.

Executed this [__] day of [_____], 2011.

_____

AIG'S COUNSEL

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Michael B. Carlinsky, Esq.
Kevin S. Reed, Esq.
Jennifer J. Barrett, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

_____

SETTLEMENT CLASS COUNSEL

Frederic R. Klein, Esq.
Goldberg Kohn LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone: (312) 201-4000
Facsimile: (312) 332-2196

**ESCROW AGENT**

_____

U.S. BANK National Association, as
Escrow Agent

## SCHEDULE A

## U.S. BANK NATIONAL ASSOCIATION
## MONEY MARKET ACCOUNT AUTHORIZATION
## DESCRIPTION AND TERMS

The U.S. Bank Money Market account is a U.S. Bank National Association ("U.S. Bank") interest-bearing money market Escrow Account designed to meet the needs of U.S. Bank's Corporate Trust Services Escrow Group and other Corporate Trust customers of U.S. Bank. Selection of this investment includes authorization to place funds on deposit and invest with U.S. Bank.

U.S. Bank uses the daily balance method to calculate interest on this account (actual/365 or 366). This method applies a daily periodic rate to the principal balance in the account each day. Interest is accrued daily and credited monthly to the account. Interest rates are determined at U.S. Bank's discretion, and may be tiered by customer deposit amount.

The owner of the account is U.S. Bank as agent for its trust customers. U.S. Bank's trust department performs all account deposits and withdrawals. Escrow Accounts are FDIC Insured per depositor, as determined under FDIC Regulations, up to applicable FDIC limits.

### AUTOMATIC AUTHORIZATION

In the absence of specific written direction to the contrary, U.S. Bank is hereby directed to invest and reinvest proceeds and other available moneys in the U.S. Bank Money Market Account. The U.S. Bank Money Market Account is a permitted investment under the operative documents and this authorization is the permanent direction for investment of the moneys until notified in writing of alternate instructions.