# **EXHIBIT A**

AIG



## AIG Multi-State Examination

# Meeting With NWCRP

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --

-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --

August 11th, 2009



# Prior Discussion (May 1st, 2009) Recap

## New York Settlement Deficiencies

- New York Settlement reallocated only program adjustment premium which were subject to more significant misallocation issues, as opposed to including all premium to capture potential premium reallocation and resulting damages.
- Premium tax and residual market load factors utilized in the New York Settlement were based on readily available historical information. More in depth review confirms that certain settlement factors were overstated as a result of using this limited data.
- Certain assumptions were incorrect and artificially inflated damages.
- New York Settlement was based on the **RML Method** utilizing a Pool year's estimated ultimate operating loss, divided by the year's voluntary market premium. This method is inadequate due to:
  a) *Lack of transparency* - due to timing of assessments and factors utilized for each state;
  b) *Mechanical issues* - such as including amounts that are not yet due and owing to the Pools, not adjusting RML's to reflect additional "reallocated" premium, imposing RML damages in states where AIG was not a member of the Pool; and
  c) *Interest calculation* - methodology timing, for example, NYS method assigns estimated damages to years prior to the occurrence of the damages.

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --
-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --





# Prior Discussion (May 1st, 2009) Recap

## Cash Flow Calculation Methodology

The NAIC Lead Examiner agreed the **Cash Flow Method** is superior to the RML Method. The Cash Flow Method Reflects actual Pool mechanics where:

- Pool participants provide quota-share reinsurance by state/year
- Allocated shares are based on the proportion of voluntary market
- Pools operate on a cash basis – participants receive surpluses (distributions) and fund shortfalls (assessments)

Advantages compared to the RML Method include:

- Misreporting affects quota-share percentage only; total Pool cash flows remain constant; participants' share changes. Change in market share automatically reflects change in voluntary premium base. This reflects the same method used by Pool in reapportionment.
- Change in cash flow from misreporting determines both the amount and timing of any damages.
- Only information needed for damages are change in quota-share and actual Pool cash flows.
- Does not calculate as damages amount of Pool reserves for which no cash has been billed and none is due.
- Timing of damage for interest purposes is known exactly from the Pool cash flows; other method requires assumptions.

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --
-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --





## Prior Discussion (May 1st, 2009) Recap

### Reallocation Amounts

- Premium subject to reallocation $20.6 billion
- Premium reallocation $1,786MM to workers' compensation

### Settlement Calculations

- Core Damages: $151MM
- Interest: $59MM (Treasury rates in effect during each applicable year - simple interest )
- Subtotal: $210MM
- Reduction due to risk associated with ongoing litigation and AIG's Third Party Claims: ($63MM)
- **Total Settlement Offer: $147MM**

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --
-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --





# Results of Issues Subsequent to May 1st Discussion

| | Overview of Issue | Discussion |
|---|---|---|
| Premium Reallocation | Outstanding premium reallocation issues included: (1) Division 50 excess premium, (2) captive accounts, (3) certain guaranteed cost accounts, and (4) accounts believed to have no associated workers' compensation premium. | ▪ Created an additional $267MM (net) in reallocated premium compared to May 1st discussion.<br>▪ Lead Examiner agreed with amounts on 6/24/09. |
| Pre-Legacy Period | Accounts prior to 1985 policy year (pre-legacy) were excluded from the reallocation and damage calculations. | ▪ Agreed to reallocate Legacy Period premium transactions with respect to pre-Legacy policies. This resulted in a population of approximately $450 million of premium booked and developed $45 million of premium reallocated to workers' compensation. |
| Non-Cash Burdens | Consideration of potential "non-cash" burdens (greater net reinsurance assumed) on the residual market pool members. | ▪ The cash flow methodology provides a complete and appropriate accounting of any true economic damages potentially suffered by Pool members, and adding non-cash burdens would be double-recovery. In valuing an investment, the quantities to be considered are the future cash flows arising from the investment itself, and not the accounting entries.<br>▪ Have not discovered any awards in arbitration or similar venues awarding damages resulting from non-cash burdens. Payment and collection disputes arise routinely, but courts have not recognized surplus impairment as a valid theory upon which recoveries may be grounded. |

*Resolution of these issues results in an agreed reallocation figure of $2.1Billion to workers' compensation*

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --

-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --





## Settlement Proposal With NWCRP Comparison to May 1st Discussion

| | AIG Proposal May 1st, 2009 | AIG Proposal August 11th, 2009 | Difference |
|---|---|---|---|
| **Legacy Period (1985-1996)** | | | |
| Premium Reallocation | $ 1,786.0 | $ 2,053.3 | $ 267.3 |
| Core Damages | 151.0 | 169.8 | 18.8 |
| Interest Amount | 59.0 | 130.6 | 71.6 |
| ***Subtotal: Legacy*** | $ 210.0 | $ 300.5 | $ 90.5 |
| **Pre-Legacy Period (Pre-1985)** | | | |
| Pre-Legacy Period Premium Reallocation | | 45.0 | 45.0 |
| Pre-Legacy Period Damages | - | 3.7 | 3.7 |
| Pre-Legacy Period Interest | | 2.9 | 2.9 |
| ***Subtotal: Pre-Legacy*** | $ - | $ **6.6** | $ **6.6** |
| **Premium Reallocation Damage Calculation** | $ **210.0** | $ **307.1** | $ **97.1** |
| **Other Considerations** | | | |
| Litigation Discount / Settlement Incentive / Non-NCCI Residua Market States | (63.0) | 67.9 | 130.9 |
| ***Total Residual Market Damage Proposal*** | $ 147.0 | $ 375.0 | $ 228.0 |

*Notes:*

(1) Non-NCCI Pool States are part of the premium reallocation figures, but not in the Legacy and Pre-legacy damage calculations. Damages are part of Other Considerations.

(2) Settlement Incentive amount reflects AIG's motivation to end litigation and settle with all parties.

(3) Litigation Discount represents risk of litigations and waiver of AIG's 3rd party claims against other carriers for underreporting of premium. Although AIG believes a litigation discount is warranted, for purposes of settlement, the August 11th proposal has not discounted the number by the 30% factor believed to be appropriate.

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --

-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --





## Revised Calculation and Discussion

### Calculation Methodology

- Revised figures added approximately $510MM of premium subject to reallocation (pre-legacy and account not excluded).
  - To resolve all premium reallocation issues, AIG has agreed with the Lead Examiner's recommendations on several areas including captive accounts, guaranteed cost contracts, and Division 50 Excess (PUC 973).
- Calculated pre-Legacy reallocation amounts based on accounts with legacy period bookings.
  - An additional $45 million of premium reallocated to workers' compensation for pre-legacy increases core damages by $3.7 million.
- Interest is calculated on the difference in the NWCRP cash flow for which AIG is responsible starting from the time that AIG's payment (or recovery) was due. Interest is set at 5% compounded (as compared to simple interest at Treasury Bill rates at the May 1 meeting).
- Settlement with non-NCCI Pool States and a substantial settlement incentive of $67.9MM is included. This amount reflects AIG's motivation to end litigation and settle with all parties.

## Revised Calculation and Discussion

Reallocation Amounts

- Premium subject to reallocation $21.1 billion
- Premium reallocation $2,098MM

Settlement Calculations

- Base Damages: $173.6MM
- Interest: $133.5MM (5% compounded)
- Subtotal: $307.1MM
- Settlement incentive/non-NCCI: $67.9MM
- **Total Settlement Offer: $375MM**

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --
-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --





## Conclusion

-- Confidential Settlement Communication Protected from Disclosure Under FRE 408 and State Law Equivalents --
-- Protected from Disclosure Under Agreement dated August 11, 2009 and Regulatory Examination Laws --



