
# Nutter

Michael A. Walsh
Direct Line: 617-439-2775
Fax: 617-310-9775
E-mail: mwalsh@nutter.com

December 16, 2011

FILED BY ECF
COPY DELIVERED BY EXPRESS MAIL

The Hon. Robert W. Gettleman
United States District Judge
United States District Court for the
  Northern District of Illinois (Eastern Division)
219 South Dearborn St.
Room 1703
Chicago, IL 60604

> Re: American International Group, Inc. v. ACE INA Holdings, Inc., *et al.*,
> Case No. 07 C 2898 (N.D. Ill.)
>
> Safeco Insurance Company of America, et al. v. American International Group, Inc., *et al.*, Case No. 09 C 2026 (N.D. Ill.)

Dear Judge Gettleman:

The Court held a Fairness Hearing in the actions referred to above on November 29. A large part of the oral argument presented by the parties at that hearing concerned the net expected valuation of the claims alleged by the Settlement Class that the Court has certified. Under the Seventh Circuit's decisions in *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006), and *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002), the net expected valuation exercise requires that the "range of possible outcomes" be estimated and "a probability [be ascribed] to each point on the range." *Synfuel*, 463 F.3d at 653 (*quoting Reynolds*, 288 F.3d at 284–85). My clients, Safeco Insurance Company of America ("Safeco") and Ohio Casualty Insurance Company ("Ohio Casualty"), conducted such a valuation in advance of the Fairness Hearing. That analysis is set forth in my declaration, which was filed with the Court on October 3 (Dkt. #497). None of the parties who seek approval of the proposed class settlement agreement performed such a valuation for purposes of the Fairness Hearing. However, at argument on November 29, Class Counsel suggested that certain so-called "Litigation Risk Analyses" ("LRAs") conducted by counsel to the National Workers Compensation Reinsurance Pool ("NWCRP") served the same purpose as the net expected valuation contemplated by *Synfuel* and *Reynolds*. In fact, Class Counsel claimed that the LRAs "do more than *Reynolds* and *Synfuels* ever expected a class plaintiff to do," Tr. at 19, and a large part of the presentation by Class Counsel was devoted to walking through one of these LRAs (which was presented to the Court on a demonstrative). Tr. at 11-15, 19-20.

The Hon. Robert W. Gettleman
December 16, 2011
Page 2



Following this presentation by Class Counsel, I pointed out during my argument that the LRA to which Class Counsel referred (i) failed to attach any value whatsoever to the very real possibility that the aggregate amount of AIGs' premium underreporting would be found to be much higher than the amount assumed by the LRAs, Tr. at 62-65; (ii) failed to attach any value whatsoever to the very real possibility that the class would recover punitive damages upon its common law fraud claim, and treble damages and attorneys fees upon its RICO claim, Tr. at 54-57; and (iii) at any rate, discounted the value of the remaining claims alleged by the Class by the aggregate amount of 50% based on five "risk factors," Tr. at 57-60, that as I indicated during oral argument, simply "bear no relationship to reality." Tr. at 74.

Class Counsel, in rebuttal, criticized the discounts used by Safeco and Ohio Casualty to arrive at *their* valuation of the case. In doing so, Class Counsel stated, "They say there is a 95 percent chance we're going to win class certification." Tr. at 105. Shortly after this statement was made, the following colloquy took place:

> THE COURT: Well, I can tell you that it wasn't 95 percent.
>
> MR. KLEIN: And, Your Honor, I am not surprised.
>
> THE COURT: . . . For anybody to say 95 percent, I'm kind – maybe that's in the papers, and I missed it somewhere.
>
> MR. KLEIN: It is, Your Honor.
>
> THE COURT: Well, then I missed it. But it didn't jump out at me as it might have. That's pretty tough.
>
> MR. KLEIN: That was the prediction they were making. . . .

Tr. at 105-106.

In fact, contrary to the implication of these remarks, the net expected valuation analysis conducted by Safeco and Ohio Casualty did not ascribe a 95 percent probability to class certification. Instead, on the explicit assumption that the Court might regard this discount factor as relevant to the net expected valuation analysis, that net expected valuation analysis attached a 90 percent probability to class certification on the breach of contract and RICO claims, and an 85 percent probability to class certification on the fraud claims. The bases for these probability values are explained in paragraph 15 of the Declaration of Michael A. Walsh that is attached as Exhibit 1 to the declaration filed on October. The reason that the Court "missed" the reference to a 95 percent probability of class certification in the papers filed by Safeco and Ohio Casualty is because there is no such reference in those papers.

During my reply to Class Counsel's argument, I pointed out not only that Safeco and Ohio Casualty did not use a 95 percent probability-of-class-certification value in their net expected valuation analysis but, moreover, that the 95 percent probability-of-class-certification value that

The Hon. Robert W. Gettleman
December 16, 2011
Page 3



Class Counsel ridiculed during his argument *had in fact been used by the NWCRP in some of its own Litigation Risk Analyses.* Tr. at 138.

Following the conclusion of the hearing, I received a letter from Class Counsel (a copy of which is attached) suggesting that my remarks in this regard were misleading, and asking me to "correct the record." The basis for this suggestion is that, while Safeco and Ohio Casualty did *not* use a 95 percent probability-of-class-certification value in the net expected valuation that they performed in advance of the Fairness Hearing, and while counsel to the NWCRP *did* use that value in certain of their own LRAs, my co-counsel, Gary Elden, had separately stated in September, 2009 and again in December, 2010 that he believed that the probability of class certification was 95 percent. According to Class Counsel, these statements by Mr. Elden were "the source" of the 95 percent probability-of-class-certification value that thereafter was used in LRAs.

I respectfully disagree that anything that I said to the Court during argument at the Fairness Hearing was in any way materially misleading. To the contrary, and ironically, I made my remarks on the subject of the probability of class certification solely because I believed that the statements that Class Counsel made to the Court during his argument (as set forth above) implied (erroneously) that the net expected valuation performed by Safeco and Ohio Casualty ascribed a 95 percent probability to the likelihood of class certification. While I do not dispute that in September, 2009 and December, 2010 Mr. Elden made the remarks about the probability of class certification that Class Counsel's letter attributes to him, I fail to understand how that fact in any way detracts from the point that I made during argument: that not only did Safeco and Ohio Casualty not ascribe a 95% probability to the likelihood of class certification in their net expected valuation, but that this probability, which Class Counsel ridiculed, was in fact used by certain of the very same Litigation Risk Analyses upon which Class Counsel lavished high praise.

At the Fairness Hearing, Class Counsel told the Court that those Litigation Risk Analyses were the product of a "disciplined" and "extraordinarily detailed" process, Tr. at 13, 18, conducted by "competent, careful, balanced, neutral advocates" who were "involved throughout" the litigation. Tr. at 11, 12, 13. It is difficult to believe that those "competent, careful, balanced, neutral advocates," who were well aware of all relevant facts and all material law relevant to the class certification issue, would have ascribed a value to the probability of class certification *that they disagreed with* in developing their Litigation Risk Analyses. The fact that Mr. Elden may have agreed with the probability factor that they used, or that it was *they* who were agreeing with *him* when they used it, in no way detracts from the point I was making during argument or renders anything I said misleading. Nevertheless, in the interests of ensuring that the Court is fully

The Hon. Robert W. Gettleman
December 16, 2011
Page 4



advised in the premises, and that it is informed of the facts necessary to make its own judgments, I bring this matter to Your Honor's attention, as requested by Class Counsel.

                                                    Respectfully Submitted,

                                                    Michael A. Walsh

cc:      All Counsel of Record (by e-mail)

2068206.1

# GOLDBERG KOHN LTD.

December 7, 2011

frederic.klein@goldbergkohn.com
direct phone: 312.201.3908
direct fax: 312.863.7408

**BY FACSIMILE**

Mr. Michael A. Walsh
Nutter McClennen & Fish LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210

Re: <u>Safeco Insurance Co. of America, et al. v. American International Group, Inc., et al.</u>,
No. 09 CV 2026

Dear Mike:

Several times during the November 29 hearing before Judge Gettleman, the issue came up about the 95% prediction that the Safeco/Ohio Casualty motion for class certification would be granted. You stated that you never made a prediction of 95%, and at one point indicated that the 95% prediction must have come from Locke Lord since it appears in some of the Litigation Analyses ("LRAs") prepared by Locke Lord for the NWCRP Board. Tr. 138. And see Supplemental Declaration of Rowe W. Snider, R. 351-9, filed February 25, 2011, and Exhibits A-E thereto. The record is very clear that the source of the 95% prediction which appears in several of the LRAs was your co-counsel, Gary Elden.

1. The December 16, 2009 LRA uses a 5% "failure risk" for "Class Not Certified", R. 351-9, page 13. This page does not indicate a source for the 95% prediction of success on the motion for class certification.

2. The June 23, 2010 LRA states "Class Counsel very confident" and "Class likely to be certified." R. 351-9, page 41. This page does not state the prediction in terms of a percentage.

3. The September 15, 2010 LRA states that the current "chance of success" on class certification is "65% (was 95%)", and goes on:

Why the change from 95% to 65%?

-- <u>Class Counsel's 95% was extremely optimistic</u>

-- Judge's recent remarks about:

- Intent to rigorously scrutinize

3717349v3 12/7/2011 4:42 PM    6880.001    TEL 312.201.4000  FAX 312.332.2196  WEB WWW.GOLDBERGKOHN.COM
55 EAST MONROE STREET SUITE 3300  CHICAGO ILLINOIS 60603-5792

MERITAS LAW FIRMS WORLDWIDE

GOLDBERG KOHN LTD.

Mr. Michael A. Walsh
December 7, 2011
Page 2

- Fact questions about participating companies' circumstances

- Sees Class Members as "sophisticated" and able to assert their own claims

-- Relation between Liberty and its subsidiaries is at issue

-- Liberty's Non-Pool claims

R. 351-9, pages 66-67 (emphasis added).

4. The January 6, 2011 LRA states the same things quoted above from the September 15, 2010 LRA. See R. 351-9, pages 86-87.

5. On December 20, 2010, Gary stated during the presentation in his office that the chances of certification of a class with Safeco/Ohio Casualty as class representatives, and your firm and Gary's firm as class counsel, were 95% or higher. See my Supplemental Declaration, R. 386-1, filed June 3, 2011, at Par. 5.

6. More recently, Gary has stated under oath that the chances of the certification of a class with Safeco/Ohio Casualty as class representatives and your firm and Gary's firm as class counsel were "very close to 100%". See Gary's Declaration, R. 379, filed April 29, 2011, at Par. 91.

7. At the very same time, you took a slightly more modest view of the probability of class certification and stated that it was 90% for breach of contract and RICO, and 85% for fraud. See your Declaration, R. 380, filed April 29, 2011, at Par. 15.

On September 16, 2009, at the NWCRP Board meeting, Gary and you made a joint presentation during which Gary stated to the Board of Governors that 19 of 20 experts would say that a class is sure to be certified in this case because the issues are the same for all plaintiffs, and there was close to a zero chance that AIG would be successful on an appeal of a certification ruling. Many people who attended that meeting have a specific recollection of Gary's 95% prediction, and many also recall his prediction that the certification order would be decided within 6 months. The joint presentation made by Gary and you on September 16, 2009 was very clearly the basis for the December 16, 2009 LRA statement of a 95% prediction of success on class certification.

All of this makes it quite clear that the predictions of class certification ranging from 90-95%, and even "very close to 100%", came from counsel for Safeco/Ohio Casualty. During the November 29 argument, however, you disassociated yourself from the 95% prediction which appeared in earlier versions of the LRAs. By extension, you also disassociated your clients, Safeco/Ohio Casualty, and Gary as your co-

GOLDBERG KOHN LTD.

Mr. Michael A. Walsh
December 7, 2011
Page 3

counsel (who attended the November 29 hearing), from the 95% prediction. Indeed, you even went so far as to suggest that the original source for the 95% prediction was probably Locke Lord:

> Class certification, I hadn't talked about that, but I'm happy to. But let me say this, the 95 percent which, you know, was being scoffed at, but the 95 percent was used by Mr. Klein's clients. Perhaps you didn't know this. In March of 2010, when they did their net expected valuation analysis, they applied a discount factor to class certification. Their discount factor was 5 percent, in other words 95 percent likelihood. That didn't come from me, and I don't use it in my net expected valuation analysis. It comes from Mr. Klein's clients, who then in September went from 95 to 65 without any explanation that makes any sense.
>
> * * *
>
> The 95 percent somehow being ascribed to me, it isn't me. It doesn't come from me is all I'm trying to say.
>
> THE COURT: Okay. Fine. I've got it. I've got it.

Tr. 138, 140 (emphasis added). The history makes it clear that the source for the 95% prediction which appears in some of the Locke Lord LRAs – in other words, where the 95% prediction "comes from" – was counsel for Safeco/Ohio Casualty.

I believe that your statements and suggestions during the November 29 hearing about the source for the 95% prediction were misleading to the Court because Judge Gettleman apparently accepted your representation that it "doesn't come from me" when the judge replied "I've got it." Having gotten to know you, I don't believe this was intentional, but it has created a record which is not accurate. I believe that you should correct the record, and ask that you do so.

Sincerely yours,

Frederic R. Klein

FRK/bsm